C. Tab Turner, Bar No. 85158 *(pro hac vice pending)*
TURNER & ASSOCIATES, PA
4705 Somers Ave, Suite 100
North Little Rock, AR 72116
Phone: (501) 791-2277
Fax: (214) 750-9787
tab@tturner.com

Dennis P. Conner, Bar No. 283
Gregory G. Pinski, Bar No. 5254
CONNER, MARR & PINSKI, PLLP
P. O. Box 3028
Great Falls, MT 59403-3028
Phone: (406) 727-3550
Fax: (406) 727-1640
dennis@mttrials.com; greg@mttrials.com

Daniel B. Bidegaray, Bar No. 3928
BIDEGARAY LAW FIRM, LLC
1700 W Koch, Suite 5
Bozeman, MT 59715
Phone: (406) 522-7744
Fax: (406) 534-7629
daniel@bidegaraylawfirm.com
Attorneys for Plaintiff

**FILED**

MAY 2 3 2022

Clerk, U.S. District Court
District Of Montana
Great Falls

## UNITED STATES DISTRICT COURT, DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| JAY NELSON, individually and on behalf of all others similarly situated, | Cause No.  CV-22-49-GF-BMM-JTJ |
| Plaintiff, | |
| v. | **CLASS ACTION COMPLAINT AND JURY DEMAND** |
| FOREST RIVER, INC., and DOES 1-25, | |
| Defendants. | |

Plaintiff Jay Nelson brings this putative class action lawsuit against Defendants Forest River, Inc. ("Forest River") and Does 1-25 (collectively, "Defendants"), individually and on behalf of all others similarly situated, and alleges the following based upon personal knowledge as to Plaintiff's acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by Plaintiff's attorneys:

## INTRODUCTION

1.     Plaintiff brings this action individually and on behalf of all persons similarly situated in the United States who purchased Forest River 5th wheel Recreational Vehicles, equipped with the unsafely-designed and installed wiring system described below, that were designed, distributed, manufactured, and/or sold by Forest River including Forest River Palomino Puma 5th wheel RVs between model years 2002 and 2022 ("Subject RVs").

2.     Forest River, a Berkshire Hathaway company, is a widely recognized manufacturer of RVs, cargo and utility trailers, pontoon boats, and buses and has intercompany divisions reflecting several 5th wheel brands, including but not limited to Arctic Wolf, Cardinal, Cedar Creek, Hemisphere, River Stone, Sabre, and Sierra.

3.     Forest River operates an online website at "forestriverinc.com," which includes a statement from its CEO (Peter Liegl) that represents that "when I (he)

2

founded Forest River I (he) had a vision of a company dedicated to helping people experience the joy of the outdoors by building better recreational vehicles and assuring that every family who desires quality recreation would find a product that serves their needs, interests, budget and lifestyle."

4.    The Forest River website notes that the company operates multiple manufacturing facilities throughout the United States, producing Class A, B, and C motorhomes, travel trailers, fifth wheels, toy haulers, pop-up tent campers, truck campers, park model trailers, destination trailers, cargo trailers, commercial vehicles, buses, pontoons, and mobile restroom trailers.

5.    On its website "forestriverinc.com/rvs/our-story," Forest River represents it "ensures that each Forest River product is conscientiously built and undergoes thorough, detailed inspection before being shipped." The website expressly represents that each of its brands is subjected to random pre-delivery inspection ("PDI"), rigorous testing, and checked "for issues in electrical, plumbing, LP system, function, cosmetic, codes and standards, rain day, and other miscellaneous tests… to ensure every unit being built meets the high quality standards."

6.    The National Fire Protection Association (NFPA) is an international organization devoted to eliminating death, injury, property, and economic loss due to fire, electrical and related hazards. The Association publishes over 300 consensus

codes and standards intended to minimize the possibility and effects of fire and other risks. The codes and standards are prepared and administered by over 250 technical committees. NFPA 1192, the standard on Recreational Vehicles, delivers criteria for fire and life safety in and around RVs. The purpose is to provide minimum criteria for RVs necessary to protect from loss of life from fire and explosion. As a Recreational Vehicle Industry Association ("RVIA") member, Forest River pledged in writing it would build RVs that conform to the NFPA 1192 standard. As an RVIA member, Forest River must certify that the RVs it manufactures comply with RV standards adopted by the Association, including NFPA 1192, ANSI/RVIA Low Voltage Systems in Conversion and RVs Standard, and the National Electrical Code ("NEC"). As an RVIA member, Forest River expressly warrants and certifies by a sticker attached to Subject RVs it manufactures that it complies with RV standards adopted by RVIA, including NFPA 1192, ANSI/RVIA Low Voltage Systems in Conversion and RVs Standard, and the National Electrical Code ("NEC").

7.     NFPA 1192 includes Article 110, Part A, items requiring protection about: (2) mechanical strength and durability, including for parts designed to enclose and protect other equipment; (4) Electrical Insulation (and conductive wire protection); (5) Heating effects under normal conditions of use and also under abnormal conditions likely to arise in service, (6) Arcing effects, and (8) Other

factors that contribute to the practical safeguarding of persons using or likely to come in contact with the equipment.

8.      Under ANSI/RVIA LV: 3-1 says that all conductors must be provided with overcurrent protection; 3-6 requires fuses and circuit breakers to be protected against weather and physical damage; and 5-1 requires conductors to be protected against physical damage and to be supported – "where insulated conductors are clamped to the structure, the conductor insulation shall be supplemented by an additional wrap or layer of equivalent material, except that jacketed cables shall not be required to be so protected. Wiring shall be routed away from sharp edges, moving parts, or heat sources."

9.      Article 551 of NFPA covers RV requirements for 120V/240V electrical systems. Article 552 covers Park Model RV requirements for 120V/240V electrical systems.

10.     Leo Akins is the General Manager at Forest River and reports directly to the President/CEO of the company. Mr. Akins oversees all Quality, Codes & Standards, and PDI operations for all divisions within Forest River. He works with warranty, engineering, production, sales, purchasing, and all corporate functions within Forest River. He works with the RV industry as a member of 7 Councils/Committees for RVIA and is a technical member of the NFPA 1192 Committee on RVs.

11.     According to the public information, Forest River was founded in 1996 by Peter Liegl. After purchasing assets of Cobra Industries in January 1996, the company started by manufacturing tent campers, travel trailers, 5th wheel RVs, and park models under these model lines: Salem, Sierra, Sandpiper, Wildwood, Rockwood, Flagstaff, Summit, and Quailridge. Later that same year, it began producing cargo utility trailers as Cargo Mate.

12.     Forest River has expanded through growth and acquisitions. In 1997, Forest River established a second cargo trailer line called Continental Cargo.

13.     In 1998, Forest River Launched Forest River Marine and began producing pontoon boats. That same year the company purchased certain assets of Firan Motorhomes to begin manufacturing Class A Motorhomes.

14.     In 2000, Forest River acquired US Cargo, another manufacturer of utility trailers.

15.     In 2001, Forest River entered the bus business through the acquisitions of Starcraft Bus and Glaval Bus.

16.     In 2002, Rockport Commercial Vehicles, a brand of commercial vehicles and cargo trucks, was launched. That same year, the company acquired Vanguard Industries and the assets of Palomino, which was manufacturing Puma 5th wheel RVs.

17.    With Forest River's rapidly expanding business, it moved its corporate headquarters out of the original building in Goshen, Indiana, to its current location in Elkhart, Indiana. Each new acquisition and launch led to expansions in manufacturing and production facilities to meet the demand for the products and strategically grow the company.

18.    In 2005, Forest River was acquired by Warren Buffett and Berkshire Hathaway, Inc. In the same year, a new luxury coach brand, Elkhart Coach was launched. Forest River continued to expand with acquiring Rance Aluminum Fabrication and Priority One Financial Services in 2007. The following year, the company acquired assets of Coachmen RV, a subsidiary of Coachmen Industries, which provides a broad range of products, ranging from rear diesel motorhomes, gas class A motorhomes, class C motorhomes, travel trailers, 5th wheel RVs, tent campers and sport utility trailers and have been on North American roads dating back to 1964.

19.    Prime Time Manufacturing, which builds towable recreational vehicles, was established in 2009, followed by the revival of the Shasta product line in 2010, one of the intellectual properties of the Coachmen asset acquisition.

20.    In 2011, Forest River acquired Dynamax Corporation, which builds Luxury motorhomes (Super Class C and Class C).

7

21.    In 2014, the company expanded further with adding production facilities in Silverton, Oregon, Hemet, California, and White Pigeon, Michigan. That same year, the company acquired StarTrans Bus.

22.    In 2016, Forest River Marine added the Trifecta Pontoon line, and in January 2017, Forest River launched its new line of luxury buses, Berkshire Coach. In June of the same year, Battisti Customs was acquired.

23.    In May 2020, Forest River acquired the following REV Group shuttle bus brands: Champion, Federal Coach, World Trans, Krystal Coach, El Dorado, and Goshen Coach.

24.    Forest River operates multiple manufacturing facilities throughout the Midwest and West Coast that build motorized recreational vehicles, trailers, buses, and mobile offices. See, e.g., *Patton v. Forest River, Inc.*, CAUSE No. 3:18-CV-419 DRL-MGG, at *1 (N.D. Ind. Feb. 18, 2020).

25.    What is commonly called the electrical "Code" for home wiring is NFPA 70. This code does not have the force of law behind it, but because it has been worked on by thousands of expert engineers over the last 100 years, it is generally accepted as gospel for all home electrical builds and lawsuits. The NFPA creates safety codes for a lot more than just wiring, including the transport of chemicals, how to mark and dispose of various sorts of wastes, where to place fire

sprinklers, etc. But for home wiring, it is NFPA 70, which has a code cycle of three years. Every three years, there is an updated version of the code book, which includes the latest safety and hookup information for things like hot tubs, AFCIs, etc. While an RV will be driven through and hooked up to pedestals in perhaps hundreds of different code jurisdictions over its lifetime on the road, there is an NFPA code book specifically dealing with how RVs are wired. It is called NFPA 1192, while a similar code (NFPA 1194) pertains to campground wiring.

26.    At all times relevant to the Complaint, the RVIA (Recreational Vehicle Industry Association) <u>required</u> that all manufacturers displaying the RVIA tag comply with NFPA 1192, which is basically the electrical code for RVs. And because state and local jurisdictions do not have a specific code countermanding RV electrical code, then the NFPA Code supersedes anything one may find in NFPA 70 or even a local Authority Having Jurisdiction ("AHJ") cannot control the internal wiring of an RV if it was built to comply with NFPA 1192 in its year of manufacture.

27.    Most RVs have three primary electrical systems: direct current (DC), alternating current (AC), and chassis/vehicle power. While both AC and DC refer to current flow types in a circuit, they are different.

28.     Forest River is now one of the largest RV manufacturers in the United States. It sells Subject RVs in all 50 of the United States of America. Forest River makes approximately $5 billion in annual sales.

29.     Forest River represents to the consuming public it is an "industry leader in safety."

30.     The NFPA estimates that 20,000 RV fires occur annually.

31.     Over the last several years, consumers or consumer protection agencies have brought wiring system deficiencies to Forest River's attention, similar to what is occurring here.

32.     Forest River knows that safety standards such as ANSI/RVIA *LV Standard for Low Voltage Systems in Conversion and Recreational Vehicles* and NFPA 1192, *Standard on Recreational Vehicles*, address fire and life safety issues and inspections, apply to Forest River in manufacturing the Subject RVs. These standards are in place to enhance 5th wheel RV electrical safety and design.

33.     Forest River knows that applicable safety standards have been in place to help protect consumers who spend substantial money on Subject RVs and have their families sleep in them.

34.     Forest River must follow applicable safety standards and address foreseeable fire risks when designing and manufacturing 5th wheel RVs and eliminate foreseeable defects that may cause a fire resulting in injury and/or death

to consumers or damage the valuable 5th wheel RVs that Forest River sells its customers.

35.    Based on experience with similar defects, Forest River knows that when it does not protect an electrified wiring system of a Subject RV with a fuse or circuit breaker, this failure increases the risk of a Subject RV fire.

36.    Despite knowing this, Forest River manufactures the Subject RVs without safely insulating and protecting wires between the towing vehicles' 7-way junction box and the Subject RVs batteries, increasing the risk of a short and creating hazardous conditions.

37.    Further, Forest River manufactures the Subject RVs without installing a fuse or circuit breaker to protect the wiring system between towing vehicles' 7-way junction boxes and Subject RVs batteries.

38.    Forest River knows that the electrical circuit between towing vehicles' 7-way junction boxes and Subject RVs batteries must be protected by a fuse or circuit breaker to protect the RVs from the risk of fire in the event of a short. Forest River has manufactured and continues to manufacture Subject RVs without such overcurrent protection.

39.    If the wiring shorts between the 7-way junction box and Subject RVs batteries, the unprotected wire will overheat, increasing the risk of a fire.

40.    Forest River knows that if a wire shorts, this increases the risk of a fire.

41.    Forest River knows that all conductors must be provided with overcurrent protection and that without proper circuit breaker protection, the wire can overheat, increasing the risk of fire.

42.    Forest River knows that once a fire starts in a 5th wheel RV, it can become engulfed in flames in 10 minutes or less.

43.    NHTSA has in the past fined Forest River for wiring safety issues where fire was a risk.

44.    By way of example, on July 1, 2015, Forest River entered a Consent Order with the National Highway Traffic Safety Administration ("NHTSA"), an operating administration of the U.S. Department of Transportation, to resolve a NHTSA enforcement action, mitigate and control risks of harm, and promote safety.

45.    The Consent Order established requirements and performance obligations of Forest River and its subsidiary company (together, "Forest River") about: (a) reporting obligations under the National Traffic and Motor Vehicle Safety Act of 1966 as amended and recodified (the "Safety Act"), 49 U.S.C. § 30101, *et seq.,* and regulations promulgated thereunder; and (b) past violations of the reporting requirements under 49 U.S.C. § 30166(f), (1), (m) and 49 C.F.R. Part 579, the recall reporting and notification requirements under 49 U.S.C. §§ 30118-30119 and 49 C.F.R. Parts 573 and 577, untimely notifications of safety-related defects under 49 U.S.C. § 30119(c)(2) and 49 C.F.R. Part 573, and failure to respond fully

to compulsory process issued by NHTSA pursuant to 49 U.S.C. § 30166(g) and 49 C.F.R. Part 510, under the terms and conditions set forth below. Under the referenced Act, manufacturers of 100 or more buses and manufacturers of 5,000 or more medium-heavy vehicles had to submit comprehensive quarterly reports, including production numbers and information on incidents involving death or injury, the number of property damage claims, consumer complaints, warranty claims, and field reports, and copies of field reports. *See* 49 C.F.R. § 579.22, and comprehensive quarterly reports with this same information. *See* 49 C.F.R. § 579.24, including all notices, bulletins, and communications relating to defects, campaigns, consumer advisories, and service bulletins.

46.     At all times relevant to the Complaint, Forest River was a manufacturer of motor vehicles within the meaning of the Safety Act, *see* 49 U.S.C. § 30102(a)(5), and a person within the meaning of 49 U.S.C. § 30165.

47.     On September 30, 2014, NHTSA opened an audit query to investigate potential violations of the Safety Act. On October 2, 2014, NHTSA issued a Special Order directed to Forest River requiring Forest River to produce documents related to Forest River's reporting pursuant to 49 C.F.R. Part 579 and its obligations under 49 U.S.C. § 30118 to notify owners, purchasers, and dealers, and its obligations to file quarterly reports pursuant to 49 C.F.R. Part 573 after Forest River determined there was a safety-related defect in vehicles it manufactured.

48.    On February 24, 2015, Forest River notified NHTSA it had determined a defect related to motor vehicle safety existed in 726 Rockwood and Flagstaff camper trailers manufactured in 2014. According to Forest River's Part 573 Report, the safety-related defect concerned a condition in which loose wiring could contact a heating element resulting in a fire. NHTSA designated this recall as Recall No. 15V-080. Forest River previously identified the defective condition in a service bulletin sent to vehicle owners on November 12, 2014. Forest River transformed the action to a safety recall when notified by NHTSA of the requirement to do so.

49.    On March 17, 2015, Forest River notified NHTSA it had determined a defect related to motor vehicle safety existed in 200 Palomino camper trailers manufactured in 2014. According to Forest River's Part 573 Report, the safety-related defect concerned a condition in which the trailers were manufactured without an exhaust/fresh air intake vent which could lead to carbon monoxide exposure and/or a fire due to the potential lack of the furnace ventilation. NHTSA designated this recall as Recall No. 15V-156. Forest River previously identified the defective condition in a service bulletin issued on March 3, 2015. Forest River transformed the action to a safety recall when notified by NHTSA of the requirement to do so.

50.    As a consequence, NHTSA issued a Consent Order pursuant to its authority under the Safety Act, 49 U.S.C. § 30101, *et seq.,* as delegated by the

Secretary of Transportation, 49 C.F.R. §§ 1.95, 501.2(a)(l), to compromise the amount of civil penalties for violations of the Safety Act and regulations thereunder, 49 U.S.C. § 30165(b), to inspect and investigate, 49 U.S.C. § 30166(b)(l), to ensure that defective vehicles and equipment were recalled, 49 U.S.C. §§ 30118-30119, and to require any person to file reports or answers to specific questions, 49 U.S.C. § 30166(g).

51.    As a consequence, Forest River admitted to ongoing violation of the Safety Act by failing to submit accurate early warning reports as required by 49 U.S.C. § 30166(111) and 49 C.F.R. § 579. Forest River acknowledged that it failed to report to NHTSA accurate information on deaths and injuries, the number of property damage claims, consumer complaints, warranty claims, and field reports as required by 49 C.F.R. §§ 579.21, 579.22, and 579.24, and admitted that it violated the Safety Act to the extent that it did not file certain field communications or reports of Canadian safety campaigns under 49 C.F.R. §§ 579.5 and 579.11, and that it also failed to provide to NHTSA copies of notices, bulletins, and other communications sent to more than one manufacturer, distributor, dealer, lessor, lessee, owner, or purchase as required by 49 U.S.C. § 30166(f), (m)(3)(B), and 49 C.F.R. § 579.5.

52.    Forest River also admitted that it violated the Safety Act by failing to file certain quarterly recall response rate reports in a timely manner and that some

reports may not have contained complete information, and that in many instances, Dealer Notifications were sent to dealers without the required statement informing dealers that federal law prohibits the sale of the vehicles, as set forth above, in violation of 49 C.F .R. § 577, and that admitted that it knew, or should have known, that a safety-related defect existed when the service bulletins were issued.

53.    Due to the violation, Forest River agreed that the United States was entitled to a civil penalty of up to thirty-five million ($35,000,000) for the violations set forth above, subject to the provisions of this Consent Order and applicable law, including the Federal Claims Collection Act of 1966 as amended and codified at 31 U.S.C. § 3701, *et seq.*

54.    Besides a civil penalty, Forest River agreed to retain a consultant with experience and expertise in motor vehicle safety and the Safety Act (the "In-House Consultant"). The In-House Consultant is a position separate from the Monitor described below and a separate individual. Forest River had to retain the In-House Consultant at its sole expense for the term of this Consent Order. The In-House Consultant had to advise and assist Forest River in performing the obligations in this Consent Order, including in particular: (a) confirming that Forest River has, to the extent the information is available, populated the applicable NHTSA databases with information previously required to be submitted; (b) developing processes and procedures for Safety Act compliance; ( c) conducting training sessions required by

16

this Consent Order; (d) leading "Best Practices" (as defined below) meetings with other companies in the Recreational Vehicle industry; and (e) interacting with the Monitor to ensure any potential Safety Act violations or violations of this Consent Order are appropriately cured within the timeframes specified in this Consent Order.

55.    The In-House Consultant was charged with the responsibility of reviewing "service bulletins," as that term is used in Paragraph 4 of the Consent Order, issued by Forest River during the term of the Consent Order, and to advise Forest River whether the subject of the "service bulletin" concerned a defect related to motor vehicle safety. The review by the In-House Consultant was in addition to, and separate from, Forest River's procedures for making safety-related defect determinations.

56.    Besides the foregoing, Forest River had to develop new written procedures for: (a) comprehensive reporting in compliance with 49 C.F.R. Part 579; (b) making safety-related defect determinations and notifying NHTSA of such safety-related defects in compliance with 49 C.F.R. Part 573; (c) responding to NHTSA's requests for information sent during defect and noncompliance investigations; and (d) notifying dealers, owners, and purchasers of defects or noncompliances under 49 C.F.R. Part 577 (the "Written Procedures"). A copy of the procedures was to be provided to NHTSA and the public.

57.    Forest River was also required to make no claim that the Written Procedures were subject to any form of confidentiality and to retain an Independent Monitor with reporting requirements to the government and public. NHTSA has required Forest River to implement Best Practices, Training, and Written Procedures regarding safely manufacturing RVs.

58.    Plaintiff, and other consumers like him, have purchased Subject RVs from Forest River with an unsafe wiring system - electrified wiring that is neither adequately protected and insulated nor equipped with a breaker in violation of NFPA 1192 and ANSI-RVIA *LV Standard for Low Voltage Systems in Conversion and Recreational Vehicles*. This dangerous wiring system has failed during normal use of their Subject RVs. Despite knowing that wiring not adequately protected, insulated, and protected by a breaker, can cause fire and damage to Subject RVs, Forest River has neither publicly acknowledged this wiring defect nor attempted to fix it.

59.    In promotional advertising and on stickers certifying RVIA membership and compliance with codes, Forest River describes and depicts its Subject RVs as safe. Forest River did not disclose to Plaintiff and the Plaintiff Class Members that the Subject RVs failed to provide overcurrent protection between a towing vehicle's 7-way junction box and the Subject RVs batteries, and violated ANSI/RVIA *LV Standard for Low Voltage Systems in Conversion and Recreational*

*Vehicles* and NFPA 1192, *Standard on Recreational Vehicles*, increasing the risk of a short and unnecessarily exposing Plaintiff and Plaintiff Class Members to safety risks and financial damage through the cost of repair and loss of value and use.

60.    Plaintiff brings this action for: violations of the federal Magnuson-Moss Warranty Act and of state statutes prohibiting deceptive and unfair acts in commerce; breach of express and implied warranties, and; for fraudulent concealment and unjust enrichment under state common law. Plaintiff and the Plaintiff Class Members seek damages, including punitive damages, in addition to equitable and declaratory relief, based upon the following allegations.

## THE PARTIES

61.    Plaintiff Jay Nelson is and has been a citizen of Montana.

62.    Forest River is an Indiana corporation with its principal place of business in Elkhart, Indiana. Forest River designed, manufactured, and sold Plaintiff's 5th wheel RVs.

63.    DOES 1-25 are companies, entities, and/or individuals that otherwise were liable or wrongful in their conduct toward Plaintiff and the Class Members and contributed to causing their damages.

64.    Defendants' true names and capacities DOES 1-25 are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names. Plaintiff will

19

amend this Complaint to state their true names and capacities when and if they are ascertained. Plaintiff is informed and believes and thereon alleges that DOES 1 through 25 are responsible for the occurrence and damages alleged.

65.    Plaintiff is informed and believes and based thereon alleges that at all times material hereto, each of the Defendants, including the fictitiously named Defendants, were acting in an individual, corporate, partnership, associate, parent-subsidiary, successor-predecessor, conspiratorial or other capacity or as the agent, employee, co-conspirator, and/or alter ego of their co Defendants, and in doing the acts herein alleged, were acting within the course and scope of their authority as such parent, successor, partner, associate, agent, employee, co-conspirator, or alter ego, and with the permission, consent, knowledge, authorization, ratification, and direction of their co Defendants, including all fictitious named Defendants.

## JURISDICTION & VENUE

66.    This Court has jurisdiction pursuant to the Class Action Fairness Act, 28 USC § 1332 (d) because this is a class action in which one member of the putative class is a citizen of a state different from any defendant, and the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

67.    This Court also has federal question jurisdiction under 28 U.S.C. § 1331 and 15 U.S.C. § 2310(d)(3)(B) (Magnuson-Moss Warranty Act ("MMWA"))

because the case arises under the laws of the United States and as required by the MMWA, the amount in controversy exceeds $50,000.

68.    Forest River is a global RV company. It is incorporated in Indiana, but its business is everywhere. Forest River markets, sells, and services its RVs across Montana, the United States, Canada, and overseas in Europe. In Montana alone, the company annually distributes or sells new RVs through more than 21 dealerships, including dealerships in Great Falls, Havre, and Lewiston, within this District and Division. Forest River also encourages a resale market for its RVs; most all its dealerships buy and sell used RVs, as well as selling new ones. To enhance its brand and increase its sales, Forest River engages in wide-ranging promotional activities, including television, print, and online. The company provides original parts to its dealership stores and repair shops in Montana and across the country. Forest River's own network of dealers offers an array of maintenance and repair services, thus fostering an ongoing relationship between Forest River and its customers. This Court's exercise of jurisdiction over Forest River comports with due process: (1) the nonresident Forest River purposefully availed itself of the privilege of conducting activities in Montana, invoking Montana's laws; (2) the Plaintiff's claims arise out of or relate to Forest Rivers forum-related activities; and (3) the exercise of subject matter jurisdiction is reasonable. Given Forest River's "contacts" with Montana, the maintenance of this lawsuit before this Court is reasonable in the context of our

federal system of government and does not offend traditional notions of fair play and substantial justice.

69.    Venue is proper in this District and Division under L.R. 3.2(b)(1)(A) because Forest River has dealerships in this District and Division selling the Subject RVs.

### FACTUAL ALLEGATIONS

70.    On or around May of 2018, Plaintiff purchased a new 2019 Forest River "Puma" 5th wheel RV (the "Subject RV") from a Montana Forest River dealer. Forest River manufactured the Subject RV with the wiring system found in the Subject RV at the time of the fire.

71.    At all times, Plaintiff towed the Subject RV under normal conditions.

72.    Upon information and belief, Plaintiff estimates that the Subject RV had been towed for less than 250 miles at the time of the fire.

73.    On or around May 29, 2020, Plaintiff, his wife, and children were on a camping trip in Montana.

74.    As Plaintiff left the campground, he noticed smoke coming from the front area of the Subject RV.

75.    Plaintiff immediately stopped his pickup, exited, disconnected the Subject RV from the pickup, and extinguished the fire.

76.    The wire that charges the Subject RV's 12-volt batteries had shorted and burned, as is partially depicted in the following photograph:



77.    This wire was not adequately insulated or protected in places, and its conductors were not provided with overcurrent protection or protected by a breaker. As designed, manufactured, and sold the Subject RV violated NFPA 1192, Article 110, Part A, items (2), (4), (5), (6), and (8); and violated ANSI/RVIA LV 3-1, 3-6, and 5-1. Had the Subject RV complied with these NFPA and ANSI/RVIA LV standards, the fire would never have occurred.

78.    Plaintiff took the Subject RV to the Forest River dealership, where it repaired and replaced the burned wiring system. The repair was made in the same manner Forest River had initially wired the Subject RV, in violation of NFPA 1192 and ANSI/RVIA LV standards.

79.    Plaintiff was concerned that the result could have been tragically different had the fire started while he and his family slept in the Subject RV.

80.    Plaintiff did not understand that the repair continued to include a wire not protected by a breaker and not properly insulated and protected in several areas.

81.    Employees at the Forest River dealership confirmed they had seen similar fires in other Subject RVs.

82.    The fear of losing his family caused both Plaintiff and his family concern. They refused to use the Subject RV after the fire because of worries that other fire hazard defects may exist in the Subject RV.

83.    Plaintiff traded the Subject RV in for a 2020 Forest River "Puma" 5th wheel RV (the "Replacement RV").

84.    Unbeknownst to Plaintiff, the Replacement RV contained the same wiring defects.

85.    Plaintiff contacted Forest River to inform it of the fire in the Subject RV, and Forest River refused to compensate Plaintiff for the loss of use and/or the decrease in value Plaintiff experienced.

86.    And once Plaintiff discovered that the Replacement RV contained the same unsafe wiring system, he paid an electrician $300 to remedy the dangerous wiring system on the Replacement RV, so it was safe for him and his family to use.

87.    Plaintiff has suffered an ascertainable loss due to Forest River's unsafe wiring system, including but not limited to out-of-pocket loss associated with the

repair and diminished value of the Subject RV, loss of use of the Subject RV, and/or overpayment for the Subject RV.

88. Neither Forest River nor any of its agents or other representatives informed Plaintiff of the unsafe wiring system before Plaintiff purchased the Subject RV or the Replacement RV and/or its failure to meet NFPA and ANSI/RVIA LV standards as certified by Forest River.

## CLASS ALLEGATIONS

89. Plaintiff seeks class certification under Rule 23(a) and (b)(2) and/or (b)(3) and/or (c)(4) of the Federal Rules of Civil Procedure. Plaintiff is a member of the class he seeks to represent and brings this action individually and on behalf of all similarly situated persons defined as follows:

90. All persons in the United States who purchased for personal, family, or household purposes, a Forest River 5th wheel equipped with an unsafe wiring system as described herein (the "Nationwide Class"). Plaintiff also seeks to represent a Montana subclass for members of the National class who are residents of Montana (the "Montana Subclass") (collectively, the "Class" and "Class Members").

91. Excluded from the Putative Classes are: (i) any defendant or any entity in which any defendant has a controlling interest, or which has a controlling interest in any defendant, and any of the defendants' legal representatives, predecessors,

successors, and assigns; (ii) judicial officers to whom this case is assigned; and (iii) any member of the immediate families of excluded persons. Also excluded from the Classes are any individuals claiming damages from personal injuries arising from the defective Subject RVs.

92.    Plaintiff reserves the right to modify or amend the definition of the Classes before the Court determines whether certification is appropriate.

93.    Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of these claims on a classwide basis using the same evidence as used to prove those elements in individual actions alleging the same claims.

94.    Upon information and belief, under Rule 23(a)(1), the class is so numerous that joinder is impracticable. The individual class members are ascertainable from Defendant's records, and registration and sales records maintained by third parties.

95.    Upon information and belief, under Rule 23(a)(2), Forest River engaged in a standard, uniform course of conduct that commonly affects all class members, including:

      a. Whether the unsafe wiring system contains a design, workmanship/manufacturing, or material defects;

b. Whether Forest River knew or should have known that the design was reducing vehicle safety and could cause preventable serious injuries, deaths, and/or fires;

c. Whether deaths knew or should have known that purchasers believed the Subject RVs were safe;

d. Whether Forest River engaged in unfair, deceptive, unlawful, and/or fraudulent acts by failing to disclose that the vehicles had a faulty and substandard wiring system;

e. Whether Forest River misrepresented that the RVs equipped with the faulty and substandard wiring system were safe;

f. Whether Forest River had a duty to disclose the faulty and substandard wiring system to Plaintiff and other members of the proposed classes;

g. Whether Forest River omitted or failed to disclose material facts that might affect Plaintiff's and Class Member's decision to purchase Subject RVs;

h. Whether a reasonable consumer would be likely misled by Forest Rivers' conduct;

    i.  Whether the Subject RVs containing the faulty and substandard wiring system were unfit for the ordinary purpose for which they were purchased;

    j.  Whether the Subject RVs equipped with the faulty and substandard wiring system failed to perform or were incapable of performing according to consumer expectations of safety;

    k.  Whether Forest River has been unjustly enriched by its conduct;

    l.  Whether Plaintiff and Class Members overpaid for the Subject RVs containing faulty and substandard wiring systems;

    m. Whether Plaintiff and the Class Members are entitled to damages or equitable relief, including injunctive relief.

96.    Upon information and belief, under Rule 23(a)(3), Plaintiff's claims are typical of other class members, their claims arise from the same faulty and substandard wiring system manufactured by the same Defendant that gives rise to the claims of other class members, and the claims are based upon the same legal theories. Each Class Member has sustained and will continue to sustain damages in the same manner as Plaintiff because of Defendant's wrongful conduct.

97.    Upon information and belief, under Rule 23(a)(4), Plaintiff will fairly and adequately protect the interests of the class, he has no interest antagonistic to those of the rest of the class, and he retained counsel qualified, experienced, and

competent in class action, consumer, and product liability litigation related to vehicle design, manufacturing, marketing, and sales to represent him. The undersigned law firms have the financial resources to meet the litigation demands, including substantial costs, associated with these claims.

98.    Under Rule 23(b)(3), the questions of law or fact common to Plaintiff's and Class Member's claims predominate over any questions of law or fact affecting only individual members of the Classes.

99.    Common issues predominate when, as here, liability can be determined on a classwide basis.

100.    As set forth above, numerous common issues are presented here and will determine Forest River's ultimate liability.

101.    A class action is superior to individual actions in part because of the non-exhaustive factors below:

      a. Joinder of all Class Members would create extreme hardship and inconvenience for the affected customers as they reside across all states;

      b. Individual claims by Class Members are impractical because the costs to pursue individual claims exceed the value of what any one class member has at stake. As a result, individual Class Members have no interest in prosecuting and controlling separate actions;

  c. There are no known individual Class Members interested in individually controlling the prosecution of separate actions;

  d. The interests of justice will be well served by resolving the common disputes of potential Class Members in one forum;

  e. Individual suits would not be cost effective or economically maintainable as individual actions; and

  f. The action is manageable as a class action.

102. Forest River has acted or failed to act in a manner generally applicable to the Class, making appropriate final injunctive relief or corresponding declaratory relief regarding the Classes as a whole.

**<u>COUNT 1</u>**
**Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, et seq.**
**(Nationwide Class)**

103. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

104. The Magnuson-Moss Warranty Act ("MMWA") provides a private right of action by purchasers of consumer products against warrantors who, *inter alia*, violate the terms of a written or implied warranty. 15 U.S.C. § 2310(d)(1).

105. The Subject RVs are "consumer product[s]," as that term is defined in 15 U.S.C. § 2301(1).

106. Plaintiff and each member of the Classes defined above are "consumer[s]," as that term is defined in 15 U.S.C. § 2301(3).

107. Forest River is a "supplier" and "warrantor," as those terms are defined in 15 U.S.C. § 2301(4)-(5).

108. The MMWA provides a cause of action for breach of a written or implied warranty or other violations of the Act. 15 U.S.C. § 2310(d)(1).

109. Forest River's warranties are "written warranties" within the meaning of 15 U.S.C. § 2301(6).

110. Forest River breached its express warranties by providing a Limited Towable Warranty with the purchase of the Subject RVs, warranting to remedy substantial defects in materials and workmanship caused by Warrantor by repair or replacement at Warrantor's expense; selling the Subject RVs with the faulty and substandard wiring contrary to its above described expressed safety representations and certifications; and thus defective in materials and/or workmanship; and refusing and/or failing to honor the express warranties by effective repair and/or replacement free of charge and within a reasonable time.

111. Plaintiff and the Class Members were ignorant of the fact that the wiring in Subject RVs violated the standards established by NFPA 1192, Article 110, Part A, items (2), (4), (5), (6), and (8); and ANSI/RVIA LV 3-1, 3-6, and 5-1, which Forest River expressly certified were met. The wiring defect was not open

31

and obvious but was a hidden defect. Plaintiff and the Class Members had no idea they were getting a dangerous defective product. Forest River concealed and/or suppressed material facts about the safety of Subject RVs and its defective wiring system. Plaintiff and the Class Members were ignorant of their right of action. Forest River concealed the code violations and its fraudulent conduct prevented Plaintiff and the Class Members from discovering the defective wiring system. Plaintiff did not become aware of the defect until after he purchased his second Forest River 5th wheel, when an electrician investigating a potential diminished loss of value claim uncovered the hidden defect. Until then, the facts constituting the claim were not discovered nor in the exercise of due diligence should they have been discovered. Under these circumstances, the statute of limitations was tolled until the discovery.

112.    Forest River manufactured and/or installed all parts, including wiring systems, in the Subject RVs; thus, the Subject RVs and their components are covered by its express warranty.

113.    The faulty and substandard wiring system was present when the Subject RVs were sold to Plaintiff and the Class Members.

114.    Plaintiff and the Class Members relied on Forest River's express warranties, which were a material part of the bargain, when purchasing or leasing their Subject RVs.

115.   Under the express warranties, Forest River had to correct the faulty and substandard wiring system in the Subject RVs owned by Plaintiff and the Class Members.

116.   Although Forest River was obligated to correct the faulty and substandard wiring system, it did not.

117.   Forest River breached its express warranties by actively concealing the faulty and substandard wiring system when confronted with it. And Forest River did not repair the Subject RVs.

118.   Forest River has failed and refused to conform the wiring systems to the express warranties. Its conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

119.   Forest River's attempt to disclaim or limit the express warranty vis-à-vis consumers is unconscionable and unenforceable under the circumstances here.

120.   The time limits in Forest River warranty period are also unconscionable and inadequate to protect Plaintiff and the Class Members. Among other things, Plaintiff and the Class Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Forest River, and Forest River concealed the defective wiring system from them.

121. Plaintiff and the Class Members have complied with all obligations under the express warranties, or otherwise have been excused from performance of the obligations because of Forest River's conduct described.

122. Plaintiff notified Forest River of the breach and it did not repair or remedy the faulty and substandard wiring system; therefore, notifying Forest River for the Class Members is futile.

123. Because Forest River has not remedied the faulty and substandard wiring system, any limitation on remedies in Forest River's warranties causes the warranties to fail their essential purpose, rendering such limitation null and void.

124. Forest River also provided Plaintiff and the other Class members with an implied warranty of merchantability in connection with the purchase of their Subject RVs that is an "implied warranty" within the meaning of the MMWA, 15 U.S.C. § 2301(7). As part of the implied warranty of merchantability, it warranted that the Subject RVs were fit for their ordinary purpose and say, would pass without objection in the trade as manufactured and marketed, and were adequately contained, packaged, and labeled.

125. Forest River breached these implied warranties and is therefore liable to Plaintiff and the Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Subject RVs were inadequately labeled and presented to consumers with

information and literature that did not disclose that the wiring system was faulty and substandard.

126.   Defendant has long known that the Subject RVs had a faulty and substandard wiring system and has had a reasonable opportunity to cure. Forest River failed to cure in that it has not offered to repair and replace the faulty and substandard wiring for Plaintiff and Class Members even through repair and replacement is feasible and would completely remedy the problem. Until Plaintiff's representative capacity is determined, notice and opportunity to cure through Plaintiff, and on behalf of the Class, can be provided under 15 U.S.C. § 2310(e).

127.   Forest River's acts and omissions in violation of the MMWA are "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," and they are unlawful. 15 U.S.C. §§ 2310(b), 45(a)(1).

128.   Plaintiff and the members of the Class have suffered, and are entitled to recover, damages because of Forest River's breach of express and/or implied warranties and violations of the MMWA.

129.   Plaintiff also seeks an award of costs and expenses, including attorneys' fees for the commencement and prosecution of this action under 15 U.S.C. § 2310(d)(2). Plaintiff and the prospective Class intend to seek such an

award, including expert witness costs and other recoverable costs, as the prevailing parties at the conclusion of this lawsuit.

## COUNT 2
### Fraudulent Concealment
### (Nationwide Class)

130.   Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

131.   Forest River concealed and/or suppressed material facts about the safety of Subject RVs.  Forest River knew the Subject RVs were designed and manufactured with faulty and substandard wiring systems but concealed these material facts. Forest River recklessly manufactured and distributed the Subject RVs in the United States, even though it knew, or should have known, at the time of distribution that the Subject RVs contained the faulty and substandard wiring system. Plaintiff and Class Members did not know of this material information when they purchased their Subject RVs.

132.   Forest   River   made   material   omissions   and/or   affirmative misrepresentations regarding the safety of the Subject RVs.

133.   The Subject RVs purchased by Plaintiff and Class Members were unsafe because the vehicles contained faulty and substandard wiring systems.

134.   Forest River had a duty to disclose these safety issues to Plaintiff, Class Members, the public, and NHTSA, but failed to do so.

36

135.   Forest River had a duty to disclose the true facts about the safety of the Subject RVs, because it had superior knowledge and access to those facts, and the facts were not known or reasonably discoverable by Plaintiff and Class Members. Forest River knew that Plaintiff and Class Members did not know of the faulty and substandard wiring systems in the Subject RVs, and that neither Plaintiff nor the other Class Members had an equal opportunity to discover the facts to inform them of the faulty and substandard wiring system.

136.   Forest River had a duty to disclose that the Subject RVs were defective, unsafe, and unreliable because they contained a faulty and substandard wiring system, because Plaintiff and Class Members relied on Forest River's representations that the Subject RVs they were purchasing were as safe as represented and free from defects.

137.   The concealment was material because had it been disclosed, Plaintiff and Class Members would not have bought their Subject RVs or would have paid less for them.

138.   The representations were also material because they were facts typically relied on by a person purchasing a new or used RV. Forest River knew or recklessly disregarded that its representations and/or statements on the safety of the Subject RVs were false.

139. By misrepresenting and/or failing to disclose these material facts, Forest River intended to induce Plaintiff and Class Members to purchase the Subject RVs.

**COUNT 3**
**Unjust Enrichment**
**(Nationwide Class)**

140. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

141. Although there are numerous permutations of the elements of the unjust enrichment cause of action in various states, there are few real differences. In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core of each state's law are two fundamental elements – the defendant received a benefit from the plaintiff, and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state.

142. Since no material conflicts relate to the elements of unjust enrichment between the different jurisdictions from which Class Members will be drawn, general unjust enrichment law principles apply to those claims.

143. Plaintiff and Class Members conferred a benefit on Forest River by purchasing the Subject RVs.

144.    Forest River has been unjustly enriched in retaining the revenues derived from Plaintiff's and Class Member's purchases of the Subject RVs equipped with the faulty and substandard wiring system, which retention under these circumstances is unjust and inequitable because Forest River actively concealed known flaws in the wiring system, despite an obligation under the law and good conscience to disclose the existence of the flaws and to correct the faulty and substandard wiring system.

145.    Because Forest River's retention of the non-gratuitous benefit conferred on them by Plaintiff and the Class Members is unjust and inequitable, Forest River should be required by the Court to pay restitution to Plaintiff and the Class Members.

## COUNT 4
### Breach of Express Warranty
### MCA § 30-2-313, et seq.
### (Montana Subclass)

146.    Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

147.    At all relevant times, Forest River is a "merchant" regarding its 5th wheel RVs under MCA § 30-2-104, and a "seller" of the Subject RVs under MCA § 30-2-103.

148.    At all relevant times, the Subject RVs are "goods" within the meaning of MCA § 30-2-105.

149.    Forest River breached its express warranties by providing a Limited Towable Warranty with the purchase of the Subject RVs, warranting to remedy substantial defects in materials and workmanship caused by Warrantor by repair or replacement at Warrantor's expense; selling the Subject RVs with the faulty and substandard wiring contrary to its above described expressed safety representations and certifications; and thus defective in materials and/or workmanship; and refusing and/or failing to honor the express warranties by effective repair and/or replacement free of charge and within a reasonable time.

150.    Plaintiff and the Montana Subclass Members were ignorant of the fact that the wiring in Subject RVs violated the standards established by NFPA 1192, Article 110, Part A, items (2), (4), (5), (6), and (8); and ANSI/RVIA LV 3-1, 3-6, and 5-1, which Forest River expressly certified were met. The wiring defect was not open and obvious but was a hidden defect. Plaintiff and the Montana Subclass Members had no idea they were getting a dangerous defective product. Forest River concealed and/or suppressed material facts about the safety of Subject RVs and its defective wiring system. Plaintiff and the Montana Subclass Members were ignorant of their right of action. Forest River concealed the code violations and its fraudulent conduct prevented Plaintiff and the Montana Subclass Members from discovering the defective wiring system. Plaintiff did not become aware of the defect until after he purchased his second Forest River 5th wheel, when an

electrician investigating a potential diminished loss of value claim uncovered the hidden defect. Until then, the facts constituting the claim were not discovered nor in the exercise of due diligence should they have been discovered. Under these circumstances, the statute of limitations was tolled until the discovery.

151.    Forest River manufactured and/or installed all parts, including wiring systems, in the Subject RVs; thus, the Subject RVs and their components are covered by its express warranty.

152.    The faulty and substandard wiring system was present when the Subject RVs were sold to Plaintiff and the Montana Subclass Members.

153.    Plaintiff and the Montana Subclass Members relied on Forest River's express warranties, which were a material part of the bargain, when purchasing or leasing their Subject RVs.

154.    Under the express warranties, Forest River had to correct the faulty and substandard wiring system in the Subject RVs owned by Plaintiff and the Montana Subclass Members.

155.    Although Forest River was obligated to correct the faulty and substandard wiring system, it did not.

156.    Forest River breached its express warranties by actively concealing the faulty and substandard wiring system when confronted with it. And Forest River did not repair the Subject RVs.

157. Forest River has failed and refused to conform the wiring systems to the express warranties. Its conduct, as discussed throughout this Complaint, has voided any attempt on its part to disclaim liability for its actions.

158. Forest River's attempt to disclaim or limit the express warranty vis-à-vis consumers is unconscionable and unenforceable under the circumstances here.

159. The time limits in Forest River warranty period are also unconscionable and inadequate to protect Plaintiff and the Montana Subclass Members. Among other things, Plaintiff and the Montana Subclass Members had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Forest River, and Forest River concealed the defective wiring system from them.

160. Plaintiff and the Montana Subclass Members have complied with all obligations under the express warranties, or otherwise have been excused from performance of the obligations because of Forest River's conduct described.

161. Plaintiff notified Forest River of the breach and it did not repair or remedy the faulty and substandard wiring system; therefore, notifying Forest River for the Montana Subclass Members is futile.

162. Because Forest River has not remedied the faulty and substandard wiring system, any limitation on remedies in Forest River's warranties causes the warranties to fail their essential purpose, rendering such limitation null and void.

163.    Forest River also provided Plaintiff and the other Class members with an implied warranty of merchantability in connection with the purchase of their Subject RVs that is an "implied warranty" within the meaning of the MMWA, 15 U.S.C. § 2301(7). As part of the implied warranty of merchantability, it warranted that the Subject RVs were fit for their ordinary purpose and say, would pass without objection in the trade as manufactured and marketed, and were adequately contained, packaged, and labeled.

164.    Forest River breached these implied warranties and is therefore liable to Plaintiff and the Class pursuant to 15 U.S.C. § 2310(d)(1). Without limitation, the Subject RVs were inadequately labeled and presented to consumers with information and literature that did not disclose that the wiring system was faulty and substandard.

165.    Defendant has long known that the Subject RVs had a faulty and substandard wiring system and has had a reasonable opportunity to cure. Forest River failed to cure because it has not offered to repair and replace the faulty and substandard wiring for Plaintiff and Class Members even though repair and replacement is feasible and would completely remedy the problem. Until Plaintiff's representative capacity is determined, notice and opportunity to cure through Plaintiff, and on behalf of the Class, can be provided under 15 U.S.C. § 2310(e).

166. Forest River's acts and omissions in violation of the MMWA are "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce," and they are unlawful. 15 U.S.C. §§ 2310(b), 45(a)(1).

167. Plaintiff and the members of the Class have suffered, and are entitled to recover, damages because of Forest River's breach of express and/or implied warranties and violations of the MMWA.

168. Plaintiff also seeks an award of costs and expenses, including attorneys' fees for the commencement and prosecution of this action under 15 U.S.C. § 2310(d)(2). Plaintiff and the prospective Class intend to seek such an award, including expert witness costs and other recoverable costs, as prevailing parties at the conclusion of this lawsuit.

169. As a direct and proximate cause of Forest River's breach, Plaintiff and the Montana Subclass suffered damages and continue to suffer damages, including economic damages at the point of sale and diminution of value of their Subject RVs.

170. As a direct and proximate result of Forest River's breach of express warranties, Plaintiff and Montana Subclass Members have been damaged in an amount to be determined at trial.

## COUNT 5
### Breach of Implied Warranties of Merchantability and
### Fit For A Specific Purpose
### MCA§§ 30-2-314 and -315, et seq.
### (Montana Subclass)

171.   Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

172.   At all relevant times, Forest River is a "merchant" regarding the subject RVs under MCA§ 30-2-104, and a "seller" of the Subject RVs under MCA § 30-2-103.

173.   At all relevant times, the Subject RVs are "goods" within the meaning of MCA § 30-2-105.

174.   A warranty that the Subject RVs were in merchantable condition and fit for the ordinary purpose for which vehicles are used is implied by law under MCA §§ 30-2-314 and -315.

175.   Forest River knew or had reason to know of the specific use for which the Subject RVs were purchased. It directly sold and marketed the Subject RVs to customers through authorized dealers, like those from whom Plaintiff and the Montana Subclass Members bought their Subject RVs, for the intended purpose of consumers purchasing the RVs. Forest River knew that the Subject RVs would and did pass unchanged from the authorized dealers to Plaintiff and the Montana Subclass Members.

176. Forest River provided Plaintiff and Montana Subclass with an implied warranty that the Subject RVs and their components and parts are merchantable and fit for the ordinary purposes for which they were sold.

177. This implied warranty included: (i) a warranty that the Subject RVs were manufactured, supplied, distributed, and/or sold by Forest River were safe and dependable for RV uses; and (ii) a warranty that the Subject RVs would be fit for their intended use while they were being used.

178. Contrary to the applicable implied warranties, the Subject RVs at the time of sale and thereafter were not fit for their ordinary and intended purpose of providing Plaintiff and Montana Subclass Members with safe RV usage. Instead, the Subject RVs are unsafe because their wiring system is faulty and substandard. Forest River knew that the Subject RVs had faulty and substandard wiring and were not suitable for their intended use.

179. Because of Forest River's breach of the applicable implied warranties, Plaintiff and the Montana Subclass Members suffered an ascertainable loss of money, property, and/or value of their Subject RVs.

180. Forest River's actions, as complained of herein, breached the implied warranty that the Subject RVs were of merchantable quality and fit for such use in violation of MCA§§ 30-2-314 and -315.

181.   Plaintiff and the Montana Subclass Members have complied with all obligations under the warranties, or otherwise have been excused from performance of the obligations because of Forest River's conduct described.

182.   Plaintiff notified Forest River of the breach and afforded a reasonable opportunity to cure, but it failed to do so. Notifying Forest River and affording an opportunity to cure by the Montana Subclass is futile.

183.   As a direct and proximate cause of Forest River's breach, Plaintiff and the Montana Subclass Members suffered damages and continue to suffer damages, including economic damages at the point of sale and diminution of value of their Subject RVs.

184.   As a direct and proximate result of Forest River's breach of the implied warranty of merchantability, Plaintiff and the Montana Subclass Members have been damaged in an amount to be proven at trial.

## COUNT 6
**Montana Consumer Protection Act ("MCPA")**
**MCA 30-14-101, et seq.**
**(Montana Subclass)**

185.   Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

186.   Plaintiff and Montana Subclass Members are a "consumer" as defined in MCA § 30-14-102(1).

187.   Forest River is a "person" as defined in MCA§ 30-14-102(6).

47

188.   Forest River is engaged in "trade" and "commerce" as defined in MCA § 30-14-102(8).

189.   Under MCA§ 30-14-103, it is unlawful for Forest River to engage in unfair or deceptive acts or practices in the conduct of any trade or commerce.

190.   Forest River engaged in deceptive or unfair acts and practices which offend established Montana public policy, and which are immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers through its conduct set forth in this Complaint.

191.   Although MCA § 30-14-133 provides for individual but not class actions under the MCPA, Montana federal courts, following precedent in *Shady Grove Orthopedic Assoc., P.A. v. Allstate Ins. Co.,* 550 U.S. 393 (2010), have held Fed. R. Civ. P. 23 preempts state statutes (including the MCPA) prohibiting class action suits.

192.   As a direct and proximate result of Forest River's unlawful conduct, Plaintiff and Montana Subclass Members are entitled to actual damages, statutory damages, treble damages, and an award of reasonable attorney's fees and costs under MCA§ 30-14-133.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, demand judgment against Forest River as follows:

A.    For an order certifying the proposed Classes, designating Plaintiff as the named representatives of the Classes, and designating the above noted Plaintiff's attorneys as Class Counsel;

B.    For a declaration that Forest River misrepresented the safety of the Subject RVs and specifically misrepresented or failed to disclose material facts about its faulty and substandard wiring systems;

C.    For a declaration that the wiring system in the Subject RVs does not conform to Forest River's representations about safety and/or is faulty and substandard;

D.    For a declaration that Forest River is financially responsible for notifying all Class Members about the faulty and substandard wiring system in the Subject RVs;

E.    For an order enjoining Forest River to desist from further deceptive practices regarding the Subject RVs, and directing Forest River to permanently, expeditiously, and completely repair the Subject RVs to eliminate the faulty and substandard wiring system;

F.    For an award to Plaintiff and Class Members of compensatory, exemplary, and statutory penalties and damages (including treble damages as applicable), and interest, in an amount to be proven at trial;

G.    For a declaration that Forest River must disgorge, for the benefit of Plaintiff and Class Members, all or part of the ill-gotten profits received from sale of the Subject RVs, and make full restitution to Plaintiff and Class Members;

H.    For an award of attorneys' fees and costs, as allowed by law;

I.    For an award of pre-judgment and post-judgment interest, as provided by law; and

J.    For such other relief as the Court may deem just and proper.

Dated: May 23, 2022.

CONNER, MARR & PINSKI, PLLP

/s/ Dennis P. Conner
Dennis P. Conner
P.O. Box 3028
Great Falls, MT 59403-3028
dennis@mttrials.com
*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff demands a jury trial on all issues triable to a jury.

Dated: May 23, 2022.

CONNER, MARR & PINSKI, PLLP

/s/ Dennis P. Conner
Dennis P. Conner
P.O. Box 3028
Great Falls, MT 59403-3028
dennis@mttrials.com
*Attorneys for Plaintiff*