Maxon R. Davis
DAVIS, HATLEY, HAFFEMAN &
TIGHE, P.C.
The Milwaukee Station, Third Floor
101 River Drive North
P.O. Box 2103
Great Falls, MT 59403-2103
Telephone:  406-761-5243
max.davis@dhhtlaw.com

John D. Papageorge
TAFT STETTINIUS & HOLLISTER
LLP
One Indiana Square, Suite 3500
Indianapolis, IN 46204
Telephone:  317-713-3500
jpapageorge@taftlaw.com

Mark T. Hayden
TAFT STETTINIUS & HOLLISTER
LLP
425 Walnut Street, Suite 1800
Cincinnati, OH 45202
Telephone:  513-357-9610
mhayden@taftlaw.com

Spencer S. Cowan
TAFT STETTINIUS & HOLLISTER
LLP
425 Walnut Street, Suite 1800
Cincinnati, OH  45202
Telephone:  513-357-9464
scowan@taftlaw.com

*Attorneys for Defendant Forest River,
Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

::::::::::::::::::::::::::::::::::::::::::::::::::::

| | |
|---|---|
| JAY NELSON,<br>　　　　　　Plaintiff,<br><br>- vs –<br><br>FOREST RIVER, INC. and DOES 1-25,<br>　　　　　　Defendants. | NO. CV-22-49-GF-BMM-JTJ<br><br>**DEFENDANT FOREST RIVER, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF JAY NELSON'S CLASS ALLEGATIONS** |

::::::::::::::::::::::::::::::::::::::::::::::::::::

# TABLE OF CONTENTS

INTRODUCTION................................................................................1

**FACTUAL AND PROCEDURAL BACKGROUND**...........................3

**I.**     **Nelson's factual allegations and claims against Forest River** ..................3

**II.**    **Nelson's class allegations**................................................................4

**III.**   **Forest River moves to dismiss Nelson's Second Amended Complaint** ...............................................................................5

**ARGUMENT** ...................................................................................5

**I.**     **This Court lacks personal jurisdiction over Forest River with respect to alleged claims by nonresident plaintiffs** ...........................6

**II.**    **The proposed Classes are not ascertainable** ...............................9

**III.**   **Nelson lacks standing to assert claims on behalf of the Nationwide Class**................................................................12

       **A.**  **Substantial state-law variation in negligence, negligent misrepresentation, and fraudulent concealment law highlights the defects in Nelson's Nationwide Class**................................13

       **B.**  **This Court cannot apply Montana law to resolve all Nationwide Class claims**................................................15

       **C.**  **Nelson has standing only to assert claims under Montana law**................................................................16

**IV.**   **This Court should strike Nelson's MCPA claim** ......................18

**CONCLUSION**................................................................................22

**CERTIFICATE OF COMPLIANCE** ...............................................23

# TABLE OF AUTHORITIES

**Cases**                                                              **Page(s)**

*Am. Stores Props., Inc. v. Spotts, Stevens & McCoy, Inc.*,
678 F. Supp. 2d 328 (E.D. Pa. 2009) ................................................................. 14

*Battle v. Prison Health Servs., Inc.*,
No. 1864-WDA-2013, 2015 WL 6181266 (Pa. Sup. Ct. 2015) ........................ 15

*Bristol-Myers Squibb Co. v. Superior Court of California*,
___ U.S. ___, 137 S. Ct. 1773 (2017) ................................................................. 7

*Cannon v. Wells Fargo Bank, N.A.*,
988 F. Supp. 2d 29 (D.D.C. 2013) ..................................................................... 14

*Carpenter v. PetSmart, Inc.*,
441 F. Supp. 3d 1028 (S.D. Cal. 2020) .................................................. 8, 17, 18

*Corcoran v. CVS Health Corp.*,
169 F. Supp. 3d 970 (N.D. Cal. 2016) ............................................................... 17

*Corp. Air v. Pratt & Whitney Canada Corp.*,
CV-08-33-BLG, 2009 WL 10701737 (D. Mont. Aug. 21, 2009) ..................... 13

*Cummings v. Bank of Am.*,
CV 16-22-BLG-SPW-CSO, 2016 WL 6238596 (D. Mont. Sept.
15, 2016) ............................................................................................................... 6

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ............................................................................................. 7

*Davidson v. Apple, Inc.*,
16-cv-04942, 2018 WL 2325426 (N.D. Cal. May 8, 2018) .............................. 20

*Drake v. Toyota Motor Corp.*,
No. 2:20-cv-01421, 2020 WL 7040125 (C.D. Cal. Nov. 23, 2020) ........... 12, 18

*Fantasy, Inc. v. Fogerty*,
984 F.2d 1524 (9th Cir. 1993) (overruled on other grounds by
*Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)) .................................................. 6

*Ford v. Hyundai Motor Am.*,
  8:20-cv-00890, 2021 WL 7448507 (C.D. Cal. Oct. 5, 2021) ............................20

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
  284 F.3d 1114 (9th Cir. 2002) .............................................................................7

*Godin v. Schencks*,
  629 F.3d 79 (1st Cir. 2010).................................................................................20

*Hill v. LLR, Inc.*,
  18-120-GF, 2019 WL 6114237 (D. Mont. Nov. 18, 2019) ...............................21

*Hovsepian v. Apple*,
  No. 08-5788, 2009 WL 5069144 (N.D. Cal. Dec. 17, 2009) ......................10, 11

*James River Ins. Co. v. Rapid Funding, LLC*,
  658 F.3d 1207 (10th Cir. 2011) .........................................................................20

*Jones v. Micron Tech. Inc.*,
  400 F. Supp. 3d 897 (N.D. Cal. 2019)................................................................17

*La Mar v. H&B Novelty & Loan Co.*,
  489 F.2d 461 (9th Cir. 1973) ........................................................................9, 10

*In re Lipitor Antitrust Litig.*,
  336 F. Supp. 3d 395 (D.N.J. Aug. 21, 2018)......................................................22

*Lyons v. Bank of Am., NA*,
  No. C 11-1232, 2011 WL 6303390 (N.D. Cal. Dec. 16, 2011)....................10, 11

*Mobil Oil Corp. v. Dade Cnty. Esoil Mgm't Co., Inc.,*
  982 F. Supp. 873 (S.D. Fla. 1997) .....................................................................14

*Nichols v. United States*,
  511 U.S. 738 (1994)............................................................................................20

*Niedner v. Ortho-McNeil Pharm., Inc.,*
  58 N.E.3d 1080 (Mass. Ct. App. 2016) ..............................................................15

*Pannell v. Wells Fargo Home Mortg.,*
  No. 4:18-cv-0141, 2018 WL 3321442 (S.D. Tex. June 14, 2018) ....................15

*Phillips Petroleum Co. v. Shutts,*
  472 U.S. 797 (1985)...................................................................................15, 16

*Rasmussen v. Apple Inc.,*
  27 F. Supp. 3d 1027 (N.D. Cal. 2014) ...............................................10

*Routh v. Travelers Cas. Ins. Co. of Am.,*
  CV 17-42, 2017 WL 4074026 (D. Mont. Sept. 14, 2017)..................................20

*In re Samsung Galaxy Smartphone Marketing & Sales Practices
  Litig.,* No. 16-CV-06391-BLF, 2018 WL 1576457 (N.D. Cal. Mar.
  30, 2018) ..............................................................................................8

*Sanders v. Apple Inc.,*
  672 F. Supp. 2d 978 (N.D. Cal. 2009).................................................6

*Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.,*
  559 U.S. 393 (2010)..................................................................19, 21

*In re Solodyn Antitrust Litig.,*
  No. 14-md-02503, 2017 WL 4621777 (D. Mass. Oct. 16, 2017) ....................22

*Stasi v. Inmediata Health Grp. Corp.,*
  501 F. Supp. 3d 898 (S.D. Cal. 2020)..................................................13

*Swift v. Tyson,*
  41 U.S. 1 (1842)...................................................................................12

*Thawar v. 7-Eleven, Inc.,*
  165 F. Supp. 3d 524 (N.D. Tex. 2016) ...............................................14

*Tietsworth v. Sears,*
  720 F. Supp. 2d 1123 (N.D. Cal. 2010)..............................................10

*Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y.,*
  734 F. Supp. 2d 368 (S.D.N.Y. 2010) ................................................14

*Traylor v. Awwa,*
  899 F. Supp.2d 216 (D. Conn. 2012)...................................................14

*Villanueva v. Am. Honda Motor Co.,*
  No. CV-19-1390-MWF, 2019 WL 8112467 (C.D. Cal. Oct. 10,
  2019) ....................................................................................................17

*Vitiosus v. Alani Nutrition, LLC*,
    No. 21-cv-2048, 2022 WL 2441303 (S.D. Cal. July 5, 2022)............................12

*Whitlock v. FSL Mgmt., LLC*,
    843 F.3d 1084 (6th Cir. 2016) ...............................................................................20

*Wittman v. CB1, Inc.*,
    No. CV 15-105, 2016 WL 3093427 (D. Mont. June 1, 2016)
    (Morris, J.) .............................................................................................................20

**Statutes**

28 U.S.C. § 1652........................................................................................................12

Mont. Code Ann. § 30-14-133(1)(a)........................................................................19

Montana Consumer Protection Act ("MCPA"),
    Montana Code Ann. § 30–14–101 *et seq.* ......................................................*passim*

**Other Authorities**

Federal Rules of Civil Procedure 12(b)(1) ............................................................1, 5

Federal Rule of Civil Procedure 12(b)(2) .......................................................*passim*

Federal Rules of Civil Procedure 12(b)(6) ...........................................................1, 5

Federal Rule of Civil Procedure 12(f) ............................................................*passim*

Federal Rule of Civil Procedure 23 ..................................................................19, 21

## INTRODUCTION

This Court should strike Plaintiff Jay Nelson's class allegations from his Second Amended Complaint under Federal Rule of Civil Procedure 12(f).  As Defendant Forest River explains in its Motion to Dismiss Nelson's Second Amended Complaint, Nelson lacks standing to sue and therefore cannot represent the putative class.  Pleading defects also embed all six of Nelson's claims—and because Nelson lacks a viable claim, he cannot represent the class, either.  But if this Court does not dismiss Nelson's Second Amended Complaint under Rule 12(b)(1) or 12(b)(6), it should strike Nelson's class allegations under Rule 12(f).

Nelson, a Montana resident, bought a recreational vehicle ("RV") manufactured by Forest River, an Indiana-incorporated and Indiana-headquartered RV manufacturer.  Nelson claims that in 2020, a wire on his RV overheated and started to smoke.  This incident injured no one and caused no property damage.  Nelson, however, contends that the RV was defective.  He has sued Forest River on behalf of a putative nationwide class ("Nationwide Class") and a Montana subclass ("Montana Subclass" and collectively with the Nationwide Class, the "Classes") of RV purchasers, alleging a mix of statutory, negligence, and fraud-based claims.  Regardless whether Nelson's claims are viable, he cannot maintain this action as a class action.  Four independent reasons warrant striking the Classes now.

First, this Court lacks personal jurisdiction over Forest River with respect to the Nationwide Class. Forest River is not at home in Montana, meaning that specific jurisdiction is the only viable basis for personal jurisdiction. But Nelson cannot show that the nonresident plaintiffs' claims arose in Montana. Nelson does not allege, for example, that Forest River designed or manufactured the RVs here. And the mere fact that Nelson sued Forest River in Montana does not create a connection between the Nationwide Class members and this forum that supports specific jurisdiction.

Second, Nelson's proposed class definitions are not ascertainable and comprise members who have suffered no injury. Nelson puts no time constraints on the Classes and does not limit class membership to members whose RVs have manifested an alleged defect—or even to members who own the same Forest River RV model that Nelson owns. Nelson's proposed Classes are so broadly defined that they could encompass plaintiffs who bought—and later sold—their Forest River RV years ago, without ever experiencing a problem.

Third, Nelson lacks standing to represent the Nationwide Class. Nelson asserts negligence, negligent misrepresentation, and fraudulent concealment claims on behalf of the Nationwide Class but does not say which state's law should govern these claims. This is a significant problem, given the conflict between Montana law and the laws of the other forty-nine states (especially as it relates to

the economic loss doctrine).  Montana law cannot govern the claims of nonresident plaintiffs with no connection to this forum; holding otherwise would violate constitutional due process and give Montana law extraterritorial effect.  But Nelson lacks standing to assert state law claims on behalf of nonresident plaintiffs whose injuries arose outside Montana.  Nelson's alleged claims arose in Montana, meaning that Nelson can only assert claims under Montana law.  There is no solution to this problem, other than to strike the Nationwide Class allegations.

Fourth, this Court should strike Nelson's Montana Subclass allegations under the Montana Consumer Protection Act ("MCPA"), Montana Code Ann. § 30–14–101 *et seq.*, because the MCPA expressly precludes plaintiffs from asserting claims under that statute on behalf of a class.

For these reasons, this Court should strike Nelson's Class allegations under Rule 12(f).

## FACTUAL AND PROCEDURAL BACKGROUND

## I.    Nelson's factual allegations and claims against Forest River.

This case arises from Nelson's purchase of a 2019 Puma RV, manufactured by Forest River RV.  Nelson alleges that in May 2020—while he was towing the RV with his pickup—a wire connecting his RV to the pickup overheated and

started to smoke.[1]  (ECF No. 39, Second Am. Compl. ¶ 50.)  No one was injured,

and the smoke caused no property damage, either.  Still, Nelson sued Forest River,

alleging these six claims:

1.    Violation of the Consumer Product Safety Act (on behalf of the Nationwide Class);

2.    Negligence (on behalf of the Nationwide Class);

3.    Negligent Misrepresentation (on behalf of the Nationwide Class);

4.    Fraudulent Concealment (on behalf of the Nationwide Class);

5.    Violation of the Montana Consumer Protection Act (on behalf of Montana Subclass); and

6.    Declaratory Judgment (on behalf of both Classes).

(*Id.* ¶¶ 108–51.)

## II.    Nelson's class allegations.

Nelson, a Montana resident, is the only putative class representative.  He

seeks to represent a Nationwide Class comprising these members:

All purchasers of an RV that contrary to Defendant's certifications violates NFPA 1192 and the ANSI/RVIA Low Voltage Systems in Conversion and RVs Standard (the "Defect") who bought their RVs in the United States, other than for resale or distribution.

(*Id.* ¶ 87.)  Nelson does not impose any time limitations on the Nationwide Class.

He does not limit class membership to those who bought the same Forest River RV

---

[1] Forest River incorporates by reference the factual background section in support of its Motion to Dismiss Nelson's Second Amended Complaint.

models that he owned—*i.e.*, a 2019 Puma model and a 2020 Puma model.  For that

matter, Nelson does not even limit class membership to purchasers of a *Forest*

*River* RV or to purchasers whose RVs manifested a defect.

Nelson also seeks to represent a Montana Subclass with respect to his claim

under the MCPA.  He describes the Montana Subclass as:

> All purchasers of an RV that contrary to Defendant's certifications
> violates NFPA 1192 and the ANSI/RVIA Low Voltage Systems in
> Conversion and RVs Standard (the "Defect") who bought their RVs in
> Montana, other than for resale or distribution.

(*Id.*)  Like the nationwide class, the Montana subclass is similarly vague.  There

are no time parameters, nor is class membership limited to those who bought

Forest River's 2019 or 2020 Puma models or to purchasers whose Forest River RV

manifested a defect.

**III.    Forest River moves to dismiss Nelson's Second Amended Complaint**.

Forest River moved to dismiss Nelson's Second Amended Complaint under

Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) because Nelson lacks a

cognizable injury in fact and has not asserted a viable claim.

## ARGUMENT

If this Court exercises subject-matter jurisdiction and does not dismiss

Nelson's Second Amended Complaint, it should grant Forest River's motion to

strike Nelson's class allegations under Rule 12(f).  That Rule provides a

mechanism for eliminating defective class allegations before discovery, allowing

the parties to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993) (overruled on other grounds by *Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)).

Rule 12(f) motions are proper in cases like this, when it is "obvious from the pleadings that class treatment would not be proper." *Cummings v. Bank of Am.*, CV 16-22-BLG-SPW-CSO, 2016 WL 6238596, at *3 (D. Mont. Sept. 15, 2016); *see also Sanders v. Apple Inc.*, 672 F. Supp. 2d 978, 990 (N.D. Cal. 2009) ("Where the complaint demonstrates that a class action cannot be maintained on the facts alleged, a defendant may move to strike class allegations prior to discovery.").

## I.   This Court lacks personal jurisdiction over Forest River with respect to alleged claims by nonresident plaintiffs.

This Court should strike Nelson's Nationwide Class allegations under Rule 12(f) and Rule 12(b)(2) because this Court lacks personal jurisdiction over Forest River for all claims by nonresident plaintiffs.  Forest River does not dispute that personal jurisdiction exists with respect to Nelson's individual claim, given that Nelson bought his RVs from a Forest River dealer in Montana.  But personal jurisdiction does not exist for claims by nonresident plaintiffs with no connection to this forum.

Forest River, an Indiana-incorporated and Indiana-headquartered corporation, is not "at home" in Montana and cannot be subject to general

jurisdiction here. *Daimler AG v. Bauman*, 571 U.S. 117, 122 (2014). Thus, specific jurisdiction, which exists "where the cause of action arises out of or has a substantial connection to the defendant's contact with the forum," is the only possible basis for personal jurisdiction. *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002). In *Bristol-Myers Squibb Co. v. Superior Court of California*, the Supreme Court held that the Fourteenth Amendment's Due Process Clause prohibited a California state court from exercising specific jurisdiction over nonresident plaintiffs' claims in a mass tort action against a nonresident defendant. __ U.S. __, 137 S. Ct. 1773, 1781 (2017). *Bristol-Myers* involved tort claims by more than 600 plaintiffs—most of whom were not California residents—arising from their use of Plavix, a prescription drug. *Id.* at 1777. The nonresident plaintiffs were not prescribed Plavix in California, did not buy Plavix in California, did not ingest Plavix in California, and were not injured by Plavix in California. *Id.* at 1781. Even though some plaintiffs were injured in California, the Supreme Court found that the state could not exercise specific jurisdiction over the nonresidents' claims. *Id.*

Neither the Supreme Court nor the Ninth Circuit has held whether *Bristol-Myer's* reasoning also applies to nationwide class actions filed in federal court. But trial courts in the Ninth Circuit have applied *Bristol-Myers* to cases like this one and declined to exercise personal jurisdiction over nonresidents' claims against

a nonresident defendant. *See, e.g.*, *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1035 (S.D. Cal. 2020) ("*Bristol-Myers Squibb* applies in the nationwide class action context."); *In re Samsung Galaxy Smartphone Marketing & Sales Practices Litig.*, No. 16-CV-06391-BLF, 2018 WL 1576457, at *2 (N.D. Cal. Mar. 30, 2018) (dismissing claims by Maryland plaintiffs for lack of personal jurisdiction because no relevant action occurred in California).

In *Carpenter*, a trial court applied *Bristol-Myers'* reasoning in the nationwide class action context and granted the defendant's motion to strike the nationwide class allegations. 441 F. Supp. 3d at 1038. *Carpenter's* putative class representative, a California resident, sought to represent a nationwide class in a products-liability action against a defendant corporation headquartered in Arizona and incorporated in Delaware. *Id.* at 1033. But the trial court recognized that the defendant's sales in California did not "create a sufficient relationship between [the defendant] and California such that [the defendant] should be subject to specific personal jurisdiction in California for the claims of a nationwide class with no connection to California." *Id.* at 1036. Thus, the trial court granted the motion to strike all nationwide class allegations.

This Court should follow *Carpenter* and strike Nelson's Nationwide Class allegations under Federal Rule of Civil Procedure 12(b)(2). Nelson brings claims on behalf of a Nationwide Class and in doing so, asserts claims on behalf of

nonresident plaintiffs with no connection to Montana. Forest River is an Indiana corporation, headquartered in Indiana, that does not design or manufacture the RVs in Montana. So for many (if not most) class members, their only connection to Montana runs through Nelson. That accidental connection does not create specific jurisdiction. *Cf. Bristol-Myers*, 137 S. Ct. at 1781 ("The mere fact that *other* plaintiffs were prescribed, obtained, and ingested Plavix in California . . . does not allow the State to assert specific jurisdiction over the nonresidents' claims."). Thus, this Court should strike Nelson's Nationwide Class allegations for lack of personal jurisdiction under Rule 12(b)(2).

## II.    The proposed Classes are not ascertainable.

This Court also should strike all of Nelson's class allegations because the Classes are not ascertainable. As defined, the Classes comprise members who have purchased RVs that allegedly do not comply with standards promulgated by the Recreational Vehicle Industry Association ("RVIA"), a private trade association. But Nelson's capacious Class definitions include members whose RVs have manifested no defects and who have suffered no cognizable injury.

Nelson's overbroad classes contradict Ninth Circuit precedent. In the context of class actions, the Ninth Circuit explained that "the courts [are not] available to those who have suffered no harm at the hands of them against whom they complain." *La Mar v. H&B Novelty & Loan Co.*, 489 F.2d 461, 464 (9th Cir.

9

1973).  Plaintiffs who have suffered no harm "have no standing to sue," and it is

"necessary, therefore, to examine the standing of the plaintiffs to initiate the class

action."  *Id.*

Applying that common-sense principle, trial courts in the Ninth Circuit have

stricken class allegations in cases like this one—before either party has conducted

discovery—when the proposed class is not ascertainable or contains members with

no injury.  *See, e.g.*, *Rasmussen v. Apple Inc.*, 27 F. Supp. 3d 1027, 1045–46 (N.D.

Cal. 2014) (granting motion to strike class definition, given that it includes "class

members who never experienced any defects with their iMac"); *Lyons v. Bank of

Am., NA*, No. C 11-1232, 2011 WL 6303390, at *7 (N.D. Cal. Dec. 16, 2011) (The

proposed class "includes many members who have not been injured," making it

"not certifiable."); *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1146 (N.D. Cal.

2010) ("[T]he putative classes . . . cannot be ascertained because they include

members who have not experienced any problems with their Machines' Electronic

Control Boards—or for that matter with any other part of the Machine.").

*Hovsepian v. Apple* highlights that principle.  No. 08-5788, 2009 WL

5069144, at *6 (N.D. Cal. Dec. 17, 2009).  In *Hovsepian*, the Northern District of

California held that a putative class—comprising all purchasers of Apple's iMac

computer—was not ascertainable because it included class members who suffered

no injury.  *Id.*  The plaintiff in *Hovsepian* alleged that his iMac began to display

distracting vertical lines, making the screen unusable. *Id.* at *1. He then sued Apple on behalf a putative class comprising "all persons and entities in the United States who made original purchases of an iMac computer." *Id.* The trial court, however, held that the putative class was not ascertainable, given that it "includes members who have not experienced any problems with their iMac display screens." *Id.* at *6. Those members, according to the Court, "have no injury and no standing to sue." *Id.* Still more defects embedded the plaintiff's proposed class, including that it included members who "did not purchase the particular iMac model or the type of iMac screen that [the plaintiff] alleges is defective." *Id.* Thus, the court granted the defendant's motion to strike.

The same defects that tainted the putative class in *Hovsepian* exist here. For both Classes, Nelson seeks to represent class members who have purchased an RV that does not comport with two standards promulgated by RVIA. But Nelson does not limit class membership to individuals who have incurred a concrete injury related to their RV. Indeed, the Classes are so broadly defined that they would include individuals who bought and then sold their RVs decades ago, regardless whether a defect ever appeared while they owned the RV. This Court should strike Nelson's Nationwide and Montana Subclass allegations.

**III.    Nelson lacks standing to assert claims on behalf of the Nationwide Class.**

Separately, this Court should strike Nelson's Nationwide Class allegations because he lacks standing to assert claims on behalf of plaintiffs outside Montana. Trial courts in the Ninth Circuit "have overwhelmingly ruled that plaintiffs do not have standing to assert claims from states in which they do not reside and that it is appropriate to address standing in advance of class certification." *Drake v. Toyota Motor Corp.*, No. 2:20-cv-01421, 2020 WL 7040125, at *3 (C.D. Cal. Nov. 23, 2020) (collecting cases; internal quotation marks and citation omitted); *see also Vitiosus v. Alani Nutrition, LLC*, No. 21-cv-2048, 2022 WL 2441303, at *9 (S.D. Cal. July 5, 2022) (In the Ninth Circuit, there is a "growing trend . . . to address issues of Article III standing prior to class certification.").

Although Nelson asserts claims on behalf of the Nationwide Class, he does not specify which state's laws should apply.  Nelson effectively asks this Court to apply general federal common law.  *See Swift v. Tyson*, 41 U.S. 1, 1 (1842), *overruled by Erie R.R. Co. v. Tompkins*, 304 U.S. 63 (1938).  But in a federal diversity action like this one, there is no general federal common law.  Instead, "the laws of the several states" supply the applicable laws.  28 U.S.C. § 1652.  And the variation in state law—as to the claims Nelson has asserted—is substantial.

### A.  Substantial state-law variation in negligence, negligent misrepresentation, and fraudulent concealment law highlights the defects in Nelson's Nationwide Class.

Nelson asserts negligence and negligent misrepresentation claims on behalf of the Nationwide Class, regardless whether the class members have suffered any property damage or personal injury.[2]  Thus, Nelson seeks recovery on behalf of class members with purely economic damages.  In doing so, Nelson overlooks substantial differences between Montana law and other states' laws on whether such damages are recoverable in tort.

As this Court explained, the Montana Supreme Court has "expressly rejected the economic loss doctrine in a series of cases," therefore permitting plaintiffs to recover economic damages in tort.  *Corp. Air v. Pratt & Whitney Canada Corp.*, 2009 WL 10701737, at *6 (D. Mont. Aug. 21, 2009).  But that stance makes Montana "one of the few states that does not recognize the economic loss doctrine." *Id.*  While Montana permits plaintiffs to recover economic damages in tort, many states forbid such recovery.  Consider the laws of America's five most populated states, which comprise about one-third of the U.S. population:

> **California**: "Under the economic loss doctrine, purely economic losses are not recoverable in tort." *Stasi v. Inmediata Health Grp. Corp.*, 501 F. Supp. 3d 898, 913 (S.D. Cal. 2020) (applying California law) (internal quotation marks and citation omitted).

---

[2] Nelson excludes from both Classes "individuals with claims for personal injury resulting from the Defect."  (ECF No. 39, Second Am. Compl. ¶ 90.)

**Texas**: Under Texas law, "the economic loss doctrine holds that a person who suffers only pecuniary loss through the failure of another person to exercise reasonable care has no tort cause of action against that person." *Thawar v. 7-Eleven, Inc.*, 165 F. Supp. 3d 524, 532 (N.D. Tex. 2016).

**Florida**: "In general, Florida's economic loss doctrine provides that, absent injury to person or property, purely economic damages cannot be recovered in a tort action." *Mobil Oil Corp. v. Dade Cnty. Esoil Mgm't Co., Inc.*, 982 F. Supp. 873, 880 (S.D. Fla. 1997).

**New York**: "New York's economic loss doctrine is a jurisprudential principle that a plaintiff cannot recover in tort for purely economic losses caused by the defendant's negligence." *Travelers Cas. & Sur. Co. v. Dormitory Auth.-State of N.Y.*, 734 F. Supp.2d 368, 378 (S.D.N.Y. 2010).

**Pennsylvania**: Under Pennsylvania law, "no cause of action exists for negligence that results solely in economic damages unaccompanied by physical injury or property damage." *Am. Stores Props., Inc. v. Spotts, Stevens & McCoy, Inc.*, 678 F. Supp. 2d 328, 333 (E.D. Pa. 2009) (internal quotation marks and citation omitted).

Nelson simply ignores these variations and implies that this Court could resolve every plaintiff's claim with a uniform body of law. Separately, Nelson asserts fraudulent concealment on behalf of the Nationwide Class, even though many states (and the District of Columbia) do not recognize fraudulent concealment as a standalone cause of action:

**District of Columbia**: Plaintiff's claim "for fraudulent concealment [is] not cognizable at law." *Cannon v. Wells Fargo Bank, N.A.*, 988 F. Supp.2d 29, 31 (D.D.C. 2013).

**Connecticut**: "[U]nder Connecticut law, there is no cause of action for fraud by concealment." *Traylor v. Awwa*, 899 F. Supp.2d 216, 224 (D. Conn. 2012).

14

**Massachusetts**: "Massachusetts does not recognize an independent claim for fraudulent concealment." *Niedner v. Ortho-McNeil Pharm., Inc.*, 58 N.E.3d 1080, 1087 n.7 (Mass. Ct. App. 2016).

**Pennsylvania**: "Pennsylvania recognizes no cause of action for 'fraudulent concealment.'" *Battle v. Prison Health Servs., Inc.*, No. 1864-WDA-2013, 2015 WL 6181266, at *5 (Pa. Sup. Ct. 2015).

**Texas**: "No cause of action exists for 'fraudulent concealment.' Rather, 'fraudulent concealment' is a doctrine that 'suspends a limitations period when a defendant has concealed the facts underlying a plaintiff's claim." *Pannell v. Wells Fargo Home Mortg.*, Civ. Act. No. 4:18-cv-0141, 2018 WL 3321442, at *3, n.6 (S.D. Tex. June 14, 2018).

There is no feasible solution to this state law variation, other than to strike the Nationwide Class. For the reasons explained below, this Court cannot apply Montana law uniformly to resolve all Nationwide Class claims. And this Court cannot apply the law of another jurisdiction, unless there is a putative class representative who resides (or whose injury occurred) in that jurisdiction.

## B.    This Court cannot apply Montana law to resolve all Nationwide Class claims.

This Court cannot apply Montana law to resolve all claims on behalf of the Nationwide Class. If this Court applied Montana law to all claims, it would effectively extend the territorial reach of Montana law to nonresident plaintiffs with no connection to this state—and, in doing so, violate constitutional due process. In *Phillips Petroleum Co. v. Shutts*, the Supreme Court held that the Kansas Supreme Court violated the Fourteenth Amendment's Due Process Clause

15

and Article IV's Full Faith and Credit Clause when it applied Kansas law to resolve the claims of nonresident plaintiffs[3], "[g]iven Kansas' lack of interest in claims unrelated to that State, and the substantive conflict with jurisdictions such as Texas." 472 U.S. 797, 821–22 (1985). The Supreme Court concluded that "application of Kansas law to every claim in this case is sufficiently arbitrary and unfair as to exceed constitutional limits." *Id.* at 822.

The upshot of *Shutts* is that a state must have a significant contact with and interest in the claims of each plaintiff so that the application of its law is not arbitrary or unfair. Nelson, however, alleges no facts to suggest that *all* Nationwide Class members (or even a sizeable portion of the Nationwide Class) have significant contacts with Montana. In short, this Court would be committing the same error as the Kansas Supreme Court in *Shutts*, if it applied Montana law to resolve the negligence, negligent misrepresentation, and fraudulent concealment claims on behalf of the Nationwide Class.

**C.    Nelson has standing only to assert claims under Montana law.**

Also, Nelson is the only putative class representative, and Nelson has standing only to assert claims under Montana law. This Court cannot apply the law of another state if there is no class representative whose claim implicates that

---

[3] In *Shutts*, 97% of the plaintiffs had no apparent connection to the State of Kansas. *Id.* at 815.

state's law.  *See Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 990 (N.D. Cal. 2016) ("Courts routinely dismiss claims where no plaintiff is alleged to reside in a state whose laws the class seeks to enforce."); *Villanueva v. Am. Honda Motor Co.*, No. CV-19-1390-MWF, 2019 WL 8112467, at *15 (C.D. Cal. Oct. 10, 2019) (Parties generally "lack standing to bring claims under the laws of states other than the ones they reside in."); *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 908 (N.D. Cal. 2019) ("Courts in the Ninth Circuit have consistently held that a plaintiff in a putative class action lacks standing to assert claims under the laws of states other than those where the plaintiff resides or was injured.").

*Carpenter* explains this point, too.[4]  The putative class representative in *Carpenter*, a California resident, sought to represent a nationwide class and a California subclass.  441 F. Supp. 3d at 1039.  He alleged  "one generic 'fraud by omission' claim, one generic breach of implied warranty claim, and one generic unjust enrichment claim" but did not specify the particular state law that would govern each claim.  In effect, that putative class representative was attempting to "assert fifty fraud by omission claims, fifty breach [of] implied warranty claims, and fifty unjust enrichment claims—one of each claim for each state—on behalf of fifty separate state-specific classes."  *Id.*  But because the putative class

---

[4] Although the trial court first held that it lacked personal jurisdiction over the nationwide class, it addressed standing as an alternative argument.  *Carpenter*, 441 F. Supp. 3d at 1038.

representative did not suffer any injuries in fact traceable to any alleged violations of any state's laws (other than California law), he lacked standing "to assert claims on behalf of unnamed class members under other states' laws that do not govern his own claims." *Id.* at 1041. Thus, the trial court dismissed all claims in the complaint that the putative class representative purported to assert on behalf of the nationwide class. *Id.*

*Carpenter* compels the same outcome here. Much like the putative class representative in *Carpenter*, Nelson asserts generic claims on behalf of unnamed class members who belong to his alleged Nationwide Class. But Nelson fails to show that he has standing to represent these unnamed class members, whose claims arise under other states' laws—and there is no other putative class representative to represent these unnamed class members. Thus, there is no doubt that Nelson lacks standing to sue under other states laws when he has no injuries in relation to the laws of those states and could not seek redress in those states' courts. *Drake*, 2020 WL 7040125, at *4 (dismissing plaintiffs' nationwide class allegations; internal quotation marks and citation omitted). This Court therefore should strike Nelson's Nationwide Class allegations.

## IV. This Court should strike Nelson's MCPA claim.

Finally, this Court should strike Nelson's MCPA claim, which he asserts on behalf of the Montana Subclass. Montana law expressly precludes plaintiffs from

asserting a claim under the MCPA as a class action: a consumer "may bring an individual action but not a class action under the rules of civil procedure." Mont. Code Ann. § 30-14-133(1)(a) (emphasis added). Aware of that conflict, Nelson claims that Federal Rule of Civil Procedure 23 preempts state statutes that prohibit class action lawsuits and cites the Supreme Court's decision in *Shady Grove Orthopedic Associates, P.A. v. Allstate Ins. Co.*, 559 U.S. 393 (2010). (ECF No. 39, Second Am. Compl. ¶ 146.) But neither the Supreme Court nor the Ninth Circuit has held that Rule 23 preempts the MCPA, and there is good reason for why those courts would reach the opposite conclusion.

*Shady Grove* addressed a broad New York statute that prohibited "class actions in suits seeking penalties or statutory minimum damages." *Shady Grove*, 559 U.S. at 396. That statute, which had no substantive component and was not tethered to a substantive law, regulated the procedure for bringing a class action. The Supreme Court found that the New York statute did not preclude a federal district court sitting in diversity from entertaining a class action under Rule 23, given that federal procedural rules preempted the state procedural rule. *Id.* at 398–401.

*Shady Grove* is severely fragmented, comprising a plurality opinion and a concurrence from Justice Stevens (who also joined the plurality) and causing

confusion among federal courts about how to apply its holding.[5]  The Ninth Circuit

has never addressed which opinion controls, and in 2016, this Court declined to

follow Justice Stevens' concurrence.  *Wittman v. CB1, Inc.*, No. CV 15-105, 2016

WL 3093427, at *6 (D. Mont. June 1, 2016) (Morris, J.).  When this Court decided

*Wittman*, two federal appellate courts held that Justice Stevens' concurrence is the

controlling decision, *see James River Ins. Co. v. Rapid Funding, LLC*, 658 F.3d

1207, 1217 (10th Cir. 2011); *Godin v. Schencks*, 629 F.3d 79, 84 (1st Cir. 2010).

About four months later, the Sixth Circuit reached the same conclusion.  *See*

*Whitlock v. FSL Mgmt., LLC*, 843 F.3d 1084, 1091 n.2 (6th Cir. 2016).  Since then,

several more trial courts in the Ninth Circuit, including this Court, also have held

that Justice Stevens' concurrence establishes the framework for whether a federal

procedural rule trumps a state statute.  *Ford v. Hyundai Motor Am.*, 8:20-cv-00890,

2021 WL 7448507, at *27 (C.D. Cal. Oct. 5, 2021); *Davidson v. Apple, Inc.*, 16-

cv-04942, 2018 WL 2325426, at *11 (N.D. Cal. May 8, 2018); *Routh v. Travelers*

*Cas. Ins. Co. of Am.*, CV 17-42, 2017 WL 4074026, at *1 (D. Mont. Sept. 14,

2017).  The weight of that new authority suggests that *Wittman* is no longer good

law.[6]

---

[5] Under standard rules of interpretation, the Supreme Court's holding is the
"position taken by those Members who concurred in the judgments on the
narrowest grounds."  *Nichols v. United States*, 511 U.S. 738, 745 (1994).
[6] In November 2019, this Court affirmed a federal magistrate judge's refusal to
certify an order for interlocutory appeal, premised on whether the MCPA's class-

Justice Stevens' concurrence confirms that MCPA's class-action ban is enforceable in federal courts. Justice Stevens stated the settled principles that "federal courts sitting in diversity apply state substantive law and federal procedural law" and that federal rules "cannot displace a State's definition of its own [substantive] rights or remedies." 559 U.S. at 417–18 (Stevens, J., concurring). Applying those principles, Justice Stevens recognized that the New York statute, which governed all class claims brought in New York courts (including claims based on federal law), was an invalid, overbroad procedural mechanism. Still, he explained that a federal rule—*e.g.*, Rule 23—cannot "govern a particular case in which the [federal] rule would displace a state law that is procedural in the ordinary use of the term but is so intertwined with a state right or remedy that it functions to define the scope of the state-created right." *Id.* at 423.

Under Justice Stevens' framework, the MCPA's ban on class actions is a substantive provision of Montana law and does not fall to Rule 23. MCPA's class-action ban applies only to claims arising under the MCPA but does not regulate

---

action ban applies in federal court. *Hill v. LLR, Inc.*, 2019 WL 6114237, at *3 (D. Mont. Nov. 18, 2019). This Court held that there were no substantial grounds for different opinions on whether Justice Stevens' *Shady Grove* concurrence controls and therefore declined to certify the order for the Ninth Circuit's review; it explained: "[the defendant] confirms that only the Tenth Circuit has adopted Justice Stevens' concurrence as controlling." *Id*. Forest River, by contrast, identifies the Tenth Circuit decision, as well as authority from the Sixth and First Circuits and several trial court decisions from within the Ninth Circuit as evidence that Justice Stevens' concurrence controls.

class actions more broadly; to be sure, it does not regulate claims under federal law, as the New York statute did.  Thus, several federal courts have applied Justice Stevens' concurrence and enforced the MCPA class-action ban.  *See In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 416 (D.N.J. Aug. 21, 2018) ("[T]he class action bar[ ] in the Montana . . . consumer protection act[ ] control[s] in federal court."); *In re Solodyn Antitrust Litig.*, No. 14-md-02503, 2017 WL 4621777, at *20 (D. Mass. Oct. 16, 2017) ("Montana's consumer protection prohibition of class actions is so intertwined with a state right or remedy that it functions to define the scope of the state-created right.")  For those same reasons, this Court should apply the MCPA's plain language and strike Nelson's MCPA class claim.

## CONCLUSION

For these reasons, this Court should strike Nelson's Nationwide Class and Montana Subclass allegations under Federal Rule of Civil Procedure 12(f).

DATED this 4th day of November, 2022.

<div style="margin-left:auto; text-align:left;">

TAFT STETTINIUS & HOLLISTER LLP
DAVIS, HATLEY, HAFFEMAN & TIGHE, P.C.

By:    /s/ *Maxon R. Davis*
      Maxon R. Davis
      The Milwaukee Station, Third Floor
      101 River Drive North
      Great Falls, MT 59401

*Attorneys for Defendant Forest River, Inc.*

</div>

22

## CERTIFICATE OF COMPLIANCE

I hereby certify that the memorandum complies with the word-count provision set forth in Local Rule 7.1(d)(2)(A) and contains 5,232 words, excluding the caption, table of contents, table of authorities, exhibit index and certificate of compliance.

By: /s/ *Maxon R. Davis*
Maxon R. Davis