# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
### GREAT FALLS DIVISION

| | |
|---|---|
| JAY NELSON, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>FOREST RIVER, INC., and DOES 1-25,<br><br>Defendants. | **CV-22-49-BMM**<br><br><br>**ORDER** |

## INTRODUCTION

Plaintiff Jay Nelson ("Nelson") has filed a class action suit against Forest River, Inc. ("Forest River"). (Doc. 1.) Nelson alleges that Forest River manufactures Subject RVs without properly insulating and protecting wires that connect the Subject RV's batteries to its towing vehicle's junction box. (Doc. 1 at ¶ 36-37.) Nelson further alleges that Forest River manufactures Subject RVs without installing a fuse or circuit breaker to protect this wiring system. (*Id.*) Nelson alleges that these defects exist despite Forest River's knowledge that it must follow applicable safety standards and address foreseeable fire risks when designing and manufacturing its RVs. (Doc. 1 at ¶ 34-43.)

1

Nelson claims that he, and others like him, have "purchased [fifth wheel] RVs [("Subject RVs")] from Forest River with an unsafe wiring system – electrified wiring that is neither adequately protected nor equipped with a breaker in violation of NFPA 1192 and ANSI-RVIA *LV Standard for Low Voltage Systems in Conversion and Recreational Vehicles*" and that this faulty wiring has failed during normal use of Forest River RVs. (Doc. 1 at ¶ 58.) Nelson filed his first Complaint in this Court on May 23, 2022. (Doc. 1.) Nelson has amended his Complaint three times. (Doc. 38); (Doc. 39); (Doc. 45.) Forest River has filed corresponding Motions to Dismiss. (Doc. 26); (Doc. 40); (Doc. 49.) Forest River, in the Motions before the Court, again seeks dismissal of Nelson's Third Amended Complaint, arguing that the Court lacks subject matter jurisdiction, Nelson lacks standing, and that his Third Amended Complaint fails to state a claim. (Doc. 50.) Forest River also asks the Court to strike Nelson's class allegations. (Doc. 51.)

## BACKGROUND

Nelson purchased a new 2019 Forest River Puma model Subject RV from a Montana Forest River dealership on April 26, 2019. (Doc. 5 at ¶ 44.) Nelson purchased the Subject RV for $34,613, financed over 180 months. The Subject RV's junction box, which houses wiring connects for the RV's signal lights and house battery, began smoking and caught fire during Nelson's May, 29, 2020, family camping trip. (*Id.* at ¶ 50.) Nelson alleges that a short circuit occurred when a wire

connected to the RV's battery came in contact with a metal grommet on the junction box. (*Id.* at ¶ 52-53.)

Nelson alleges that this wire lacked the industry safety standards-required overcurrent protection. (*Id.*) Nelson claims that the Subject RVs' battery wires lack overcurrent protection, that the junction box does not protect against weather and physical damage, and that the battery wire includes inadequate insulation and jacketing. (*Id.* at ¶ 55-57.) Nelson alleges that these defects exist by design and as assembled. Nelson took the Subject RV to a local Forest River dealership, where dealership staff repaired the junction box. (*Id.* at ¶ 61-63.) The dealership also repaired the wiring. (*Id.*) Nelson claims that the repaired junction box contained the same defects that caused the short circuit and fire. (*Id.*)

Nelson traded in the Subject RV due to his concerns regarding the fifth wheel's wiring. (*Id.* at ¶ 64.) The Forest River dealership offered Nelson a trade-in value of 26,000 for the Subject RV, and the replacement RV cost $36,648. (*Id.*) Nelson claims that the replacement RV suffered from the same wiring and junction box defects. (*Id.*) Nelson alleges that, as a result of this defect, he retained counsel and an electrician to inspect the replacement RV. This inspection revealed that the RV suffered from the following defects:

> had no overcurrent protection between the junction box
> and house batteries; the wiring in the power cord going
> through the junction box and into the RV battery
> compartment did not adequately protect against the

weather and physical damage; the junction box was a metal residential junction box not designed for a wet environment that did not protect against the weather and physical damage; the junction box used metal clamps and metal grommets to grasp and support the wires exiting; and the battery wire was not jacketed or protected but exposed at the junction box and routed over sharp edges as it ran through RV framing and into the battery compartment without protection or a loom.

(*Id.* at ¶ 70.) Nelson and his attorney together spent $500 to repair the wiring issue in the replacement RV. (Doc. 50 at 17-18.)

## DISCUSSION

Forest River has moved to dismiss for lack of subject-matter jurisdiction. (Doc. 49.) Fed. R. Civ. P. 12(b)(1). A party invoking the federal court's jurisdiction has the burden of proving the actual existence of subject matter jurisdiction. *Thompson v. McCombe*, 99 F.3d 352, 353 (9th Cir. 1996). If a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) simply challenges the sufficiency of the allegations of subject matter jurisdiction, then the pleading's contents are taken as true for purposes of the motion. If it challenges the actual existence of subject matter jurisdiction, however, then the pleading's allegations are merely evidence on the issue. *Trentacosta v. Frontier Pac. Aircraft Indus., Inc.*, 813 F.2d 1553, 1558 (9th Cir. 1987). Any non-frivolous assertion of a federal claim suffices to establish federal question jurisdiction, even if

that claim is later dismissed on the merits. *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 570 (9th Cir. 2004).

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal proves appropriate under Rule 12(b)(6) where the complaint lacks sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

To survive a Rule 12(b)(6) motion, the Complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

The Court must accept all allegations of material fact contained in the complaint as true when evaluating a Rule 12(b)(6) motion. *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). The Court does not weigh the facts at the Rule 12(b)(6) stage but merely assesses the sufficiency of Plaintiff's allegations. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007).

## I.    Forest River's Motion to Dismiss

### Class Action Fairness Act jurisdiction exists.

Forest River argues that Nelson has failed to meet the Class Action Fairness Act's ("CAFA") jurisdictional requirements. (Doc. 27 at 19.) CAFA requires plaintiffs to establish that the amount in controversy exceeds $5,000,000 and that the proposed class includes at least 100 members. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 788 (9th Cir. 2018) (quoting 28 U.S.C. § 1332(d)(2)). At least one class member must represent a citizen of a different state from any defendant. *Id.* Forest River argues that Nelson must prove by the preponderance of the evidence that his class meets CAFA's jurisdictional requirements. (Doc. 50 at 16.)

Forest River bases its CAFA argument on the amount-in-controversy requirements. (Doc. 50 at 17.) Forest River contends that Nelson has failed to show by a preponderance of the evidence that the class's aggregated claims exceed $5,000,000. (*Id.* at 17-18.) Forest River does not concede that Nelson's preemptive repair of the replacement RV constitutes an injury. Forest River calculates the initial damages figure, for purposes of CAFA jurisdiction, as 12,662 (the maximum number of class members) multiplied by $300 (Nelson's $500 out-of-pocket expenses to repair his replacement RV minus $200 spent by his attorney), totaling $3,798,600. (*Id.*) Forest River then calculates the aggregate damages of the estimated Montana subclass as totaling $37,800. (*Id.*) Forest River asserts that the combination of these two figures yields an amount less than the $5,000,000 required for CAFA jurisdiction.

Forest River rejects Nelson's argument that punitive damages, attorney fees, diminished value, or loss of use damages could contribute to the five-million-dollar threshold. (Doc. 56 at 5-7.) Forest River contends that Nelson has failed to allege specific facts related to these potential damages: in Forest River's view, Nelson has alleged no facts related to the compared market value of the replacement RV with and without the defect, proffered no punitive damages or attorney fee estimate, a valuation for the length of time Nelson could not use the Subject RV before its trade-in, or the costs incurred from a loss of use. (*Id.* at 4-5.) Forest River likely has identified some deficiencies in Nelson's Third Amended Complaint regarding damage calculations for loss of use or diminished market value. The Court need not address these asserted deficits in Nelson's Third Amended Complaint, however, in resolving the CAFA jurisdiction question.

A court "must assume that the allegations of the complaint are true and that a jury will return a verdict for the plaintiff on all claims made in the complaint" when measuring the amount in controversy, *Korn v. Polo Ralph Lauren Corp.,* 536 F.Supp.2d 1199, 1205 (E.D.Cal.2008) (citing *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter,* 199 F.Supp.2d 993, 1001 (C.D.Cal.2002)). "The ultimate inquiry [remains] what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will actually owe." *Id.* (citing *Rippee v. Boston Market*

*Corp.,* 408 F.Supp.2d 982, 986 (S.D.Cal.2005); *Scherer v. Equitable Life Assurance Society of the United States,* 347 F.3d 394, 399 (2d Cir.2003)).

Nelson alleges in his complaint that the cost of repairing the Subject RV totaled $825. (Doc. 45 at ¶ 10-11.) Nelson alleges that the putative class includes at least 12,662 Forest River RV owners. (*Id.* at ¶ 9.) Forest River does not appear to dispute this number. (Doc. 50 at 17.) Nelson has alleged that each class member has suffered at least $825 in damages. The Court must accept as true Nelson's claim that repair of the alleged defect cost $825 and each class member suffered similarly. The Court determines that Nelson's complaint satisfies the amount in controversy: $825 multiplied by 12,662 equals $10,446,150. The complaint proves sufficient to maintain CAFA jurisdiction at this stage.

**Nelson has alleged sufficiently that he suffered an injury.**

Forest River relatedly contends that Nelson has suffered no cognizable injury. (*Id.* at 19.) Forest River first claims that Nelson bore none of the costs related to the wiring repair on the Subject RV: Forest River ultimately covered that cost. (*Id.* at 20). Forest River argues that members of a putative class who may "already have received refunds or replacement parts" remedying a product defect would have "no injury and no standing to sue" because they would have incurred no out-of-pocket damages resulting from the alleged defect. *Id.*

Forest River next contends that Nelson has not claimed that the alleged defect diminished the value of the Subject RV during the time he owned it. (Doc. 50 at 21.) Forest River argues that Nelson has "failed to plead facts sufficient to plead [this type] of injury-in-fact" because Nelson has not pleaded sufficiently that the alleged defect impacted the value of the Subject RV. (Doc. 50 at 22) (citing *In re Toyota Motor Cor.*, 790 F. Supp. 2d 1152, 1166 (C.D. Cal. 2011)). Forest River then argues that Nelson has alleged no injuries related to his loss of use of the Subject RV. (Doc. 50 at 23.)

For example, Forest River claims that Nelson has not explained how long he could not use the Subject RV or that he incurred any specific costs due to a loss of use. (Doc. 50 at 23.) Forest River relatedly contends that Nelson has not asserted any cognizable injury as it relates to the replacement RV. (Doc. 50 at 24.) Forest River argues that "Nelson tries to connect his fear of a future, hypothetical harm to his decision to buy and modify a more expensive RV." (Doc. 50 at 23) (citing *Clapper v. Amnesty Int'l*, 568 U.S. 398, 410 (2013)). "[G]eneral factual allegations of injury resulting from the defendant's conduct may suffice" at the pleading stage, however. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 560, (1992).

A court must "presum[e] that general allegations embrace those specific facts . . . necessary to support the claim" when considering a motion to dismiss. *Id.* (quoting *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 889 (1990)).

Nelson has alleged that his Subject RV (post-repair) and the replacement RV possessed the same defect that caused the fire in May 2020: their junction boxes and wiring lacked insulation and jacketing, overcurrent protection, and failed to protect against wet and rough conditions. (Doc. 45 at ¶ 70.)  Nelson also alleges that he lost the use of the Subject RV from the time of the fire until its trade in. (Doc. 45 at ¶ 64.) Nelson asserts that he traded in the Subject RV at a loss of $7,613 due to his concerns with the wiring. (*Id.*) Nelson alleges that he would not have purchased the replacement RV had he known of the alleged defect at the time of purchase. (*Id.*)

The Court must accept these allegations as true at this stage. *Lujan*, 504 U.S. at 560. The Court determines that these allegations sufficiently establish an economic loss. Nelson sought to purchase an RV free of defects but alleges that Forest River instead sold him an unsafe, defective RV. It appears likely that a defective RV would have a value less than that of a defect-free RV. *See, e.g.*, *Sugasawara v. Ford Motor Co.*, 2019 WL 3945105 (N.D. Cal. Aug. 21, 2019); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, and Prods. Liab. Litig.*, 754 F. Supp. 2d 1145, 1161-66 (C.D. Cal. 2010). In *In re Toyota*, for example, the court determined that the plaintiffs had bargained for safe vehicles with functioning braking systems. The plaintiffs' car's value decreased in light of a flawed brake system. *In re Toyota*, 754 F. Supp. at 1165-66. The court concluded that the plaintiffs suffered an injury by paying more for the vehicle than they otherwise

would, had they known of the defect. *Id.* Nelson's alleged purchase of a defective RV constitutes an economic loss or loss of use injury that allows Nelson to maintain standing at this stage of the proceedings. Nelson's potential standing exists even if the Court were to determine that Nelson's preemptive repair of the replacement RV could not constitute an injury.

### Nelson has failed to state a Consumer Product Safety Act claim.

Forest River contends that the Consumer Product Safety Act ("CPSA") does not apply to recreational vehicles. (Doc. 50 at 27.) The CPSA provides a private right of action for individuals who suffer injuries due to a knowing violation of a consumer product safety rule or any other order or rule issued by the Consumer Product Safety Commission ("CPSC"). 15 U.S.C. § 2072(a). Forest River correctly has pointed out, however, that the CPSA does not permit a private right of action directly under the statute. (Doc. 56 at 11.) The CPSA instead allows consumers to pursue claims only under rules or orders that the CPSC issues. (*Id.*) (citing *In re All Terrain Vehicle Litig.*, 979 F.2d 755 (9th Cir. 1992)).

Nelson has alleged only that "Forest River violated the [CPSA] because it [failed to comply with 15 U.S.C. § 2064(b) which requires manufacturers to report defects to the CPSC]" (Doc. 45 at ¶ 112-14.) The Ninth Circuit has determined that the CPSA does not allow a cause of action for this type of alleged violation. *In re All Terrain Vehicle Litig.*, 979 F.2d 755, 756 (9th Cir. 1992). Nelson has not pleaded

any other violation of a rule or order of the CPSC. (Doc. 45.) The Court will dismiss Nelson's CPSA claim for this reason. The Court declines to resolve the parties' competing arguments, regarding whether the CPSA's definition of consumer products excludes motor vehicles or motor vehicle equipment and whether CPSC maintains concurrent jurisdiction over defects in consumer products used as component parts in an RV, in reaching this conclusion. (Doc. 50 at 27) (citing 15 U.S.C. § 2052(a)(5)(C)); (*See* Doc. 55 at 20.)

**Nelson has stated a claim for negligence.**

Forest River next contends that Nelson has failed to state a claim for negligence. (Doc. 50 at 28-29.) Forest River argues that Nelson's negligence-based claim could proceed only as a products liability claim rather than an ordinary negligence claim. (Doc. 50 at 28.) Forest River argues that Nelson's negligence claim should fail because Nelson has failed to demonstrate any physical harm to himself or to his property stemming from the alleged defect on the RVs. (Doc. 50 at 29.) The Court disagrees.

Nelson has alleged that Forest River owed him a duty to comply with the National Highway Transportation Safety Act's ("NHTSA") Safety Standard as well as a duty to exercise reasonable care in "designing, manufacturing, testing, inspecting, labeling, and certifying the RVs sold, and to warn [] purchasers about safety hazards associated with their use." (Doc. 45 at 117.) At least one Montana

Supreme Court case has accepted that a plaintiff may pursue both a products liability claim and an ordinary negligence claim against a manufacturer. *Streich v. Hilton-Davis, a Div. of Sterling Drug, Inc.*, 692 P.2d 440 (Mont. 1984). The Montana Supreme Court also has explained that "[a]n action against a manufacturer on a negligence theory focuses on the degree of care used by the defendant manufacturer. This is a subjective standard of care and is measured by the knowledge and reasonable expectations of the purchaser and of the manufacturer." *Rost v. C. F. & I. Steel Corp.*, 616 P.2d 383, 385 (Mont. 1980) (citing Restatement (Second) of Torts § 388 at 300 (1965)); *Jackson v. Coast Paint and Lacquer Company*, 499 F.2d 809, 812 (9th Cir. 1974)).

Nelson has alleged that Forest River owed him a duty of reasonable care, breached that duty by including the allegedly defective wiring system in the RVs Nelson purchased, and this breach caused Nelson injuries in the form of lost use, diminution in value, and potentially the preemptive repair of the replacement RV. It remains unclear whether Nelson ultimately can marshal sufficient facts to prove each element of his negligence claim, but his allegations prove sufficient to survive this early-stage motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Nelson's Third Amended Complaint sufficiently states a claim for negligence. *Rost v. C. F. & I. Steel Corp.*, 616 P.2d 383, 385 (Mont. 1980) (citing Restatement (Second) of Torts § 388 at 300 (1965)).

**Nelson has stated a claim for negligent misrepresentation.**

Forest River argues that Nelson has not pleaded his negligent misrepresentation claim with particularity as Federal Rule of Civil Procedure 9(b) requires. (Doc. 50 at 29-31.) Forest River contends that Nelson has not identified the time, place, or content of any alleged misrepresentation made by Forest River. Forest River also points out that negligent misrepresentation requires proof that the untrue representation relates to a past or existing fact. (Doc. 50 at 30.) Forest River contends that Nelson has identified only a single representation from 1996 that could constitute a misrepresentation: a pledge that Forest River would build its RVs to conform to certain safety standards. Forest River argues that this 1996 pledge did not concern a relevant past or existing fact because neither Nelson's Subject RV nor the replacement RV existed at that time. (Doc. 50 at 30.)

Negligent misrepresentation claims require proving the following elements: 1) the defendant made a representation as to a past or existing material fact; 2) the representation must have been untrue; 3) regardless of its actual belief, the defendant must have made the representation without any reasonable ground for believing it to be true; 4) the representation must have been made with the intent to induce the plaintiffs to rely on it; 5) the plaintiffs must have been unaware of the falsity of the representation, and they must have been justified in relying upon the representation;

and 6) the plaintiffs, as a result of their reliance, must sustain damage. *Cechovic v. Hardin & Assocs.*, 902 P.2d 520, 525 (Mont. 1995).

The Court must accept as true Nelson's allegations of material fact at this stage. *Johnson v. Lucent Technologies Inc.*, 653 F.3d 1000, 1010 (9th Cir. 2011). Nelson's complaint identifies the Forest River website, advertising materials, and brochures as a source of Forest River's representations that its RVs are safe. Nelson asserts that he unequivocally relied on these safety representations when purchasing his RV. (Doc. 66.) It remains possible, then, that the alleged representations on Forest River's website or in its brochures existed after Nelson's RV had been manufactured. This assumption, viewed in favor of Nelson, requires the Court to determine that these representations concerned a past or existing fact. Nelson sufficiently has established the elements of his negligent misrepresentation claim. It may prove difficult for him to uncover facts sufficient to prevail at summary judgment or trial, but the Court does not weigh the facts at the Rule 12(b)(6) stage. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). Nelson has met the minimum required for his negligent misrepresentation claim to survive Forest River's Motion to Dismiss.

**Nelson has failed to state a claim for fraudulent concealment.**

Forest River argues that fraudulent concealment does not represent a standalone claim: it only tolls a statute of limitations for other, substantive claims.

Nelson does not address directly this argument. (Doc. 55 at 27.) Montana caselaw reveals that fraudulent concealment does not operate as a standalone claim. *See Wolfe v. Flathead Electric Cooperative, Inc.*, 431 P.3d 327 (Mont. 2018). The Court will dismiss Nelson's fraudulent concealment claim for this reason.

### Nelson has stated a Montana Consumer Protection Act claim.

The Montana Consumer Protection Act ("MCPA") prohibits unfair or deceptive practices in commercial conduct. Mont. Code Ann. § 30-14-103. An "unfair" act or practice under the law "offends established public policy" and causes serious injury. *Morrow v. Bank of America, N.A.*, 324 P.3d 1167, 1184 (Mont. 2014). The Act reaches "more broadly" than mere deception and includes "practice[s] contrary to 'established public policy.'" *Anderson v. ReconTrust Co., N.A.*, 407 P.3d 692, 700 (Mont. 2017) (citation omitted). Nelson has alleged that, among other unfair practices, Forest River failed to comply with applicable safety codes, failed to disclose the alleged defect, failed to take remedial action to address the alleged defect, and continued to market an allegedly dangerous product long after the company knew of the danger the alleged defect presented. (Doc. 45 at ¶ 82-88.) Nelson has not yet mustered significant facts to indicate he will prevail on this claim, but, again, the Court does not weigh the facts at the Rule 12(b)(6) stage. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). These allegations sufficiently raise the question whether Forest River acted in a manner "contrary to 'established

public policy.'" *Anderson*, 407 P.3d at 700. Nelson has met the minimum required for his MCPA claim to survive Forest River's Motion to Dismiss.

**Nelson's claim for declaratory relief fails.**

Forest River argues that Nelson seeks a declaration that Forest River violated the applicable state and federal statutory common law. (Doc. 50 at 35.) Forest River contends that this claim duplicates Nelson's previous claims. (Doc. 50 at 35.) The Court agrees that Nelson's declaratory judgment claim would duplicate his other claims. Forest River correctly identifies that the Court should dismiss Nelson's claim because it "would serve no practical purpose beyond the remedies available [under the substantive claims.]" *Woodman v. Standard Ins. Co.*, 2021 WL 927373, at *3 (D. Mont. Mar. 11, 2021). The Court will dismiss Nelson's declaratory relief claim for this reason.

## II.   Forest River's Motion to Strike Class Allegations

### Personal jurisdiction

Forest River argues that the Court lacks personal jurisdiction over Forest River for all claims of class members who reside outside Montana. (Doc. 52 at 12.) Forest River contends that the Court only could exercise specific jurisdiction over the claims in this suit due to Forest River's status as an Indiana corporation. (Doc. 52 at 13-14.) Forest River points out that Nelson has brought claims on behalf of a nationwide class including members who have no connection to Montana and whose

alleged injuries did not arise in Montana. The claims of non-Montana resident class members, in Forest River's view, would fall outside of the Court's specific jurisdiction over Forest River for this reason. (Doc. 52 at 15.)

Forest River cites two cases to support its position: *Bristol-Myers Squibb Co. v. Superior Court of California*, 582 U.S. 255 (2017) and *Carpenter v. PetSmart, Inc.*, 441 F.Supp.3d 1028 (S.D. Cal. 2020) The United States Supreme Court in *Bristol-Myers* determined that due process did not permit exercise of specific personal jurisdiction in California over nonresident consumers' claims in a mass action files in California state district court. *Bristol-Myers Squibb Co.*, 582 U.S. at 258. A district court in *Carpenter*, interpreting *Bristol-Myers*, determined that it could not exercise specific jurisdiction over a defendant retailer for the claims of an entire nationwide class. *Carpenter*, 441 F.Supp.3d at 1036. As a result, a named plaintiff lacked standing to bring claims on behalf of nonresident, nationwide members under the laws of their respective states. *Id.* at 1036-38.

Nelson disagrees with *Carpenter* and points out that the Seventh, Sixth, Third, and D.C. circuits have rejected its approach. (Doc. 54 at 12-14) (citing *Mussat v. IQVIA*, Inc., 953 F.3d 441 (7th Cir. 2020); *Lyngaas v. Ag*, 992 F.3d 412 (6th Cir. 2021); *Kelly v. RealPage Inc.*, 47 F.4th 202, 211, n. 7 (3rd Cir. 2022); *Molock v. Whole Foods Market Group*, 952 F.3d 293 (D.C. Cir. 2020)). The Court need not

reassess this substantive question of maintaining personal jurisdiction in a nationwide class action in order to resolve Forest River's Motion to Strike.

Federal Rule of Civil Procedure 12(b)(2) requires that a plaintiff "make only a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). The Ninth Circuit has addressed squarely the procedural question that Forest River's Motion presents: prior to class certification, a defendant does "not have 'available' a Rule 12(b)(2) personal jurisdiction defense to the claims of unnamed putative class members who were not yet parties to the case." *Moser v. Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021). One commentator has explained that "[n]o Supreme Court case regards absent class members as parties joined in the action filed by a putative class representative. . . . [W]hen determining whether there is personal jurisdiction over the defendant with respect to claims asserted by the named plaintiffs in a putative class action, the only claims to be assessed by the court are those of the class representatives." A. Benjamin Spencer, *Out of the Quandary: Personal Jurisdiction Over Absent Class Member Claims Explained*, 39 Rev. Litig. 31, 38 (2019). Nelson represents the only named plaintiff in this litigation. Forest River has conceded personal jurisdiction as to Nelson's claims. Forest River does not have available to it a personal jurisdiction defense as to the remaining unnamed members

of the putative class. Moser, 8 F.4th at 877. The Court will deny Forest River's

Motion to Strike under Federal Rule of Civil Procedure 12(b) for this reason.

### Class ascertainability

Forest River contends that Nelson's proposed classes are not ascertainable.

(Doc. 52 at 15-16.) Forest River describes Nelson's class definition as including

"members who have purchased RVs that allegedly do not comply with standards

promulgated by the Recreational Vehicle Industry Association ("RVIA") . . . whose

RVs have manifested no defects and who have suffered no cognizable injury." (*Id.*

at 16.) Forest River argues that Nelson's class definitions contradict Ninth Circuit

precedent which requires class members to have suffered some injury due to the

defendant. (*Id.*)

Numerous courts view motions to strike class allegations as disfavored

"because a motion for class certification is a more appropriate vehicle for arguments

about class propriety." *Mason v. Ashbritt, Inc.*, 2020 WL 789570, at *8 (N.D. Cal.

Feb. 17, 2020) (quoting *Covillo v. Specialty's Café*, 2011 WL 6748514, at *6 (N.D.

Cal. Dec. 22, 2011)). "In the absence of discovery and the presentation of specific

arguments from both parties concerning class certification, the Court lacks sufficient

information to rule on the propriety of the class allegations." *Dittmar v. Costco

Wholesale Corp.*, 2016 WL 3387464, at *1 (S.D. Cal. June 20, 2016). Nelson has

identified the class, in addition to Forest River's description, as "purchasers of a

[Forest River] RV with [the defect] [who] ha[ve] at least $825 in damages, not including attorney fees and punitive damages." This definition may prove unwieldly and overbroad, but it allows Nelson to survive Forest River's Motion to Strike.

**Nelson's standing to assert claims for a nationwide class**

Nelson seeks to represent a nationwide class of people who have purchased RVs anywhere in the United States. (Doc. 45.) The proposed class definition includes no reference to class members' potential connections with Montana, yet Nelson brings negligence-based claims based on Montana's tort law. (Doc. 45.) Forest River contends that Nelson has failed to identify which state's laws should apply to all claims. Forest River asks the Court to strike the class claims as a result.

*State law variations in negligence and negligent misrepresentation*

Forest River points out several conflicts in state laws that could govern individual class members' claims had they brought them in their home states. (Doc. 52 at 19.) Forest River argues, for example, that Nelson may have defined a class that includes individuals who have suffered no property damage or personal injury. (Doc. 52 at 19.) Forest River contends that Nelson himself does not allege any property or personal injury and instead appears to seek only economic damages. Most states do not allow recovery of economic losses in tort actions. (Doc. 52 at 19-21.) Forest River also contends that several states do not recognize fraudulent concealment as a standalone claim. (Doc. 52 at 21.) Forest River argues that the

Court's application of Montana law to resolve the negligence, negligent misrepresentation, and fraudulent concealment claims of a nationwide class would prove arbitrary or unfair in light of these conflicts. (Doc. 52 at 22.)

The Court agrees with Nelson that striking the class allegations for lack of standing, at this early juncture, would deprive him of the opportunity to "marshal information about the respective claims, similarities, and variations in the laws of the applicable states, and the potential need for subclasses based on any state law variations." (Doc. 54 at 27) (citing *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 95 (2d Cir. 2018)). Forest River has ignored that "a class action, when filed, includes only the claims of the named plaintiff." *Gibson v. Chrysler Corp.*, 261 F.3d 927, 940 (9th Cir. 2001). Forest River likely has conceded that Nelson possesses standing to bring his individual claims, and, as discussed in the analysis of Forest River's Motion to Dismiss, Nelson has stated claims for relief. Additionally, the Court need not dismiss nationwide class claims at the pleadings stage "particularly where . . . the defendants do not engage in a full analysis of the differences between various states' laws or of various states' competing interests." *Kellman v. WFM Private Label, L.P.*, 2019 WL 1429576, at *10 (N.D. Cal. Mar. 29, 2019). The Court agrees with other district courts that have determined that "whether the differences in law are truly material is better suited for resolution at class certification or on a motion for summary judgment, when the Court will have

the benefit of a more developed factual record." *Kanfer v. Pharmacare US, Inc.*, 142

F. Supp. 3d 1091, 1107-08 (S.D. Cal. 2015).

*Nelson's standing to bring only Montana law claims*

Forest River relatedly claims that Nelson has standing only to bring claims

under Montana law, and, as a result, the Court may not apply the law of any other

state without a class member whose claims would fall under that state's law. (Doc.

52 at 23.) Forest River argues that "[c]ourts in the Ninth Circuit have consistently

held that a plaintiff in a putative class action lacks standing to assert claims under

the laws of states other than those where the plaintiff resides or was injured." (Doc.

52 at 23) (citing *Jones v. Micron Tech. Inc.*, 400 F. Supp. 3d 897, 908 (N.D. Cal.

2019)).

The Court will allow Nelson's class to survive for the same reasons that the

Court refrains from striking the class allegations due to potential variations in state

law. "In the absence of discovery and the presentation of specific arguments from

both parties concerning class certification, the Court lacks sufficient information to

rule on the propriety of the class allegations," including whether the class definition

would include individuals who may lack standing. *Sihler v. Fulfillment Lab, Inc.*,

2020 WL 7226436 (S.D. Cal. Dec. 8, 2020) (quoting *Dittmar v. Costco Wholesale

Corp.*, 2016 WL 3387464, at *1 (S.D. Cal. June 20, 2016)). The Court will allow

Nelson to conduct pre-certification discovery before determining this standing issue.

*Class actions and the MCPA*

Forest River finally argues that the Court should strike Nelson's MCPA claim brought on behalf of the Montana subclass. Forest River asks the Court to reconsider its assessment that Federal Rule of Civil Procedure 23 preempts the MCPA to allow class actions on MCPA claims in federal court. (Doc. 52 at 25.) (citing *Wittman v. CB1, Inc.*, 2016 WL 3093427 (D. Mont. 2016)). Forest River contends that many other district courts have addressed the question posed in *Wittman* and reached different results. The Court declines to follow these other districts' approach.

The Court in *Wittman* determined that "application of Rule 23 affects only the process of enforcing the litigants' rights." *Wittman*, 2016 WL 3093427, at *6. As many courts have recognized, the same MCPA provision "that prohibits class actions also provides for minimum statutory damages." *Id.* (quoting Mont. Code Ann. § 30-14-133(1)). The prohibition alters only the procedural means by which a plaintiff may pursue that remedy. "The class action prohibition itself does not add, subtract, or define any of the necessary elements of the claim." *Id.* at *6.

The Court reiterated its position several years later in *Hill v. LLR, Inc.*, 2019 WL 5190983, at *4 (D. Mont. Oct. 9, 2019), *report and recommendation adopted*, 2019 WL 6114237 (D. Mont. Nov. 18, 2019). The "*Wittman* court is the only Montana court to specifically address the issue of [the MCPA class action ban and Rule 23]." *Hill*, 2019 WL 5190983, at *4. The Court explained that the few other

federal district courts to discuss the conflict have reached inconsistent conclusions: "[these] decisions have not rendered *Wittman* invalid." *Hill*, 2019 WL 5190983, at *4; s*ee also In re Automotive Parts Antitrust Litig.*, 29 F. Supp. 3d 982, 1013 (E.D. Mich. 2014); *In re Lipitor Antitrust Litig.*, 336 F. Supp. 3d 395, 413-14 (D.N.J. 2018). The Court reiterated that it had "reviewed these cases but is not persuaded that they warrant departing [from] [its] well-reasoned decision in *Wittman*." . . . [D]isagreement regarding whether Rule 23 preempts the MCPA [] ban has been contained to the district court level. The Ninth Circuit has yet to address the issue directly." *Id.* The Court declines to revisit its decision in *Wittman* just as it did in *Hill*. The Ninth Circuit still has not adopted an approach contrary to the Court's previous analysis. *Wittman* remains applicable here, and the Court will allow Nelson's MCPA class claims to survive Forest River's Motion.

## CONCLUSION

The Court will **GRANT** Forest River's Motion to Dismiss Nelson's CPSA claim. The Court will **GRANT** Forest River's Motion to Dismiss Nelson's declaratory relief claim. The Court will **DENY** the remainder of Forest River's Motion to Dismiss.

The Court will **DENY** Forest River's Motion to Strike.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that

- Forest River's Motion to Dismiss (Doc. 49) is **DENIED in part and GRANTED in part**.

- Forest River's Motion to Strike Class Allegations (Doc. 51) is **DENIED.**

DATED this 23rd day of March, 2023.

Brian Morris, Chief District Judge
United States District Court