## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| JAY NELSON, individually and on behalf of all others similarly situated | **CV-22-49-GF-BMM** |
| Plaintiff, | |
| v. | **ORDER** |
| FOREST RIVER, INC., | |
| Defendants. | |

## INTRODUCTION

Plaintiff Jay Nelson ("Nelson") filed a putative class action against Forest River, Inc. ("Forest River") on May 23, 2022. (Doc. 1.) Nelson has filed a Complaint and four amended Complaints. (Docs. 1, 38, 39, 45, 147-1.) Nelson's class allegations and claims for negligence, negligent misrepresentation, and violations of the Montana Consumer Protection Act remain. (Doc. 147-1 at 46-51.)

## BACKGROUND

Nelson alleges in his Fourth Amended Complaint ("FAC") that Forest River failed to disclose violations of the applicable standards, actively concealed the violations, and refused to remedy adequately the resulting wiring defects. (Doc. 147-1 at 2.) Nelson, a citizen of Montana, purchased a 2019 Palomino Puma Fifth Wheel RV ("2019 Puma"). (*Id*. at 3.) Forest River manufactures Cedar Creek Fifth Wheel

RVs ("Cedar Creek"), Palomino Puma Fifth Wheel RVs ("Puma"), and Starcraft Buses. Forest River distributes numerous other RV brands not mentioned here.

Nelson alleges that his 2019 Puma Fifth Wheel RV started smoking from a wiring defect in the trailer's seven-way-wiring system. Nelson seeks to include all "towable Recreational Vehicles ("RV")" in the class in his FAC. Towable RVs include Travel Trailers, Fifth Wheels, Toy Haulers, Destination Trailers, and Camping Trailers, including Tent and Pop-Up Campers (collectively "Towable RVs"). Forest River is an Indiana corporation owned by Berkshire Hathaway. Forest River is a member of the Recreational Vehicle Industry Association ("RVIA"). The RVIA adopts standards that govern RVs. Forest River places an RVIA seal on its RVs, indicating its compliance with the RVIA's standards. (Doc. 147-1 at 4.) Forest River allegedly purchases the RVIA seal directly from RVIA, reflecting a contractual commitment. (*Id.* at 6.)

The National Highway Traffic Safety Administration ("NHTSA") also governs Forest River as an Original Equipment Manufacturer (OEM) of RV products and parts. NHTSA enforces the National Traffic and Motor Vehicle Safety Act ("Safety Act"). The Safety Act includes safety standards applicable to RVs. (*Id.* at 8.) The Transportation Recall Enhancement Accountability, and Documentation ("TREAD") Act, enacted in 2000, established early warning reporting requirements for vehicle manufacturers. (*Id.*)

Nelson alleges that a 2009 incident, where a Starcraft bus crashed, forms part of the basis for the alleged wiring defects in this case. Owners of Starcraft buses filed a class action against Forest River in 2013. The Starcraft class action alleged that Forest River had manufactured the Starcraft bus in a way that created an unsafe condition by overloading the weight of the bus while driving the Starcraft. Forest River issued a recall in 2013. Forest River settled the Starcraft claims in 2014. Forest River allegedly failed to write a report regarding the recall as required by NHTSA. (Doc. 147-1 at 14.)

NHTSA issued a special-order requiring Forest River to disclose documents related to the 2013 recall of Starcraft buses. (*Id*.) Forest River agreed to provide a report. Forest River disclosed in the report that it had identified two safety defects with the Rockwood RV and Flagstaff RV models. The report also allegedly reported that "loose wiring that could result in a fire." (*Id*.) Forest River entered a consent order with NHTSA and admitted to the above failures to report as required by the Safety Act. Forest River also agreed to pay a fine pursuant to the consent order. Nelson alleges that Forest River continues to violate NHTSA standards.

Forest River initiated an internal survey in 2022 regarding the alleged wiring defects in its RVs like the Puma Fifth Wheel owned by Nelson. Forest River issued a recall on June 4, 2024, to correct alleged wiring defects in Cedar Creek Fifth Wheel RVs and Puma Fifth Wheel RVs. The recall included a total of 48,969 units. Nelson

3

alleges that the 2024 recall failed to capture all affected Forest River Towable RVs. Forest River apparently conceded that it issued the recall after having inspected Nelson's Puma Fifth Wheel RV on April 3, 2024. (Doc. 129-1 at 10 f. 4.)

Nelson's counsel initiated its own "field investigation" after the recall of Forest River Fifth Wheel RVs. Nelson claims to have inspected 400 units over 86 different models. (Doc. 147-1 at 9.) The investigation allegedly revealed that 51 of 86 models inspected were wired in violation of the applicable standards. The parties dispute the applicable wiring standards for different types of Towable RVs. Nelson alleges that Forest River's 2024 recall failed to address the alleged defects. (*Id*.) Nelson contends that Forest River produced Cedar Creek Fifth Wheel RVs for 20 years and Puma Fifth RVs for 18 years and failed to follow applicable standards.

Nelson argues that Forest River estimated the scope of the 2024 recall to include 100% of the Puma Fifth Wheel RVs and Cedar Creek Fifth Wheel RVs manufactured between September 26, 2005, and May 2, 2024. (*Id*. at 18-19.) Nelson seeks to certify a class to address the alleged defects in Forest River's Towable RVs. Nelson seeks to certify a nationwide class or, alternatively, a Montana class. Nelson also requests leave to amend to add back the Indiana-based claims should the Court deny certification of a nationwide class. (Doc. 157 at 9.) Nelson seeks class certification based on the above facts and requests that the Court certify a Rule 23(b)(3) class as defined in the FAC. (Doc. 131 at 26.)

4

## <u>LEGAL STANDARD</u>

### I. Class Certification

Class relief proves appropriate where the underlying issues are common to the entire class and the questions of law are applicable to each class member. *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)). Class actions serve to save a court's resources and the parties' resources by allowing an issue affecting every class member to be economically litigated. *Id.* Courts limit claims that fall under the class action umbrella to those class claims that are "fairly encompassed by the named plaintiff's claims." *Id.* at 156 (quoting *Gen. Tel. Co. of Northwest v. EEOC*, 446 U.S. 318 (1980)).

A class may be established if the following criteria exists:

1) the class is so numerous that joinder of all members is impracticable;
2) there are questions of law or fact common to the class;
3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23 (a) (1-4).

A court may certify a class if the above is true and one of the following is true:

1) prosecuting separate actions by or against individual class members would create a risk of:

A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

A) the class members' interests in individually controlling the prosecution or defense of separate actions;

B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

D) the likely difficulties in managing a class action.

*Id*. at (b) (1-3).

## DISCUSSION

## I. Nelson's proposed nationwide class fails to meet the Rule 23(a) requirements.

Nelson moves the Court for nationwide class certification against Forest River for having exposed Towable RV owners to similar seven-way wiring defects and making misrepresentations regarding safety and compliance of its Towable RVs to

the applicable standards. (Doc. 131 at 6.) Nelson alleges three counts regarding class

action claims: 1) negligence; 2) negligent misrepresentation; and 3) violation of the

Montana Consumer Protection Act ("MCPA"). (Doc. 147-1 at 46-51.) Nelson

defines a class and subclass as follows:

1) All persons in the United States who own a Forest River Towable RV other
   than for resale or distribution;

2) All persons in Montana who own a Forest River Towable RV other than
   for resale or distribution.

(*Id*. at 40.)

The Court notes that Nelson's motion for class certification and brief in

support remain largely void of citations to the record for facts in support of his

motion. Nelson instead attempts to put all relevant information in support in his reply

brief, including expert reports. (*See* Doc. 157.) Forest River filed a corresponding

motion to strike Nelson's exhibits 1-3 in Nelson's reply brief and corresponding

incorporation of those exhibits. (Doc. 158 at 2.) Nelson apparently relies on the

Court's supposed familiarity with the case to decide whether a class should be

certified. The Court will consider the expert witness affidavits Nelson references in

footnote 7 at Doc. 131 at 11 and Nelson's reply brief and supporting exhibits to avoid

undue prejudice and to engage in a "rigorous" examination to ensure the class

satisfies Rule 23. *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 351 (2011)

(explaining the rigorous analysis in which a court should engage to consider the

factual and legal issues in plaintiffs' cause of action). To conduct a rigorous analysis a court systematically walks through the elements of each claim and identifies which ones produce common answers. *In re Nissan N. Am., Inc. Litig.*, 122 F.4th 239, 246 (6th Cir. 2024).

### A. 23(a)(1)—Numerosity

Nelson alleges that there are more than one million potential Towable RV owners in the proposed class. (Doc. 131 at 10.) No bright line rule exists for numerosity, but courts almost always deny certification of a class where the class contains fewer than 20 putative members. *See, e.g.*, *Gen. Tel. Co. of Northwest v. EEOC*, 446 U.S. 318, 330 (1980). Courts occasionally deny certifications for failure to meet the numerosity requirement when the proposed class stands between 20 and 40 putative members. *See, e.g.*, *Peterson v. Albert M. Bender Co., Inc.*, 75 F.R.D. 661, 667 (N.D. Cal. 1977)*; Anderson v. Home Style Stores, Inc.*, 58 F.R.D. 125, 130 (E.D. Penn. 1972). The numerosity requirement may be satisfied if the exact size of the class remains unknown, but a court can determine by way of common sense and general knowledge that the class may be large. *Turcios v. Carma Labs., Inc.*, 296 F.R.D. 638, 645 (C.D. Cal. 2014).

Nelson alleges that its claimed wiring defect affects "at least 60%" of Forest River's Towable RVs. (Doc. 131 at 10.) Nelson has retained experts who have opined that more than 1 million Towable RVs likely suffer from the defective wiring.

8

(*Id.*) Nelson also points out that approximately 50,000 RV units already have been partially recalled. Nelson alleges that the recalls issued by Forest River, including the 2024 recall, failed to cover all the wiring defects at issue. (*Id.*)

Forest River offers no facts to the contrary. Forest River's recall covered inspection of the Fifth Wheel RV's 7-way cord and changing the charge line to the correct side of the breaker. (Docs. 150 at 28, 83-1 at 3.) The difference in wiring schematics across the Towable RVs and the way the Towable RVs are wired remains in dispute. This dispute indicates that a large discrepancy may exist in the number of Towable RVs actually affected. (*See* Doc. 129-1 at 10-11, 28-29.) Nelson and his experts also allege that Forest River continued to manufacture its Towable RVs in the same way with the same wiring system after Forest River initiated the recall and identified the alleged wiring defect. (*Id.* at 14.) The Court finds that Nelson meets the numerosity requirement, both for a nationwide class action and a Montana class action, based on the potentially large number of Towable RVs that Nelson alleges the recall failed to capture. *See, Turcios* 296 F.R.D. at 645.

### B. 23(a)(2)—Commonality

A class meets the commonality requirement through the existence of the "same injury" resulting in a "common contention" that is "capable of class wide resolution . . . in one stroke." *Walmart Stores, Inc. v. Dukes,* 564 U.S. 338, 350 (2011). Commonality requires the plaintiff to demonstrate that the class members

9

"have suffered the same injury." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 157 (1982). The U.S. Supreme Court has narrowed this inquiry significantly.

It no longer suffices to demonstrate that the putative class members suffered injuries under the same law. *Dukes*, 564 U.S. at 350. To establish commonality, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies." *Parra v. Bashas', Inc.*, 536 F.3d 975, 978 (9th Cir. 2008) (internal citations omitted) (finding that the district court abused its discretion in Title VII discrimination claim in determining that the proposed class lacked commonality on the fact that the employee pay scales had been equalized at the time of its order). A court must identify facts central to elements of the alleged causes of action. Questions that meaningfully produce common answers that can move the lawsuit along stand at the crux of class certification. *Dukes*, at 350. For purposes of Rule 23(a)(2), even a single common question will do. *Id*. at 359.

Nelson asserts that his class action can answer common questions of law and fact arising from Forest River's uniform conduct in designing, manufacturing, and selling Towable RVs. (Doc. 131 at 11.) Nelson contends that each putative class member shares the same core question: do Forest River Towable RVs contain a defective, hazardous, seven-way wiring system, and did Forest River act wrongfully in a manner that caused economic loss and safety risks to owners? (*Id*. at 13.) Nelson

10

contends that common evidence can provide the answer to this question. Nelson alleges that putative class members "have incurred damages in the form of costs of inspection and potential repair of their RVs . . .." (Doc. 147-1 at 41.)

Nelson suggests that the following questions of law and fact prove common to the class:

1.  whether Forest River promised consumers that its Towable RVs would comply with applicable standards;
2.  whether Forest River's Towable RVs violate applicable standards;
3.  whether Forest River's quality control process failed to guarantee its Towable RVs complied with applicable standards;
4.  whether Forest Rivers' RVs need to be inspected due to insufficient quality controls;
5.  whether Forest River's RVs must be fixed;
6.  whether Forest River's conduct constitutes negligence;
7.  whether Forest River made negligent misrepresentations;
8.  whether Forest River violated the Montana Consumer Protection Act;
9.  whether Forest River's conduct warrants punitive damages;
10. whether the Plaintiff, Class, and Subclass are entitled to be notified and warned about the wiring defects and are entitled to the entry of final injunctive relief compelling Forest River to issue a notification or warning to all Class members of such wiring defects;
11. whether the Plaintiff, Class, and Subclass are entitled to actual damages, including:
    a. Sufficient funds to inspect each Towable RV and to bring those with wiring defects into full compliance with applicable standards;
    b. Sufficient funds to compensate the Plaintiff, Class, and Subclass members for losses associated with inspection and repair, including but not limited to the time and expense associated with bringing the Towable RVs to a satisfactory repair facility and the loss of use while each affected RV is being repaired, and associated diminishment in value; and
    c. The Plaintiff will present a damages model that uniformly calculates the cost associated with the inspection, associated damages including time and cost associated with the inspection process,

11

        repairs, and loss of use across all class members using standardized
        data from Forest River's records and other reliable methods.

12. whether the Plaintiff and members of the Class and Subclass are entitled
    to equitable relief, including but not limited to restitution or preliminary
    and permanent injunction; and

13. whether the Plaintiff and members of the Class and Subclass are entitled
    to attorney fees and costs.

(Doc. 147-1 at 44-45.)

Nelson cites *Armstrong v. Davis* to support the notion that "commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all" class members in the same way. (*Id.*, citing 275 F.3d 849,868.) *Armstrong* involved disabled prisoners and parolees suing over prison conditions and alleging that the prison engaged in system-wide violations of federal disability law. The Ninth Circuit restated its previous holdings that "in civil-rights suit . . . commonality is satisfied where the lawsuit challenges a system-wide practice or policy that affects all of the putative class members." *Armstrong* at 858. citing *LaDuke v. Nelson*, 762 F.2d 1318, 1331–32 (9th Cir. 1985), *amended*, 796 F.2d 309 (9th Cir. 1986). Nelson alleges no civil rights violations here and his reliance on *Armstrong* proves misplaced.

Nelson's proposed nationwide class proves contrary to what courts have found to be required regarding discrimination claims on a class-wide basis. *See Cole v. Montana Univ*. Sys., No. CV-21-88-M-BMM, Dkt. 58 at *16-17 (D. Mont. October 3, 2022) (finding that the plaintiffs failed to provide "significant proof" that

the defendants acted under a general policy of discrimination, and resolution would require distinct inferences.) The plaintiffs in *Cole* sought class certification based on common questions of sex-discrimination. The Court found that "answering whether [the university] subjected [one plaintiff] to sex discrimination would not provide clarity whether [the university] subjected [the other plaintiff] to sex discrimination." *Id*. at *18. The Court determined that the resolution would require distinct inquiries into each plaintiffs' circumstances, qualification, and the alleged discrimination. *Id*.

The Court questions whether distinct inquiries would be required as to the appropriate wiring system for each type of Towable RV manufactured by Forest River. To determine commonality under Rule 23(a)(2) only requires plaintiffs to pose questions that "affect at least one disputed element of the class's claim" and that common answers must prevail. *See Speerly v. Gen. Motors, LLC*, No. 23-1940, 2025 WL 1775640, at *5 (6th Cir. June 27, 2025). No commonality exists if a court answers "yes" to some questions and "no" for others. *In re Nissan N. Am., Inc. Litig.*, 122 F.4th 239, 247 (6th Cir. 2024) (internal citations omitted). A careful analysis of commonality must assess variance across the class and explain how the differences affect class certification. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

A review of *In re Nissan* highlights the challenge presented here regarding commonality. The district court in *In re Nissan* certified a class action with 10 separate subclasses brought by purchasers of fourteen models of cars manufactured

13

by the defendant equipped with automatic electronic braking systems. 122 F.4th at 244. The plaintiffs alleged that a single radar problem supported each state-law claim. The plaintiffs presented an expert report that identified the radar systems as the "root cause" of the phantom brake activations. *Id.* The defendant acknowledged that an incorrect prompt from the radar could pose a safety hazard. The defendant noted that it had upgraded its braking system on newer models. The defendants further opposed class certification as the case involved dozens of distinct products and many versions of those products. *Id.* at 248.

Moreover, the defendants contended that the case did not concern one product liability tort action about one alleged defect but dozens of distinct consumer claims, including claims for express warranty, implied warranty, fraudulent concealment, consumer protection, and unjust enrichment. *Id.* The defendant's expert observed that brake-related warranty claim rates varied widely across vehicle model and software update levels. *Id.* Owners of newer models were significantly less likely to seek repairs for their vehicles, which indicated that different claimants experienced different defects based on different combinations of vehicle models and software versions. *Id.* Some of the plaintiffs purchased their vehicles before the release of later model versions and updates. *Id.* The varying purchase dates affected the defendant's knowledge of the defects depending on when each claimant purchased the car. *Id.* The Sixth Circuit concluded that the case did not involve one product

liability claim but a range of warranty, fraud, and consumer claims, each with distinct individualized elements. As a result, the case did not lend itself to the types of common questions and answers that Rule 23 was designed to facilitate. *Id.*

The differences across Nelson's proposed nationwide class likewise create commonality problems that are not easily resolved in one stroke on a nationwide basis. Nelson claims that Forest River engages in uniform conduct when designing and installing the seven-way wiring system in its Towable RVs. (Doc. 131 at 11.) Forest River counters that there is no common evidence that would effectively answer Nelson's questions. (Doc. 150 at 37.) Nelson similarly asserts a range of claims, the elements for which would vary across the different states where owners purchased their Forest River Towable RV. Forest River also recalled 100% of the Cedar Creek Fifth Wheel RVs and Puma Fifth Wheel RVs in 2024. Forest River also did not have a uniform wiring system in place across each of its manufacturing facilities due to the discrepancies in the way the RVs are structurally designed. These distinctions would pose problems of attaining a "yes" or "no" answer to questions presented as part of Nelson's proposed nationwide class action.

Analysis of other cases support the lack of commonality for a nationwide class action as alleged by Nelson. The plaintiff in *Daffin v. Ford Motor Co.* alleged that a defective throttle body in his car caused the accelerator to stick. 458 F.3d 549, 550 (6th Cir. 2006). The plaintiff sought a class certification on cars of the same two-

year period that had identical throttle bodies. *Id*. The Sixth Circuit upheld the district court's determination of commonality because whether the throttle body was defective was common to all car models. *Daffin*, at 552. The Sixth Circuit came to the opposite conclusion in *In Re Ford Motor Company*. 86 F.4th 723, 727 (6th Cir. 2023). Putative class members in *Ford* sued over an alleged design defect in their F-150 trucks in certain model years. *Id*. at 726. The putative class members alleged that internal seals in the brake system caused the truck's brake system to malfunction. *Id*. The class members sought class certification of a Rule 23(b)(2), (b)(3), or a (c)(4) class. The district court denied a (b)(2) and (b)(3) class, but certified a (c)(4) class. The Sixth Circuit determined that the district court had abused its discretion by failing to address whether the design and manufacturing changes proved material in a way that affected the commonality of claims. *Id*. at 728-729.

Other decisions indicate that Nelson's proposed nationwide class does not "easily satisfy the commonality requirement." *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1172 (9th Cir. 2010). The proposed class members in *Wolin* were harmed by the same defect and covered by the same warranty found in vehicles of the same make and model. *Id*. The Ninth Circuit reversed a district court's denial of class certification and concluded that the putative class all alleged the same defect. The Ninth Circuit determined that putative class members satisfied the commonality requirement because the injury involved the same alleged defect, covered by the

same warranty, and found in vehicles of the same make and model. *Id.* The defect came in the form of the defective geometry in the car's alignment that caused uneven and premature tire wear. *Id*. at 1170-72.

We have no similar conformity here on the scope of the alleged wiring defect as claimed by Nelson. Forest River contends that its Towable RV fleet present material differences in the way they are wired. (Doc. 150 at 39.) The parties dispute which Towable RVs fall under the exceptions to the RVIA standards. Forest River concedes that its Towable RVs are subject to the RVIA standards. (Doc. 154 at 4.) Forest River argues that the wiring schematics used by Forest River were for reference only and do not represent strict design documents. (Doc. 150 at 39; *See e.g.* Doc. 150-2 at 2-3.) Forest River's former Chief Engineer, William Conway ("Conway"), explained that what the schematic references "doesn't necessarily mean [all the wiring components] were all there." (Doc. 150-5 at 6.) Forest River's plant managers seemingly possessed discretion to include or exclude wiring components based on the design of the fifth wheel RVs or the features available on the RV. Forest River admittedly wired some of the fifth wheel RVs incorrectly, but the defective wiring was remedied by a recall. (Doc. 150 at 28.) The discretion present in Forest River's operations model creates a commonality problem. Nelson fails to show how Forest River acted in such a uniform way that resolution would be

provided in one stroke on a nationwide basis across all Towable RVs. *See Dukes,*

564 U.S. 338, 355–56 (2011).

Forest River's expert, James Keough, Jr., P.E. ("Keough"), concludes that

"the ANSI/RVIA low voltage standard requires an overcurrent protective device if

the wiring system enters the vehicle. If the wiring system does not enter the vehicle,

the standard does not require an overcurrent protective device." (Doc. 150-4 at 11.)

Keough cites RVIA Standard 3-5. (*Id*.) The Court finds Keough's interpretation of

the standard to be reasonable based on a plain reading of the RVIA Standards. RVIA

Standard 3-1 states that "[a]ll conductors shall be provided with overcurrent

protection." Standard 3-1, ANSI/RVIA LV STANDARD FOR LOW VOLTAGE

SYSTEM IN CONVERSION AND RECREATIONAL VEHICLES (RVIA 2020).

Standard 3-5 seems to create an exception to the Standard 3-1, however, and requires

overcurrent protection only if the circuit enters the RV. Standard 3-5 states: "The

overcurrent-protective device shall be installed in an accessible location on the

vehicle within 18 in. (457 mm) of the point where the power source connects to the

vehicle circuits." Standard 3-5, ANSI/RVIA LV STANDARD FOR LOW

VOLTAGE SYSTEMS IN CONVERSION AND RECREATIONAL VEHICLES

(RVIA 2020).   An exception under Standard 3-5 states: "External low-voltage

supply shall be permitted to be fused within 18 in. (457 mm) *after entering* the

vehicle or after leaving a metal raceway." *Id*. (emphasis added). RVIA Standard 3-

18

5 Other RVIA Standards require conductor protection, routing patterns, and securing wires in a certain fashion. *See e.g., Id*. Standards 5-1, 5-2, 5-2.1.

Keough's conclusion that the low voltage systems for the travel trailers and popup style RVs fall under the exception to the RVIA Standard that requires no overcurrent protection for circuits that do not enter the RV appears to be a reasonable one. Nelson's experts disagree and contend that all Towable RVs should be equipped with overcurrent protection. (Docs. 129-1 and 129-2.) The fifth wheels, by contrast, seem to fall under the RVIA Standards that require overcurrent protection because the wiring physically enters the RV. Forest River admittedly wired some of its Towable RVs incorrectly, including the Puma Fifth Wheel RVs and the Cedar Creek RVs. (Doc. 150 at 27-28.) Forest River recognized the problem and issued a recall in 2024, which covered inspection and repair costs. (*Id*. at 28; Doc. 83-1) Nelson continues to allege that the 2024 recall did not address the alleged wiring defects. (Doc. 147-1 at 12, 21-22)

Nelson's abstract questions make it difficult for the Court to determine whether common answers can be generated uniformly across the broad nationwide class that he seeks to certify. Nelson admittedly only needs to propose one single significant question of law and fact. *Mazza v. Am. Honda Motor Co*., 666 F.3d 581, 589 (9th Cir. 2012), overruled on other grounds by *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022). Forest River's

19

discretion on how to wire each Towable RV to comply with the relevant standards complicates nationwide class wide resolution. The seven-way wiring system may be present in each Towable RV type, but each is *designed* differently not purely for aesthetics or preference. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 854 (6th Cir. 2013) (emphasis added) (holding that changes in design were for aesthetics and did not render the products materially different).

Common questions such as "whether Forest Rivers' RVs need to be inspected due to insufficient quality controls" or "whether the Class RV seven-way wiring failed to comply with applicable standards," likely would generate answers that vary across the class as defined and would not be resolvable in one stroke. (Docs. 131 at 11; 147-1 at 44.); see also *In Re Ford Motor Company*. 86 F.4th at 727-29. These disparate answers could be remedied by certification of a more specific class. For example, Nelson has alleged that he suffered actual injury from the lack of overcurrent protection on his Puma Fifth Wheel RV. Nelson purchased his Puma Fifth Wheel RV in Montana. Forest River instituted a recall of the Puma Fifth Wheel RVs due to an alleged wiring defect. Nelson contends that Forest River's recall failed to capture all defective RVs. The Count need not resolve definitively the effectiveness of Forest River's recall in remedying the wiring defect at the class certification stage. This effectiveness of Forest River's recall of the Cedar Creek

20

Fifth Wheel RVs and the Puma Fifth Wheel RVs would be resolved through a Montana class action for owners from Montana who suffered a defect similar to the one cited by Nelson and who relied under Montana law on the representations made by Forest River about its compliance with applicable design standards. The Court discusses Nelson's adherence to Rule 23(b)(3) below.

### C. 23(a)(3)—Typicality

Representative claims are "typical" if the claims of the putative class are expected to be "reasonably coextensive with those of absent class members," though they "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

Nelson argues that his claims mirror those of the putative class members because they show that "the RVs' wiring system is defective and requires inspection and those with violations of applicable standards repaired." (Doc. 131 at 14.) As discussed above, Forest River uses differing wiring methods for different types of Towable RVs. Nelson's experts opine that Forest River incorrectly wires all its

Towable RVs. (Docs 129-1, 129-2.) Forest River's experts contend that Nelson's experts misinterpret the RVIA standards, and its RVs are wired correctly (Doc. 150 at 40.).

Nelson only has owned a Puma Fifth Wheel RV, which seems to be subject to a wiring system that requires overcurrent protection. Nelson's proposed nationwide class attempts to change the purported standards developed by the RVIA to require Forest River to rewire its entire fleet of Towable RVs based on Nelson's interpretation of the RVIA standards. Nelson fails to show any instance where other potential class members have suffered similar injury and that the harm suffered by Nelson remains typical of the putative nationwide class. The Court finds that a nationwide class proves inappropriate given the facts presented. The Court will consider, however, certifying a Montana class consisting of Cedar Creek Fifth Wheel RVs and Puma Fifth Wheel RVs manufactured by Forest River.

Nelson argues that any cognizable harm may suffice to show typicality. (Doc. 157 at 12, citing *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1173 (9th Cir. 2010).). The class representatives in *Wolin* sought class certification based on a defective alignment condition on an identical model car that caused premature tire wear. *Wolin* 617 F.3d at 1170-71. The Ninth Circuit concluded that typicality had been met when the car manufacturing company failed to identify unique defenses as to the class representatives' claims. The Ninth Circuit reasoned that the timing of

22

alleged injury and factual differences did not render the claims atypical of the class. *Id*. at 1175.

Nelson provides no facts to indicate the other putative class members suffered the same or similar injury. Forest River argues that Nelson's claims of negligent misrepresentation and violation of the MCPA remain subject to unique defenses. (Doc. 150 at 43-44.) Nelson provides no evidence, after nearly three years of discovery and the filing of four amended complaints, that other putative class members relied on alleged misrepresentations by Forest River or suffered any harm as a result. Nelson's claims remain speculative with regard to Towable RVs manufactured by Forest River other than the Cedar Creek Fifth Wheel RV and the Puma Fifth Wheel RV.

Forest River also notes the differences in wiring between Nelson's Puma Fifth Wheel RV and its Cedar Creek Fifth Wheel RV and the other Towable RVs manufactured by Forest River. The cases cited by Nelson typically deal with a cognizable class that had suffered some degree of harm. Nelson fails to identify what he characterizes as "frequent claims" by Forest River's customers of fires or defects similar to those of Nelson's fifth wheel. *See Nguyen v. Nissan N. Am., Inc.,* 932 F.3d 811, 815 (9th Cir. 2019). Nelson also cites no evidence of similar suits brought against Forest River based on a similar defect. *See In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.,* 722 F.3d 838, 844 (6th Cir. 2013). A review of

23

relevant case law indicates that courts have required at least some indication of widespread harm among the putative class members, which Nelson lacks here for a nationwide class action. *See TransUnion LLC v. Ramirez,* 594 U.S. 413, 431 (2021) (requiring class members to have suffered actual harm to have Article III standing); *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) (fact that a suit may be a class action adds nothing to the question of Article III standing, for even named plaintiffs who represent a class must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong).

Forest River argues first that Nelson cannot show, in fact, that he relied on the RVIA seal affixed to the Towable RVs to indicate compliance with RVIA Standards. A negligent misrepresentation claim "requires proof of a false or misleading statement negligently provided . . . to guide another who then justifiably relied on the misrepresentation to the person's detriment." *Anderson v. ReconTrust Co., N.A.*, 407 P.3d 692, 699 (Mont. 2017). Nelson provides no evidence that he relied on the RVIA seal or even knew of the RVIA standards in deciding to purchase his Puma Fifth Wheel RV.

Courts have recognized, however, "defense of non-reliance is not a basis for denial of class certification" and reliance is more appropriately considered at the merits stage. *See, e.g. DZ Rsrv. v. Meta Platforms, Inc.*, 96 F.4th 1223, 1239 (9th

Cir. 2024), cert. denied, 145 S. Ct. 1051, 220 L. Ed. 2d 381 (2025), citing *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 509 (9th Cir. 1992). The Court agrees with the analysis in *DZ Rsrv.* and will certify a class consisting of Cedar Creek Fifth Wheel RVs and Puma Fifth Wheel RV owners in Montana. Nelson's alleged reliance on Forest River's misrepresentation seems to satisfy the typicality requirement for the limited class of Cedar Creek Fifth Wheel RVs and Puma Fifth Wheel RV owners in Montana who were not made whole by Forest River's recall. *Nguyen*, 932 F.3d at 815.

### D. 23(a)(4)—Adequacy of Representation

Under Rule 23(a)(4), Plaintiffs must fairly and adequately protect class interests. Fed. R. Civ. P. 23(a)(4). This inquiry presents a two-fold test. First, "the named representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). And second, whether the named plaintiffs and counsel will litigate vigorously on behalf of the entire class. *Ellis v. Costco Wholesale Corp.*, 657 F. 3d 970, 985 (9th Cir. 2011).

Nelson argues that his "interests are fully consistent with those of the Class" and "he seeks to hold Forest River accountable for the seven-way wiring defects and to obtain damages and injunctive relief . . .." (Doc. 131 at 16.) This view appears to reflect counsel's desire rather than Nelson's position. "A party who is not familiar

with basic elements of its claim is not considered to be an adequate representative for the class because there is no sense that there is an actual party behind counsel's prosecution of the action" *Burkhalter Travel Agency v. MacFarms Int'l, Inc.*, 141 F.R.D. 144, 153 (N.D. Cal. 1991).

The proposed class representative in *Burkhalter Travel Agency* lacked familiarity with who the proposed class members would be and lacked a basic understanding of the defendant's identity. *Id*. Nelson sums up his knowledge of the alleged wiring defect as "an electrical issue." (Doc. 150-3 at 11.)  Nelson's counsel objected to any response by Nelson regarding what he thought his claims were regarding unfair or deceptive acts. (*Id*.) Nelson acknowledges that a class action has been filed but he conveyed no further information. (*Id*. at 12.)

The Court cannot assess, and Nelson does not provide, any factual indication that Nelson would be an adequate class representative for a nationwide class. Nelson lacks any knowledge of what wiring components may have caused alleged damage in Towable RV types other than his Puma Fifth Wheel. Nelson's deposition testimony shines light on Nelson's desire to seek remedies for the wrongs that he and his family suffered, but none on Nelson's desire to act as a class wide representative. (Doc. 150-3 at 11-12.) Nelson also lacks familiarity with the RVIA standards and provided no indication that he understands their meaning. (Doc. 150-3 at 11.) Nelson falls short in meeting the adequacy of representation requirement

for a nationwide class. The Court acknowledges that the injury alleged by Nelson would suffice to support his claim to be an adequate class representative for a Montana class action of owners of Cedar Creek Fifth Wheel RVs and Puma Fifth Wheel RVs who have not been affected by Forest River's recall. Nelson is aware of the requirements it took to submit his defective RV for repair and readily bought another Puma fifth wheel RV. Nelson's familiarity with Forest River's operation given his interaction with it during his own repair adequately prepared him to represent a class present in Montana.

## II.   Rule 23(b) Requirements

### A. Rule 23(b)(3), commonality, predominance, and superiority.

The Court turns its focus to whether Nelson's class claims would predominate over any questions affecting only Nelson's claims and whether a nationwide class action would be superior to any other method of resolution. Federal Rule of Civil Procedure 23(b)(3) requires a district court to find that "questions of law or fact common to class members predominate over any questions affecting only individual members." *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997). A Rule 23(b)(3) class is not a mandatory class, and putative class members can opt out after having received notice. *Ellis v. Costco Wholesale Corp*., 657 F. 3d 970, 987 (9th Cir. 2011). Rule 23(b)(3) permits class certification where a class action may not be required but would be more convenient. *Amchem Products, Inc., 521 U.S. at 615*.

27

The issues of predominance and superiority allow Rule 23 to "to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote [. . .] uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable result.'" *Id.* (quoting Fed. R. Civ. P. 23(b)(3) advisory committee's note to 1966 amendment)). Rule 23(b)(3) calls upon courts to give careful scrutiny to the relationship between common and individual questions in a case. An individual question is one where "members of a proposed class will need to present evidence that varies from member to member." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). A common question involves one where "the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.*

*Tyson Foods* rejected an employer's claim that differences in the type of protective equipment worn by each of its employees defeated class certification of a Fair Labor Standards Act claim when the employees alleged that the employer failed to pay employees for time spent putting on necessary protective equipment and removing the equipment at the end of each shift. *Id.* Nelson claims that a wide variety of towable vehicles manufactured by Forest River suffer from a wiring defect. The employees in *Tyson Foods* all had to wear some type of protective equipment. The employer paid no employees, regardless of their protective equipment, for the time

28

to put on and remove the protective equipment. All Towable RVs manufactured by Forest River contain a wiring system. The type of wiring system varies by vehicle type. Nelson's claim would force the Court to analyze the adequacy of the wiring system installed in each of the separate vehicle types and whether the installed wiring systems meet applicable standards and whether purchasers relied on Forest River's representations as to adherence to the applicable standards. Nelson's proposed Montana class action would simplify the analysis when limited to Puma Fifth Wheel RVs of the type owned by Nelson.

The requirements of Rule 23(b)(3) substantially overlap with the requirements of Rule 23(a) because plaintiffs must prove that there are "questions of law or fact common to class members" that can be determined in one stroke. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022). The 23(b)(3) test is "far more demanding," *Wolin v. Jaguar Land Rover N. Am.*, LLC, 617 F.3d 1168, 1172 (9th Cir. 2010), (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)). The Court notes that Nelson filed this case in 2022. The parties have had nearly three years to pursue discovery. The Court has granted extensions and allowed discovery beyond the typical limitations. Nelson has had ample time to develop the facts necessary to demonstrate that his class claims and questions predominate.

As discussed above, Nelson proposed nationwide class action presents the Court with questions that are not resolved easily in one stoke with common answers and similar factual evidence for a nationwide class of all RVs manufactured by Forest River. The remaining evidence Nelson presents is better resolved through a Montana class comprised of owners of Cedar Creek Fifth Wheel RVs, and Puma Fifth Wheel RVs such as the one owned by Nelson. Nelson's request for a nationwide class action further proves inappropriate, given the variation in state negligence, negligent misrepresentation, and consumer-protection laws. "No class action is proper unless all litigants are governed by the same legal rules. Otherwise, the class cannot satisfy the commonality and superiority requirements of Rule 23(a), and (b)(3)." *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015 (7th Cir. 2002)

Nelson's claims seemingly pose common questions that are easily answered yes or no. The fact that Nelson simply raises these apparent yes or no questions alone, is not sufficient to obtain nationwide class certification. Nelson has failed to show that the potential class members on a nationwide basis have suffered the same injury that can be resolved in one stroke. *See Dukes*, 564 U.S. 338, 350 (citing *Gen. Tel. Co. of SW. v. Falcon*, 457 U.S. 147, 157 (1982)). It seems possible that an Montana class exists regarding defectively wired Cedar Creek Fifth Wheel RVs and Puma Fifth Wheel RVs that were the subject of Forest River's recall. The Court accordingly will deny Nelson's motion for class certification on a nationwide basis.

Forest River attempted to address this defective wiring problem, however, by issuing a recall and fixing the Fifth Wheel RVs it had in its possession. It remains in dispute whether the recall addressed the outstanding problems with the wiring in the Cedar Creek and Puma Fifth Wheel RVs.

During the class action certification phase, the Court cannot accept Nelson's allegations as true or construe evidence in light most favorable to either side. *See Speerly v. Gen. Motors, LLC*, 2025 WL 1775640, at *4 (6th Cir. June 27, 2025). The Court is left to analyze the facts in front of it by a preponderance of the evidence. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 352 n.7 (2011). Forest River issued a recall of fifth wheels in which "Forest River conducted an inspection of a model year 2020 Puma Fifth Wheel trailer. During the inspection, it was noted that . . . the overcurrent protection from the trailer battery to the junction box connected to the incorrect side of the breaker for the 7-way trailer plug." (Doc. 83-1 at 4.) Forest River issued a recall for 100% of its Puma Fifth Wheel RVs and Cedar Creek Fifth Wheel RVs from 2004-2024. (*Id.*)

Nelson has provided no facts of any alleged injuries suffered by Forest River RV owners beyond what Nelson himself suffered to support a finding that the Court effectively could draw common answers on a nationwide basis to the questions posed by Nelson. Forest River wires its wide variety of Towable RVs differently and some Towable RVs may fall under an exception to the RVIA standards. Nelson also

31

fails to provide facts beyond his own incident that would indicate that the alleged wiring defect causes such catastrophic failure across all Towable RVs as Nelson alleges.

Nelson presents the Court with a problem similar to that presented in *Speerly* where car owners sought nationwide class certification against a manufacturer. 2025 WL 1775640, at *2. Putative class members sought nationwide class certification on two issues related to the car's performance and operation. *Id*. at *1-2. Putative class members first alleged that the car manufacturer used transmission fluid that caused operational problems. *Id*. The second issue alleged that the transmission itself malfunctioned due to varying pressures. *Id.* at *2.

The car manufacturer attempted to fix the reported problems by issuing notices to its manufacturing facilities to change minor details about manufacturing components. *Id*. The car manufacturer later realized that the problems could not be fixed without major redesign of the transmission. *Id*. The car manufacturer redesigned the transmission and released a new model, thereby solving the outstanding issues being reported. *Id*. The putative nationwide class consisted of the car owners who purchased the first generation of the car and not the new model. *Id.*

The Sixth Circuit recognized limitations that courts have put on cases that involve merely potential risk of harm rather than tangible or concrete injury. *Id.* at *3. Courts generally have forbidden classes where some members without manifest

defects would have to "piggyback" on those suffering manifest defects. *Id.* at \*3, citing *Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 988 (8th Cir. 2021); *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 530 (7th Cir. 2024) (excluding class members who would suffer a "potential risk of harm"). Nelson brings claims of negligent misrepresentation and violation of the Montana Consumer Protection Act.

Nelson's negligent misrepresentation claims require that Forest River misrepresented material facts that it knew or should have known were false or misleading. Nelson must have relied on those misrepresentations and suffered injury based on his reliance. Nelson's allegation of Forest River having violated the Montana Consumer Protection Act requires a similar showing of intent and deceptive acts by Forest River. *See* Mont. Code. Ann. §§ 30-14-101,103 204, This line of inquiry inevitably would vary with each consumer and each state in which the consumer purchased the Forest River RV and depend on the location of the consumer not the manufacturer. *See In re Bridgestone/Firestone, Inc.,* 288 F.3d 1012, 1018 (7th Cir. 2002) (holding that a nationwide class action would be unmanageable due to the variance of law in multiple jurisdictions); *Mazza*, 666 F.3d at 590, overruled on other grounds by *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651 (9th Cir. 2022) (holding that the district court abused its discretion in certifying a class under California law that contained class

33

members who purchased or leased their car in different jurisdictions with materially different consumer protection laws).

The Court recognizes that it has broad discretion to divide a class "into subclasses that are each treated as a separate class for the purposes of the action." *Cole* at *19 (internal quotations and citations omitted). Nelson requests either a nationwide class or a Montana class that includes all Towable RVs manufactured by Forest River. (Doc. 147-1 at 40.)   The Court remains unconvinced by the evidence presented by Nelson, however, and sees no injuries that connect the nationwide class members to the injuries that Nelson allegedly suffered from his Puma Fifth Wheel RV. Nelson also provides no facts indicating that Forest River provided information to consumers that it knew was false or misleading. To exercise the Court's discretion and divide the proposed plaintiffs into separate classes for the different states would be inappropriate and is not supported by the evidence.

The evidence also does not support certifying a Montana class of all Towable RVs at this juncture. Nelson provides no facts as to the number of Forest River Towable RV owners in Montana. Forest River also does not manufacture Towable RVs in Montana, which weighs against nationwide class certification. The Court recognizes that Forest River acknowledged a defect in the wiring of its Cedar Creek Fifth Wheel RVs and Puma Fifth Wheel RVs when it issued a recall on these RVs. Whether the recall proved adequate to resolve the defects of these fifth wheel RVs

remains unresolved. The Court will therefore certify a Montana class consisting of Cedar Creek and Puma Fifth Wheels. The Court is unaware of other potential class members who have suffered injuries similar to the type alleged by Nelson. The Court deems it prudent to deny nationwide class certification in the absence of other alleged injuries similar to the one suffered by Nelson that was not addressed either by warranty or recall.

Nelson's classes, as proposed, likely would involve a burdensome resolution and categorization of each Towable RV model, and an inquiry into the alleged wiring defect, or lack of defect, for each Towable RV type. The discretion exercised by Forest River's plant managers during manufacturing process for each make and model of Towable RV also creates distinct inquiries of the alleged harm. What might solve an alleged wiring defect in one Towable RV may not answer the wiring problem in another Towable RV.

Investigation by Nelson's expert of over 400 Towable RVs also seems to reveal a host of potential problems across Towable RVs related to different parts not necessarily linked to faulty wiring. Many of these identified defects were addressed through warranty claims or recalls. Differing RV components create additional commonality and predominance problems by increasing the variety of issues that may arise during an inspection.  Nelson's questions also fail to generate the type of answers that would resolve elements of his claims on a nationwide basis. Nelson's

failure to show cognizable injury among the putative nationwide class members defeats his request for nationwide class certification at this stage.

Nelson's questions seem best addressed on a limited class level of Montana purchasers of Cedar Creek Fifth Wheel RVs and Puma Fifth Wheel RVs of the type owned by Nelson and subject to Forest River's recall for alleged defective wiring. Nelson's questions regarding a nationwide class of all Forest River Towable RV owners would require distinct inferences that likely would result in vastly different answers depending on the manufacturing plant, Towable RV make and model, Towable RV user, and Towable RV place of purchase. The Court deems is appropriate and use its discretion to certify a limited class pursuant to Rule 23(b)(3) comprised of all persons in Montana who own a Forest River Cedar Creek Fifth Wheel RV and Puma Fifth Wheel RV other than for resale or distribution. The limited Montana class provides an efficient vehicle to address the adequacy of Forest River's recall in remedying alleged defects in the wiring of the Cedar Creek Fifth Wheel RVs and the Puma Fifth Wheel RVs.

## ORDER

Accordingly, **IT IS ORDERED**:

1) Nelson's Motion for Nationwide Class Certification (Doc. 130) is **DENIED**.

36

2) Nelson's Motion for Montana Class Certification of all Forest River Towable RVs (Doc. 130) is **DENIED**.

3) Nelson's Motion for Montana Class Certification of Cedar Creek Fifth Wheel RVs and Puma Fifth Wheel RVs (Doc. 130) pursuant to Rule 23(b)(3) is **GRANTED**. The Montana Class shall consist of all persons in Montana who own a Forest River Cedar Creek Fifth Wheel RV or a Forest River Puma Fifth Wheel RV other than for resale or distribution.

4) Nelson's request to amend his complaint to reinstate the Indiana claims is **DENIED**.

5) Forest River's Motion to Strike (Doc. 158) is **DENIED**.

**DATED** this 1st day of August, 2025.

_____
Brian Morris, Chief District Judge
United States District Court