IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| JAY NELSON, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br>FOREST RIVER, INC.,<br><br>Defendants. | **CV-22-49-GF-BMM**<br><br>**ORDER** |

**INTRODUCTION**

Plaintiff Jay Nelson ("Nelson") has filed a Complaint and four amended Complaints. (Docs. 1, 38, 39, 45, 147-1.) Nelson also sought to pursue a class action against Forest River, Inc. ("Forest River") on May 23, 2022. (Doc. 1.) The Court granted in part, and denied in part, Nelson's motion for class certification. (Doc. 208). Nelson's claims for negligence, negligent misrepresentation, and violations of the Montana Consumer Protection Act remain. (Doc. 147-1 at 46-51.) The Court addresses Nelson's Motion for Partial Summary Judgment. (Doc. 174.) The Court separately will address Nelson's combined motion for sanctions and a supplemental motion for sanctions. (Docs. 174; 213.) The Court also will address Forest River's Motion for Summary Judgment (Doc. 171.)

1

## BACKGROUND

Nelson alleges in his Fourth Amended Complaint ("FAC") that Forest River failed to disclose violations of the applicable wiring design standards, actively concealed the alleged violations, and refused to remedy adequately the resulting wiring defects. (Doc. 147-1 at 2.) Nelson, a citizen of Montana, purchased a 2019 Palomino Puma Fifth Wheel trailer ("2019 Puma"). (*Id.* at 3.) Forest River manufactures Cedar Creek Fifth Wheels RVs ("Cedar Creek") and Palomino Puma Fifth Wheel RVs ("Puma"). Forest River distributes numerous other RV brands not mentioned here. Nelson alleges that his 2019 Puma started smoking from a wiring defect in the fifth wheel trailer's 7-way-wiring system.

Forest River is an Indiana corporation owned by Berkshire Hathaway. Forest River is a member of the Recreational Vehicle Industry Association ("RVIA"). The RVIA adopts standards that govern RVs. Forest River places an RVIA seal on its RVs, indicating its compliance with the RVIA's standards. (Doc. 147-1 at 4.) Forest River allegedly purchases the RVIA seal directly from RVIA, reflecting a contractual commitment. (*Id.* at 6.) The National Highway Traffic Safety Administration ("NHTSA") also governs Forest River as an Original Equipment Manufacturer (OEM) of RV products and parts. NHTSA enforces the National Traffic and Motor Vehicle Safety Act ("Safety Act"). The Safety Act includes safety standards applicable to RVs. (*Id.* at 8.) The Transportation Recall Enhancement

Accountability, and Documentation ("TREAD") Act, enacted in 2000, established early warning reporting requirements for vehicle manufacturers. (*Id.*)

The Court further relies on its recitation of the facts in previous orders. (*See* Docs. 98, 208.)

## LEGAL STANDARD

Summary judgment proves appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine material fact dispute requires sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *Id.* at 248.

I. **Nelson's Motion for Summary Judgment.**

Nelson seeks partial summary judgment against Forest River for alleged systemic safety defects in the seven-way wiring of its Cedar Creek RVs and Puma RVs. (Doc. 175 at 4.) Nelson alleges that the Cedar Creek RVs and the Puma RVs lacked required overcurrent protection in violation of RV safety standards. (Id.) The Court addressed many of the arguments in its order regarding class certification and adopts similar reasoning here.

   a. **Nelson's negligence claim.**

Nelson argues that RVIA standard 3-1 requires that "all conductors shall be provided with overcurrent protection." (*Id.* at 6, citing Standard 3-1, ANSI/RVIA LV STANDARD FOR LOW VOLTAGE SYSTEMS IN CONVERSION AND RECREATIONAL VECHICLES (RVIA 2020).) Forest River allegedly disclosed a "wiring schematic" in 2025 that indicated that it does not use breakers when wiring its Cedar Creek RVs and Puma RVs. (Doc. 175 at 6.) Nelson alleges that this omission creates a lack of overcurrent protection and violates the applicable RVIA standards, which creates a per se safety risk. (*Id.* at 6-7.) Forest River notes that Nelson heavily relies on facts not set forth in his prior pleadings and attacks Forest River's business-wide practice. (Doc. 186 at 5.) Nelson asks the Court to establish conclusively that Forest River was negligent and violated the RVIA Standards. (Doc. 175 at 9.)

A factual dispute remains whether Forest River's Cedar Creek RVs and Puma RVs comply with the RVIA Standard that requires "all conductors" to have overcurrent protection, whether exceptions apply, or whether Forest River's recall addressed the remedy that Nelson seeks. Nelson's assertions that he suffered damages for the cost of having to exchange his 2019 Puma RV and having to deal with repair and transportation costs remain in dispute. (Doc. 185 at 22-23.) Nelson's proposed class damages regarding inspection and repair costs also remain in dispute.

The Court will deny Nelson's motion for partial summary judgment on those grounds.

### b. Nelson's negligence misrepresentation claim.

Nelson also seeks summary judgment on Forest River's alleged false statement regarding compliance with RVIA and NFPA Standards when it affixes the RVIA seal on its Cedar Creek RVs and Puma RVs. (Doc. 175 at 9.) Nelson argues that the recalls issued by Forest River provide direct evidence of a manifest defect and indication that Forest River misled consumers. (*Id.* at 10.) Forest Rivers contends that Nelson must have justifiably relied on Forest River's alleged misrepresentations. (Doc. 186 at 11.)

A negligent misrepresentation claim requires the plaintiff to establish the following:

> (a) the defendant made a representation as to a past or existing material fact;
> (b) the representation must have been untrue;
> (c) regardless of its actual belief, the defendant must have made the representations without any reasonable ground for believing it to be true;
> (d) the representation must have been made with the intent to induce the plaintiff to rely on it;
> (e) the plaintiff must have been unaware of the falsity of the representation; it must have acted in reliance upon the truth of the representation, and it must have been justified in relying upon the representation;
> (f) the plaintiff, as a result of its reliance, must sustain damage.

*Barker v. Bank of Am., N.A.*, No. CV 17-21-BLG-SPW-TJC, 2019 WL 4261983, at *7 (D. Mont. Aug. 12, 2019), report and recommendation adopted, No. CV 17-21-BLG-SPW, 2019 WL 4257363 (D. Mont. Sept. 9, 2019) (citing *Kitchen Krafters,*

5

*Inc. v. Eastside Bank of Montana*, 789 P.2d 567, 573 (Mont. 1990) (overruled on other grounds)). Negligent misrepresentation has a lower standard of proof than fraud. *Id*. (citing *Barrett v. Holland & Hart*, 845 P.2d 714, 717 (Mont. 1992)). A showing of failure to use reasonable care or competence in communicating or obtaining information, rather than requiring intent to misrepresent, proves sufficient to meet a showing of negligent misrepresentation. *Id*.

The Montana Supreme Court concluded that claims of negligent misrepresentations should be dismissed if the complaint sets forth inadequate facts that would entitle the plaintiff to relief on all essential elements of the asserted claims. *Anderson v. ReconTrust Co., N.A.*, 407 P.3d 692, 699-700 (Mont. 2017). The plaintiffs in *Anderson* brought a negligent misrepresentation claim against a bank regarding the plaintiff's qualification for a modification of their home mortgage loan. *Id*. at 695. The plaintiffs argued that they relied on the bank's assertion that the modification would preempt the scheduled foreclosure sale on the plaintiff's home. The bank denied the modification and the plaintiff's home was sold as scheduled. *Id*. The Montana state district court dismissed the plaintiff's complaint in its entirety, and did not consider the additional facts asserted by the plaintiffs in their supplemental affidavit. *Id*. at 696.

The Montana Supreme Court summarized the duties implicated by a common law duty of reasonable care compared to the duties that arise from special

relationships, such as contractual or fiduciary relationships. *Id.* at 697. The Montana Supreme Court recognized that when a person obtains advice from a professional on a technically complex subject matter, it generally gives rise to a fiduciary relationship. *Id.* This fiduciary duty implicates the fiduciary duties of loyalty, trust, and competence owed to the person receiving the advice. *Id.* The Montana Supreme Court further recognized that "[a]n otherwise arms-length relationship between a lender and borrower or applicant may ripen into a fiduciary relationship of trust and confidence. . ." *Id.*

The nature of Forest River's and Nelson's relationship lacks the type of advice or reliance that normally would be present in a fiduciary relationship or any other special relationship that would require an enhanced level of care. Forest River's and Nelson's relationship has not "ripened" into the kind considered by the Montana Supreme Court in *Anderson*. *See also Palmer v. Montana Dept. Health and Human Services*, 2024 WL 1298881 at *9 (D. Mont. 2024) (granting summary judgment on plaintiff's negligent misrepresentation claim based on plaintiff's failure to show that he relied upon the defendant's alleged misrepresentation). Forest River should exercise reasonable care when selling Cedar Creek RVs and Puma RVs and ensuring they are safe for consumers. Forest River is not obligated on a fiduciary type of level, however, to ensure consumers the highest level of protection. Forest River has the benefit of issuing recalls to fix its mistakes and has presented facts indicating that it

7

attempted to fix the issues that Nelson seeks to remedy. Nelson's alleged injuries prove adequately addressed through a negligence claim.

Nothing in the record indicates that Forest River failed to use reasonable care or negligently communicated or obtained information about alleged defects in opting to issue recalls to notify consumers. Forest River affixes the RVIA seal indicating that it has complied with RVIA Standards. (*See e.g.* Doc 147-1 at 33.) Forest River also indicates conformity to "all applicable federal motor vehicle safety standards in effect on the date of manufacture" through another sticker near its tire pressure requirements and manufacture date. (*See e.g.* Doc. 186-1 at 101, Fig. 17.) Nelson bought his RV with these broad assurances and with little understanding of what they implied. Nelson allegedly "relied on Forest River's representation regarding quality and safety, including the seals and statements displayed on the Pumas." (Doc. 185-1 at 2.) Nelson's deposition tells otherwise. (Doc. 150-3 at 11.) Nelson lacked familiarity with the low voltage standards and the RVIA standards. (*Id.*) Nelson's and Forest River's relationship remained at a arms-length and Forest River did not owe Nelson any special duties as contemplated by the Montana Supreme Court in *Anderson*. Forest River chose to remedy its mistakes through recalls and warranty claims and presents evidence that it attempted to do so here.

Nelson asserts that Forest River's recalls indicate direct proof that Forest River's RVs lacked compliance with the RVIA standards. To hold a business liable

8

for negligent misrepresentation when it attempts to correct a mistake would create senseless precedent that deters companies from fixing their own mistakes without involving the courts. The Court recognizes that the recalls issued by Forest River may not have addressed the wiring defects as alleged by Nelson and that issue remains in dispute. Those claims are adequately remedied through Nelson's negligence claim. Nelson's blanket allegations that Forest River's recalls provide proof that it misrepresented its compliance with the RVIA Standards prove unwarranted. The Court accordingly will deny Nelson's motion for partial summary judgment and grant Forest River's motion for summary judgment on the negligent misrepresentation claim based on the lack of any fiduciary relationship or any other special relationship. *See Anderson*, 407 P.3d at 699-700. Nelson also provides no facts to support his claim of reliance on representations by Forest River that Forest River should have reasonably known to be misleading.

## II. Forest River's Motion for Summary Judgment

Forest River separately moves for summary judgment on Nelson's claims of negligence, negligent misrepresentation, and violation of the Montana Consumer Protection Act (MCPA). (Doc. 172 at 1.) As discussed above, the Court will deny Nelson's motion for summary judgment on his negligence claim and accordingly will deny Forest River's motion for summary judgment on Nelson's negligence claim. The Court will grant Forest River's motion for summary judgment on

Nelson's negligent misrepresentation claim as nothing in the record indicates a fiduciary or special relationship between Nelson and Forest River. The record indicates a lack of evidence that Forest River failed to use reasonable care when obtaining information around alleged wiring defects. Forest River issued recalls to notify consumers of the potential problems and did not attempt to conceal other defects without any reasonable ground for believing it to be true. *Barker v. Bank of Am., N.A.*, No. CV 17-21-BLG-SPW-TJC, 2019 WL 4261983, at *7 (D. Mont. Aug. 12, 2019).

Forest River moves for summary judgment on Nelsons Montana Consumer Protection Act ("MCPA") claims because Nelson cannot prove that he relied on the RVIA standards and Nelson has failed to identify any other allegedly unfair or deceptive act committed by Forest River. (Doc. 172 at 26.) "Under the MCPA[. . .] a consumer who suffers any ascertainable loss of money or property as a result of another person's use or employment of an unfair or deceptive act or practice in the conduct of any trade or commerce may recover money damages in the amount of any ascertainable loss of money or property or $500, whichever is greater." *Kostelecky v. Peas in a Pod LLC*, 518 P.3d 840, 860 (citing Mont. Code Ann. § 30-14-102(1), 8(a), -103, and -133(1)(a)) (internal quotations and modifications omitted). The MCPA broadly defines "ascertainable loss" to include any proven form of direct or indirect financial detriment or detrimental financial impact. *See*

10

*Puryer v. HSBC Bank USA, N.A.*, 419 P.3d 105, 373 (Mont. 2018) (overruled on other grounds); *Jacobson v. Bayview Loan Servicing, LLC*, 371 P.3d 397, 411 (Mont. 2016).

A MCPA claim for damages requires proof of the following elements: 1) that the defendant used or employed an unfair or deceptive act or practice; 2) that the plaintiff was a consumer as defined by Mont. Code Ann 30-14-102(1); and 3) the plaintiff suffered damages directly or indirectly. *Id.* at 861. The Montana Supreme Court in *Anderson* determined that the plaintiff had failed to allege facts that "elevated the alleged bank mistake, and related conduct, to the level of an act or practice that is 'immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers.'" *Anderson,* 407 P.3d at 700. The defendant bank in *Anderson* simply withdrew its offer to modify the plaintiffs loan terms and proceeded with the foreclosure sale under the original terms of the loan. *Id.*

Nelson contends that Forest River's action violated the MCPA in the following four ways: 1) affixing the RVIA labels to the Cedar Creek RVs and the Puma RVs without actually complying with the RVIA's standards constitutes an unfair or deceptive practices; 2) selling known defective products without modification or warning; 3) concealing an internal survey that evidenced the alleged wiring defects with Nelson's RV; and 4) failing to fully address the defects and affected models identified in the 2022 survey by an inadequate recall. (Doc. 184 at

11

20-23.) Questions of fact appear to remain regarding whether Forest River made misrepresentations regarding the Cedar Creek RVs and the Puma RVs with the RVIA standards that require "all conductors" to have overcurrent protection, whether exceptions apply, or whether Forest River's recall addressed the remedy that Nelson seeks. These questions are better resolved by a jury and through expert testimony.

On the other hand, Nelson's deposition reveals his lack of familiarity with the RVIA standards and provided no indication that he understands their meaning or relied on Forest River's alleged compliance with RVIA standards in choosing to purchase his Puma RV. (Doc. 150-3 at 11.) The Court determined that Nelson knew of the requirements to submit his defective Puma RV for repair and readily bought another Puma RV. Nelson's familiarity with Forest River's operation and standards given his interaction with the inspection and recalls process adequately prepared him to represent a class present in Montana. (Doc. 208.) The Court finds that Nelson relied on Forest River's compliance with the RVIA standards when conducting repairs and inspecting his 2019 Puma RV.

It seems appropriate for the jury to decide whether Forest River's conduct in affixing the RVIA labels rises to the level of an unfair or deceptive practice covered under the MCPA. There appears to be no information that Forest River actions were deceptive or that Forest River made the representations without any reasonable

ground for believing it to be true. Forest River admittedly issued recalls to attempt to correct its alleged mistake about the wiring on the Cedar Creek RVs and the Puma RVs. Whether that process is unfair or deceptive should be decided by the jury. The jury also should resolve whether Nelson can show any damages related to Forest River's alleged unfair and deceptive trade practice.

Nelson's arguments that Forest River engaged in a "multi-year scheme of certifying safety while selling defective products, concealing evidence of the defects, and orchestrating a sham recall," lack sufficient support in the record to justify summary judgment against Forest River. (Doc. 184 at 20.) Forest River attempted to address defective products through recalls, warranty claims, and inspections. Nelson's motion for summary judgment will be denied. Forest River's motion for summary judgment regarding Nelson's MCPA claims also will be denied. The jury can resolve these remaining genuine issues of material fact.

## ORDER

Accordingly, **IT IS HEREBY ORDERED** that:

1. Forest River's Motion for Summary Judgment (Doc. 171.) is **GRANTED in part and DENIED in part**.

    a. Nelson fails to show any remaining dispute as to material facts regarding his negligent misrepresentation claim. The Court grants summary judgment to Forest River on the negligent

misrepresentation claim.

b. Nelson has established that disputed issues of material fact remain regarding his negligence claim and his Montana Consumer Protection Act claim. The Court denies summary judgment to Forest River on the negligence and MCPA claims.

2. Nelson's Motion for Summary Judgment (Doc. 174) is **DENIED**.

**DATED** this 12th day of August, 2025.

_____
Brian Morris, Chief District Judge
United States District Court