# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# GREAT FALLS DIVISION

| | |
|---|---|
| JAY NELSON, individually and on behalf of all others similarly situated<br><br>Plaintiff,<br><br>v.<br><br>FOREST RIVER, INC.,<br><br>Defendants. | **CV-22-49-GF-BMM**<br><br><br>**ORDER ON MOTION TO RECERTIFY CLASS** |

## INTRODUCTION

Plaintiff Jay Nelson ("Nelson") filed a putative class action against Forest River, Inc. ("Forest River") on May 23, 2022. (Doc. 1.) Nelson has filed a Complaint and four amended Complaints. (Docs. 1, 38, 39, 45, 147-1.) Nelson's class allegations and claims for negligence, negligent misrepresentation, and violations of the Montana Consumer Protection Act remain. (Doc. 147-1 at 46-51.) Nelson moved the Court for class certification on February 5, 2025. (Doc. 130.)

The Court denied Nelson's motion to certify a nationwide class of all Forest River Towable RV's. (Doc. 208.) The Court certified pursuant to Fed. R. Civ. P 23(b)(3) a narrower class "of all persons in Montana who own a Forest River Cedar Creek Fifth Wheel RV or a Forest River Puma Fifth Wheel RV other than for resale or distribution." (*Id*.) Nelson moved the Court to reconsider the class certification pursuant to Fed. R. Civ. P 23(c)(1)(C) and 54(b). (Doc. 225.) Forest River opposes

reconsideration. (Doc. 230.) The Court held a hearing on November 12, 2025. (Doc. 239.)

## BACKGROUND

Nelson alleges in his Fourth Amended Complaint ("FAC") that Forest River failed to disclose violations of the applicable standards, actively concealed the violations, and refused to remedy adequately the resulting wiring defects. (Doc. 147-1 at 2.) Nelson, a citizen of Montana, purchased a 2019 Palomino Puma Fifth Wheel RV ("2019 Puma"). (*Id.* at 3.) Forest River manufactures Cedar Creek Fifth Wheel RVs ("Cedar Creek") and Palomino Puma Fifth Wheel RVs ("Puma").

Nelson alleges that his 2019 Puma Fifth Wheel RV started smoking from a wiring defect in the trailer's seven-way-wiring system. Nelson sought to include in the class in his FAC all nationwide "towable Recreational Vehicles ("RVs")." Towable RVs include Travel Trailers, Fifth Wheels, Toy Haulers, Destination Trailers, and Camping Trailers, including Tent and Pop-Up Campers (collectively "Towable RVs"). The Court declined to certify a nationwide class of all Towable RVs. (Doc. 208.) The Court limited the class to Montana owners of Puma and Cedar Creek Forest River Fifth Wheel RVs. (*Id.*)

Forest River is an Indiana corporation owned by Berkshire Hathaway. Forest River is a member of the Recreational Vehicle Industry Association ("RVIA"). The RVIA adopts standards related to RVs. Forest River places an RVIA seal on its RVs

2

to indicate its compliance with the RVIA's standards. (Doc. 147-1 at 4.) Forest River allegedly purchases the RVIA seal directly from RVIA, reflecting a contractual commitment. (*Id*. at 6.)

The National Highway Traffic Safety Administration ("NHTSA") also governs Forest River as an Original Equipment Manufacturer (OEM) of RV products and parts. NHTSA enforces the National Traffic and Motor Vehicle Safety Act ("Safety Act"). The Safety Act includes safety standards applicable to RVs. (*Id*. at 8.) The Transportation Recall Enhancement Accountability, and Documentation ("TREAD") Act, enacted in 2000, established early warning reporting requirements for vehicle manufacturers. (*Id*.)

Forest River initiated an internal survey in 2022 regarding alleged wiring defects in its RVs like the Puma Fifth Wheel owned by Nelson. Forest River issued a recall on June 4, 2024, to correct alleged wiring defects in Cedar Creek Fifth Wheel RVs and Puma Fifth Wheel RVs. The recall included a total of 48,969 units. Nelson alleges that the 2024 recall failed to capture all affected Forest River Towable RVs. Forest River apparently conceded that it issued the recall after having inspected Nelson's Puma Fifth Wheel RV on April 3, 2024. (Doc. 129-1 at 10 f. 4.)

Nelson's counsel initiated its own "field investigation" after the recall of Forest River Fifth Wheel RVs. Nelson claims to have inspected 400 units over 86 different models. (Doc. 147-1 at 9.) The investigation allegedly revealed that wiring

in 51 of 86 inspected models violated the applicable standards. The parties dispute the applicable wiring standards for different types of Towable RVs. Nelson alleges that Forest River's 2024 recall failed to address the alleged defects. (*Id*.) Nelson contends that Forest River produced Cedar Creek Fifth Wheel RVs for 20 years and Puma Fifth RVs for 18 years and failed to follow applicable standards.

Nelson argues that Forest River estimated the scope of the 2024 recall to include 100% of the Puma Fifth Wheel RVs and Cedar Creek Fifth Wheel RVs manufactured between September 26, 2005, and May 2, 2024. (*Id*. at 18-19.) Nelson sought to certify a nationwide class of all Forest River Towable RVs. (Doc. 130.) The Court limited the class certification to "all persons in Montana who own a Forest River Cedar Creek Fifth Wheel RV or a Forest River Puma Fifth Wheel RV other than for resale or distribution." (Doc. 208.) Nelson now asks the Court to reconsider its class certification order. (Soc. 225.) Nelson seeks to certify a class to address the alleged defects in all Forest River's Towable RVs, limited to Montana. (Doc. 226.) Nelson, in the alternative, seeks to expand the class to include all Montana owned Forest River Fifth Wheel RVs, not only limited to Puma Fifth Wheel RVs and Cedar Creek Fifth Wheel RVs. (*Id*.)

The Court limited discovery to the 39 brands of Forest River Fifth Wheel RVs on September 11, 2023. (Doc. 72 at 2.) Forest River produced the discoverable information relating solely to Forest River Fifth Wheel RVs as ordered by the Court.

(Doc. 230 at 9; Doc. 229-1¶ 8.) Nelson moved for class certification on February 11, 2025, based only on information regarding Forest River Fifth Wheel RVs. (Doc. 130.)

Nelson sought to expand discovery by serving Requests for Productions on Forest River on February 20, 2025, seeking information relating to "all complaints, lawsuits, or claims' regarding 'thermal events'" for Forest River Towable RVs. (Doc. 230 at 10; Doc. 229-1, ¶ 14-15.) Forest River objected to the scope of the discovery, as it exceeded the Forest River Fifth Wheel RV limitation the Court previously had determined. (*Id*.) Nelson moved the Court to compel Forest River to respond to the discovery by producing the information on all Forest River Towable RVs. (Doc. 159.)

The Court expanded the scope of discovery and compelled Forest River to disclose the information relating to Forest River Towable RVs, not just discovery related to Forest River Fifth Wheel RVs. (Doc. 192.) Forest River complied. Forest River timely provided the requested discovery to Nelson on July 31, 2025. (Doc. 230 at 11; Doc. 229-1 ¶ 19.) Forest River provided Nelson with an additional 1,115 entries relating to all Forest River Towable RVs and new warranty claims for Fifth Wheel RVs submitted between September 30, 2023, and December 31, 2024. (*Id*.)

## **LEGAL STANDARD**

### I.      **Motion for reconsideration**

5

Under Fed. R. Civ. P. 23(c)(1)(C) and 54(b), a court may amend and reconsider a class certification order before final judgment. *See Am. Rivers v. NOAA Fisheries*, 2006 WL 1983178, at *2 (D. Or. July 14, 2006). The Ninth Circuit has concluded that when "faced with motions to reconsider orders denying class certification, [courts] routinely appl[y] the ordinary standards for reconsideration." *English v. Apple Inc.*, No. 14-cv-01619, 2016 WL 1108929, at *5 (N.D. Cal. Mar. 22, 2016) (collecting cases). Reconsideration represents an "extraordinary remedy, to be used sparingly in the interests of finality and conservation of judicial resources." *Am. Rivers,* 2006 WL 1983178, at *5. (quoting *Kona Enterprises, Inc. v. Estate of Bishop*, 229 F. 3d 877, 890 (9th Cir. 2000)).

A court should grant a motion for reconsideration only if there is newly discovered evidence, the court committed clear error, or there is new controlling law. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 880 (9th Cir. 2009). Specifically, a court may grant a motion to reconsider under Fed. R. Civ. P. 54(b) under the following circumstances: "(1) there are material differences in fact or law from that presented to the court and, at the time of the court's decision, the party moving for reconsideration could not have known the factual or legal differences through reasonable diligence; (2) there are new material facts that happened after the [c]ourt's decision; (3) there has been a change in the law that was decided or enacted after the court's decision; or (4) the movant makes

6

a convincing showing that the court failed to consider material facts that were presented to the court before the court's decision." *Am. Rivers*, 2006 WL 1983178, at *6-7. Motions for reconsideration are generally disfavored and cannot be used by the movant "to present new arguments or evidence that could have been raised earlier." *Id*. at *8.

## II.    Class Certification

Class relief proves appropriate where the underlying issues are common to the entire class and the questions of law apply to each class member. *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (quoting *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)). Class actions serve to save a court's resources and the parties' resources by allowing an issue affecting every class member to be economically litigated. *Id.* Courts limit claims that fall under the class action umbrella to those class claims that are "fairly encompassed by the named plaintiff's claims." *Id.* at 156 (quoting *Gen. Tel. Co. of Northwest v. EEOC*, 446 U.S. 318 (1980)).

A class may be established if the following criteria exists:

1) the class is so numerous that joinder of all members is impracticable;
2) there are questions of law or fact common to the class;
3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23 (a) (1-4).

A court may certify a class if the above is true and one of the following is true:

1)  prosecuting separate actions by or against individual class members would create a risk of:

> A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or

> B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests;

2)  the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or

3)  the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:

> A) the class members' interests in individually controlling the prosecution or defense of separate actions;

> B) the extent and nature of any litigation concerning the controversy already begun by or against class members;

> C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

> D) the likely difficulties in managing a class action.

*Id.* at (b) (1-3).


## **DISCUSSION**

## I. Newly discovered evidence produced by Forest River on July 31, 2025

Nelson contends that newly discovered evidence provided by Forest River in discovery after the Court's class certification order warrants the extraordinary measure of reconsideration. (Doc. 226 at 2-4.) The Court disagrees.

When a party moves for reconsideration based on newly discovered evidence, the movant is "obliged to show not only that this evidence was newly discovered or unknown to it until the hearing, but also that it could not with reasonable diligence have discovered and produced such evidence at the hearing." *Montana Wildlife Federation v. Zinke*, CV-18-69-BMM, 2019 WL 2300396, at *2 (D. Mont. May 30, 2019) (quoting *Frederick S. Wyle Prof'l Corp. v. Texaco, Inc.*, 764 F.2d 604, 609 (9th Cir. 1985)). "Evidence is not 'newly discovered' under the Federal Rules if it . . . could have been discovered with reasonable diligence." *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 2121 (9th Cir. 1987). Courts have concluded that "newly served discovery requests do not constitute newly discovered evidence justifying reconsideration." *See Bararsani v. HDI Glob. Ins. Co.*, No. CV 21-3679, 2021 WL 5859463, at *8 (C.D. Cal. Nov. 5, 2021).

Forest River produced discovery on July 31, 2025, containing 1,115 warranty claims including those claims on Forest River Fifth Wheel RVs, not already produced, and claims on Towable RVs. Forest River provided this

discovery after the Court expanded the scope of discovery at Nelson's request to include information relating to all Towable RVs, rather than limited solely to Fifth Wheel RVs. (Doc. 192.) The discovery remained unavailable to Nelson until provided on July 31, 2025. Nelson had the ability, however, to request such discovery before filing for class certification. Nelson instead chose to move for class certification on February 11, 2025, based only on received information on Forest River Fifth Wheel RVs. (Doc. 130.)

Nelson failed to use reasonable diligence in obtaining information regarding all Forest River Towable RVs before moving the Court to certify a class that included all Forest River Towable RVs. Further, the Court granted the request when Nelson sought to compel discovery on all Forest River Towable RVs. (See Doc. 192.) This fact indicates that Nelson simply could have requested the Court to expand discovery before moving for class certification.

The Court determines that the newly served discovery, specifically the information related to all Forest River Towable RVs, does not give rise to the "extraordinary" and "generally disfavored" standard of granting reconsideration. *Am. Rivers,* 2006 WL 1983178, at *5 and *8. Had Nelson wanted the Court to certify a class containing all Forest River Towable RVs, reasonable diligence would have required Nelson to obtain the discovery before moving for class certification. Nelson failed to do that. The Court will not consider discovery

10

Nelson reasonably could have requested before the Court's class certification order for grounds to reconsider and expand the class. Reconsideration based on the discovery produced on July 31, 2025, proves inappropriate.

Nelson also continues to suggest that the disclosure of this discovery was "late-produced" and provided purposefully at the last hour by Forest River. (Doc. 226 at 2 and 4.) The record fails to support such a contention. The Court ordered the discovery deadline be extended to July 31, 2025. (Doc. 192.) Forest River timely provided the information following the Court's direction and limitations governing discovery at all relevant times in this case. Such compliance by Forest River cannot now be used against Forest River. Nelson had the burden to request and obtain the requisite evidence needed for the Court to certify a class to include all Forest River Towable RVs. Nelson could have discovered this evidence with reasonable diligence before the Court's class certification order and certainly before deciding to move the Court for class certification.

In any event, the new discovery still would not have required the Court to grant Nelson's motion to reconsider and expand the class to all Montana Forest River Towable RVs. The Court remains persuaded by Forest River's arguments that the design and wiring schematics and installation differ across the various Towable RVs. (Doc. 230 at 6.) These differences would make this broad class unworkable. The Court finds that, even with the new discovery showing warranty

claims pertaining to Towable RVs and thermal events, Nelson class certification argument fails. (*See* Doc. 208 at 16-18; *Wolin v. Jaguar Land Rover N. Am., LLC,* 617 F.3d 1168, 1172 (9th Cir. 2010).) Resolution could not be provided in one stroke across all Forest River Towable RVs. *See Wal-mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350-56 (2011).

On the other hand, the new discovery obtained regarding Forest River Fifth Wheel RVs, specifically the 18 new warranty claims, falls under the discovery that Nelson had requested before Nelson moved for class certification. The Court will consider this new warranty information provided to Nelson relating to Forest River Fifth Wheel RVs in determining reconsideration of the class, as explained below.

## II. Previous consideration of material facts and prevention of manifest injustice

A court may reconsider if "the movant makes a convincing showing that the court failed to consider material facts that were presented to the court before the court's decision." *Am Rivers*, 2006 WL 1983178, at *6. Further, reconsideration may be warranted to "prevent manifest injustice." *Allstate Ins. Co. v. Herron*, 634 F. 3d 1101, 1111 (9th Cir. 2011).

The parties do not dispute that Forest River sent Nelson discovery on September 11, 2023, that included data on 88 warranty claims for fifth wheel RVs from January 1, 2016, to September 30, 2023. (Doc. 230 at 9.) Nelson had this

evidence before his original motion for class certification but neglected to include, or even refer to it, in his briefings. The Court granted several extensions and motions to compel from Nelson. The Court ordered Forest River on June 26, 2025, to produce more discovery related to warranty claims data, including updated warranty claims on Fifth wheel RVs. (*Id.* at 10 citing Doc. 192.) Forest River produced this discovery on July 31, 2025, one day before the Court issued its order on class certification (Doc. 208). (*Id.* at 11.) The newly produced data included 18 new warranty claims on Fifth wheel RVs nationwide which were submitted from September 30, 2023, to December 31, 2024. (*Id.*)

This procedural history demonstrates that it would be erroneous to suggest that the Court "failed to consider material facts [related to certification of a Montana Fifth wheel RVs class] that were presented to the [C]ourt before the [C]ourt's decision." *Am Rivers*, 2006 WL 1983178, at *6. The evidence demonstrating the typicality and commonality of potential claims in a Montana Fifth wheel RVs class was available to Nelson but was not briefed to the Court.

Nelson's first motion for class certification focused primarily on arguing for a nationwide class of all Towable RVs. (Doc. 131.) Nelson argued that the evidence demonstrated a "systemic failure" (*Id.* at 11.) Nelson contended that the harm suffered by the over 1,000,000 potential plaintiffs derived "from Forest River's uniform conduct in designing, manufacturing, and selling Towable RVs

with seven-way wiring defects in violation of the applicable standards while certifying that each towable RV met the applicable standards when they do not." (*Id*. at 11.) Nelson's original motion made no distinction between Towable RVs and Fifth wheels and rather claimed that "*every* Class RV has the potential to have a seven-way wiring defect because of the lack of sufficient quality control." (*Id*. at 20.) [emphasis in original].

Nelson at least acknowledged the various categories of RVs included in his proposed Towable RVs class in his reply brief on the motion for class consideration. (Doc. 157 at 11.) Nelson's reply brief still failed to discuss distinctions between a potential fifth wheel RVs class as compared to an all Towable RVs class. Nelson's briefing on the first motion for class certification did not include argument for a Montana Fifth Wheel RVs class as an alternative to the nationwide Towable RVs class. Nelson's briefing certainly did not include discussion of the statistics referenced in Nelson's current motion for recertification. Nelson failed to present material facts to the Court in the motion for class certification related to the similarity between all RVs in the Fifth Wheel category and the related warranty claims for the class.

The Court will now consider the evidence presented by Nelson in arguing for a Montana Fifth Wheels RV class to "prevent manifest injustice." *Allstate Ins. Co.*, 634 F. 3d at 1111. The Court will address the requirements for class

certification in turn. The Court will not repeat discussion of issues that were discussed in the Court's order on class certification. (Doc. 208.)

### a. 23(a)(1)—Numerosity

Nelson identifies 106 warranty claims made by owners of Forest River Fifth Wheel RVs. (Doc. 226 at 14.) Fifth Wheel RVs include the Puma and Cedar Creek RVs previously certified as a class, along with 37 other brands and models of Forest River Fifth Wheel RVs. (*Id*.) The 106 warranty claims identified by Nelson include warranty claims made against 21 of the 39 Fifth Wheel RVs sold by Forest River. (*Id*.) The 106 warranty claims are not specific to Montana owners of Fifth Wheel RVs, but they give the Court a cursory indication of the numerosity of the potential class in Montana. The warranty claims data indicate a potentially small class of Forest River Fifth Wheel RV owners in Montana. The potential Montana class is not limited to those who have submitted warranty claims though. The Court has no data indicating how many other owners of Forest River Fifth Wheel RVs there are in Montana.

No bright line rule exists for numerosity, but courts almost always deny certification of a class where the class contains fewer than 20 putative members. *See, e.g.*, *Gen. Tel. Co. of Northwest v. EEOC*, 446 U.S. 318, 330 (1980). Courts occasionally deny certifications for failure to meet the numerosity requirement when the proposed class stands between 20 and 40 putative members. *See, e.g.*, *Peterson*

*v. Albert M. Bender Co., Inc*., 75 F.R.D. 661, 667 (N.D. Cal. 1977)*; Anderson v. Home Style Stores, Inc*., 58 F.R.D. 125, 130 (E.D. Penn. 1972). The numerosity requirement may be satisfied if the exact size of the class remains unknown, but a court can determine by way of common sense and general knowledge that the class may be large. *Turcios v. Carma Labs., Inc*., 296 F.R.D. 638, 645 (C.D. Cal. 2014).

All Forest River Fifth Wheel RV models have the same 7-way wiring system. (Doc. 226 at 13.) Forest River conceded that the "12V wiring system is similar in all [fifth] wheel recreational vehicles," and that the "7-way cord system is substantially similar in fifth wheel owners." (*Id*. citing Doc. 86 Ex. 2 at 1.) Forest River previously suggested to the Court that if it were to consider certifying any class, "it should be a Montana class of fifth wheel owners only." (*Id*. citing Doc. 170 Tr. at 44:13-20.) The Court recognizes that the warranty claims data present a small class. The Court finds, however, that the potential for other class members proves sufficient for class certification. The Court finds that Nelson meets the numerosity requirement for a Montana class action based on the potentially large number of Fifth Wheel RVs that Nelson alleges have substantially the same wiring as his Puma RV. *See, Turcios* 296 F.R.D. at 645.

### b. 23(a)(2)—Commonality

The Court will not repeat its extensive discussion of jurisprudence on commonality from the previous order on class certification. The Court found in the

previous order that Nelson failed to demonstrate commonality for a nationwide class of all Towable RVs. (Doc. 208 at 9-21.) The Court concluded as follows:

> Common questions such as "whether Forest Rivers' RVs need to be inspected due to insufficient quality controls" or "whether the Class RV seven-way wiring failed to comply with applicable standards," likely would generate answers that vary across the class as defined and would not be resolvable in one stroke.

(*Id.* at 20.) The Court reasoned that the difference in wiring among the Towable RVs, in combination with the managerial discretion afforded to each Forest River plant manager in wiring, indicated that a nationwide class would not be appropriate. (*Id.*) The proposed class here, all Fifth Wheel RVs in Montana, does not suffer from the same infirmities.

Forest River conceded that the "12V wiring system . . . is similar in all [fifth] wheel recreational vehicles," and that the "7-way cord system is substantially similar in fifth wheel owners." (*Id.* citing Doc. 86 Ex. 2 at 1.) This similarity in the 7-way cord system mollifies the Court's concern about differences in wiring, and the applicable industry standards for Fifth Wheel RVs versus trailers. The Court's concern about managerial discretion also may be addressed by continuing to limit the class to Montana rather than extending it nationwide. The Court finds that Nelson has exhibited commonality for a Montana class of Fifth Wheel RVs based on

common questions of law and fact pertaining to the wiring system, applicable industry standards, and the appropriate remedy.

### c.  23(a)(3)—Typicality

Representative claims are "typical" if the claims of the putative class are expected to be "reasonably coextensive with those of absent class members," though they "need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality 'is whether other members have the same or similar injury, whether the action is based on conduct, which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir. 2011) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).

The parties agree that the applicable industry standards require all Fifth Wheel RVs to have overcurrent protection on seven-way wiring systems. (Doc. 230 at 19.) The wiring on Nelson's Puma RV, a Fifth Wheel RV, allegedly fell short of these industry standards. (Doc. 208 at 4.) Nelson has identified 106 warranty claims over the past decade related to thermal events in the seven-way wiring system in Fifth Wheel RVs. (Doc. 226 at 14.) The 106 warranty claims in Fifth Wheel RVs include several claims from Montana RV owners. (Doc. 226 Ex. C, pg. 4-5.) The warranty claims from owners of Fifth Wheel RVs in Montana appear to be related to the

Vengeance model. (*Id.*) This data indicates that the 7-way wiring across Fifth Wheel RVs may be causing the same damage to other Fifth Wheel RVs as experienced by Nelson.

Nelson has presented evidence that indicates other instances where potential class members have suffered similar injury. The harm suffered by Nelson would be typical of the putative Montana Fifth Wheel RVs class. To decline to extend the class to all Towable RVs placates the Court's previous concerns about differences in wiring between Fifth Wheel RVs and other Towable RVs manufactured by Forest River.

### d.  23(a)(4)—Adequacy of Representation

Plaintiffs must fairly and adequately protect class interests under Rule 23(a)(4). Fed. R. Civ. P. 23(a)(4). This inquiry presents a two-fold test. First, "the named representatives must not have antagonistic or conflicting interests with the unnamed members of the class." *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978). And second, whether the named plaintiffs and counsel will litigate vigorously on behalf of the entire class. *Ellis v. Costco Wholesale Corp.*, 657 F. 3d 970, 985 (9th Cir. 2011).

The Court previously expressed concern with Nelson's adequacy as a class representative based on his limited knowledge of the problems with the wiring components and his limited familiarity with the RVIA standards. (Doc. 208 at 26.)

The Court found that Nelson proved to be an adequate class representative for a limited Montana class because "Nelson is aware of the requirements it took to submit his defective RV for repair and readily bought another Puma fifth wheel RV." (*Id.* at 27.) The Court finds that Nelson remains an adequate class representative for a limited, although slightly larger, Montana class based on his experiences with his own defective Fifth Wheel RV.

### e.  Rule 23(b) Requirements

The Court will briefly address the Rule 23(b) requirements to avoid repetition from the previous order on class certification.

#### i.  Rule 23(b)(3), commonality, predominance, and superiority.

The requirements of Rule 23(b)(3) substantially overlap with the requirements of Rule 23(a) because plaintiffs must prove that there are "questions of law or fact common to class members" that can be determined in one stroke. *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 664 (9th Cir. 2022). The 23(b)(3) test is "far more demanding," *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1172 (9th Cir. 2010), (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)). To limit the class to Montana addresses the Court's concerns about "variation in state negligence, negligent misrepresentation, and consumer-protection laws." (Doc. 208 at 30.) "No class action is proper unless all litigants are governed by the same legal rules. Otherwise, the class cannot satisfy

the commonality and superiority requirements of Rule 23(a), and (b)(3)." *In re Bridgestone/Firestone, Inc*., 288 F.3d 1012, 1015 (7th Cir. 2002).

The Court previously found that "Nelson's questions seem best addressed on a limited class level of Montana purchasers of Cedar Creek Fifth Wheel RVs and Puma Fifth Wheel RVs of the type owned by Nelson and subject to Forest River's recall for alleged defective wiring." (Doc. 208 at 36.) The Court reasoned that "Nelson's questions regarding a nationwide class of all Forest River Towable RV owners would require distinct inferences that likely would result in vastly different answers depending on the manufacturing plant, Towable RV make and model, Towable RV user, and Towable RV place of purchase." (*Id*.) A Montana class of Forest River Fifth Wheel RV owners would not result in the same problem of many different answers because of the geographic limitation and the same 7-way wiring system on Fifth Wheel RVs.

Several of the Court's previous concerns about Nelson's class action claims remain. For example, as noted in the Court's order on class certification, the Sixth Circuit recognized limitations that courts have put on cases that involve merely potential risk of harm rather than tangible or concrete injury. *Speerly v. Gen. Motors, LLC*, 2025 WL 1775640, at *3 (6th Cir. June 27, 2025). Courts generally have forbidden classes where some members without manifest defects would have to "piggyback" on those suffering manifest defects. *Id.* at *3, citing *Johannessohn v.*

21

*Polaris Indus. Inc.*, 9 F.4th 981, 988 (8th Cir. 2021); *In re Recalled Abbott Infant Formula Prods. Liab. Litig.*, 97 F.4th 525, 530 (7th Cir. 2024) (excluding class members who would suffer a "potential risk of harm").

Nelson has neglected to provide clear or direct evidence that Montana owners of Forest River Fifth Wheel RVs have suffered actual injury similar to him and would not simply be piggybacking on his injuries. Nelson has provided more evidence of harm to other Forest River RV owners through warranty claim data that demonstrates other thermal incidents associated with the alleged wiring defect. The Court finds that all Forest River Fifth Wheel RVs use of the same wiring system, satisfies the Rule 23(b) standards. The Court recognizes that no recall took place to cover all members of this class of Fifth wheel RVs, but it finds that sufficient connection remains between the Montana Fifth Wheel RV owners for the purposes of Rule 23(b). The Court further finds that based on this shared connection, Nelson has shown that the potential class members on a Montana basis likely have suffered the same injury, and questions of law or fact common to them, that can be resolved in one stroke. *See Dukes*, 564 U.S. at 350 (citing *Gen. Tel. Co. of SW. v. Falcon*, 457 U.S. 147, 157 (1982)). The Court will grant, in part, Nelson's motion for reconsideration and certify a class of Montana owners of Forest River Fifth Wheel RVs.

**III.     The Court's interpretation of RVIA 3-1 and 3-5 Safety Standards**

22

The movant bringing a motion for reconsideration cannot use the motion "to present new arguments or evidence that could have been raised earlier." *Am. Rivers*, 2006 WL 1983178, at *8. As the court in *Fails v. Harbaugh* explained, a motion for reconsideration "should not be used to make new arguments or to ask the [c]ourt to rethink its prior analysis." CV 17-120-BLG-TJC, 2019 WL 2517067, at *3 (D. Mont. June 18, 2019). "Disagreement with a [c]ourt's order is an insufficient basis for reconsideration." *Id*. The court in *Above the Belt, Inc. v. Mel Bohannon Roofing, Inc.* similarly found a movant "improperly used the motion to consider to ask the [c]ourt to rethink what the [c]ourt had already thought through – rightly or wrongly." 99 F.R.D. 99, 101 (E.D. Va. 1983).

Nelson now raises new arguments relating to the Court's interpretation of the ANSI/RVIA 3-1 and 3-5 safety standards. (*See* Doc. 226 at 5-7.) Nelson contends that the canons of statutory interpretation govern the Court's interpretation. (*Id*.) Nelson could have raised this argument but did not raise it previously, either in Nelson's motion for class certification, or in Nelson's reply. (Docs. 130 and 157.) Nelson only provided evidence that its experts disagreed with Forest River's interpretation of the RVIA standards. (Doc. 129-1 and 129-2.) Nelson further does not provide citations to any court decisions that have applied the canons of interpretation to non-binding industry or safety standards that are not "law."

Forest River went in-depth in its analysis of what the RVIA 3-1 and 3-5 safety standards entail. (Doc. 150 at 24.) Forest River explained to the Court that, according to its expert, the overcurrent protection requirements differed depending on whether the 7-way wiring system entered the RV. (*Id*.) The Court determined that Forest River had presented a reasonable reading of the safety standards. (Doc. 208.) Nelson now attempts to present new arguments on the reading of the RVIA 3-1 and 3-5 safety standards. Nelson's previous briefings lacked arguments to rebut Forest Rivers contentions that the standards applied differently if the wiring entered the RV.

The Court declines now to apply statutory interpretation to the RVIA safety standards as argued by Nelson, as Nelson could have made these arguments in its reply brief in support of the motion for class certification. To consider the new arguments now would work against the purpose of the reconsideration motions. *Am. Rivers*, 2006 WL 1983178, at *8. Parties could attempt to evade the finality of judicial decisions by attempting to file reconsideration motions to present newly identified legal arguments. Such use of reconsideration motions proves contrary to the intended purpose. To ask the Court to re-analyze the interpretation of RVIA 3-1 and 3-5, simply because Nelson disagrees with the Court's finding, represents an improper use of a motion to reconsider. *Fails*, 2019 WL 2517067, at *3.

Even if Forest River's reading of RVIA 3-1 and 3-5 proves unreasonable, this finding would not change the Court's class certification analysis. The common question in this case cannot simply be whether Forest River failed to follow the safety standards set out in the RVIA. The parties dispute the safety standards application to different Towable RVs, Forest River's adherence to these standards, and the safety standards interpretation. With the dispute as to the difference in wiring of the various model of Towable RVs, a broad "yes" answer would not resolve the dispute at a class wide level that included all Towable RVs. *In re Nissan N. Am., Inc. Litig.*, 122 F.4th 239, 247 (6th Cir. 2024). Like *Nissan*, wherein the defendant's expert noted that the brake-related warranty claim rates varied widely across vehicle model and software update level to defeat commonality, the thermal event related warranty claim rates varied across the Towable RV models, type, and manufacturer. *Nissan*, 122 F. 4th at 245. (*See e.g.* Doc. 226, Exhibit C and Exhibit D.)

Some Towable RV models appear to have higher rates of warranty claims related to thermal events, while other Towable RV models appear not to have wiring issues at high rates. (Doc. 226, Exhibit D.) This variation indicates that different claimants experience different defects and/or harm depending on the make, model, type, and the wiring of the Towable RV. The parties also continue to dispute the variation in wiring schematics across the Towable RV models. Nelson

has not established that one common question, answer, or defect exists across a class of all Forest River Towable RVs. (*See* Doc. 208 at 15-16.)

## ORDER

Accordingly, **IT IS ORDERED**:

1) Nelson's Motion for Reconsideration of Nationwide Class Certification (Docs. 223 and 225) is **DENIED in part** and **GRANTED in part.** The Court will not certify a Montana class of all Forest River Towable RVs. The Court will certify a class of Montana owners of Forest River Fifth Wheel RVs.

2) The Montana Class shall consist of all persons in Montana who own a Forest River Fifth Wheel RV other than for resale or distribution.

**DATED** this 18th day of November, 2025.

Brian Morris, Chief District Judge
United States District Court